SUSANA ALCALA WOOD, City Attorney (SBN 156366)
**ANDREA M. VELASQUEZ, Senior Deputy City Attorney (SBN 249210)**
AVelasquez@cityofsacramento.org
CITY OF SACRAMENTO
915 I Street, Room 4010
Sacramento, CA 95814-2608
Telephone: (916) 808-5346
Facsimile: (916) 808-7455

Attorneys for the CITY OF SACRAMENTO, MICHAEL CORRAL, and
JOSE MENDEZ

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK A. GRANT,<br><br>             Plaintiff,<br><br>     vs.<br><br>MICHAEL CORRAL; JOSE MENDEZ;<br>CITY OF SACRAMENTO; and DOES 1<br>through 5,<br><br>             Defendants. | Case No.: 2:19-cv-01495-MCE-CKD<br><br>**NOTICE OF LODGMENT OF EXHIBITS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Date:        January 20, 2020<br>Time:        10:00 a.m.<br>Courtroom: 24, 8th Floor<br>Hon.         Carolyn K. Delaney |

Defendants CITY OF SACRAMENTO, MICHAEL CORRAL, and JOSE MENDEZ

hereby lodge the following exhibits in support of their Motion for Summary Judgment.

| Exhibit No. | Description |
|---|---|
| A | Deposition of Mark Grant taken on July 31, 2020. |

DATED: December 1, 2020

SUSANA ALCALA WOOD,
City Attorney

By:  /s/ ANDREA M. VELASQUEZ
**ANDREA M. VELASQUEZ**
Senior Deputy City Attorney

Attorneys for the CITY OF
SACRAMENTO, MICHAEL
CORRAL, and JOSE MENDEZ

# EXHIBIT A

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MARK A. GRANT,                       )
                                     )
            Plaintiff,               )
                                     )
    vs.                              ) Case No.
                                     ) 2:19-cv-01495-
MICHAEL CORRAL; JOSE MENDEZ;         ) MCE-CKD
CITY OF SACRAMENTO; and DOES 1       )
through 5,                           )
                                     )
            Defendants.              )
                                     )

VIDEO RECORDED DEPOSITION OF

MARK GRANT

Sacramento, California

Friday, July 31, 2020

REPORTED BY: Jahmy Alvarez, CSR NO. 14094

**Page 2**

```
1              UNITED STATES DISTRICT COURT
2              EASTERN DISTRICT OF CALIFORNIA
3
   _____
4  MARK A. GRANT,                 )
                                  )
5              Plaintiff,         )
                                  )
6       vs.                       )Case No.
                                  )2:19-cv-01495-
7  MICHAEL CORRAL; JOSE MENDEZ;   )MCE-CKD
   CITY OF SACRAMENTO; and DOES 1 )
8  through 5,                     )
                                  )
9              Defendants.        )
   _____   )
10
11
12
13
14
15
16
17
18
19
20      Video Recorded Deposition of MARK GRANT
21  taken on behalf of Defendants at 915 I Street,
22  Fourth Floor, Sacramento, CA 95814, commencing at
23  9:56 a.m., Friday, July 31st, 2020, before
24  Jahmy Alvarez, CSR No. 14094.
25
```

**Page 3**

```
1        A P P E A R A N C E S:
2
3  FOR THE DEFENDANTS:
4      OFFICE OF THE CITY ATTORNEY
       BY: ANDREA M. VELASQUEZ
5      915 I Street
       Room 4010
6      Sacramento, CA 95814-2608
       (916) 808-5346
7      avelasquez@cityofsacramento.org
8
9  Also Present:  Soufou Lee, Videographer
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**Page 4**

```
1                  I N D E X
2
3  WITNESS:  MARK GRANT
4  EXAMINATION:                         PAGE
5       By Ms. Velasquez                 7
6
7            E X H I B I T S
8  LETTER        DESCRIPTION            PAGE
9  Exhibit 1   Notice and Order with      22
               additional documents.
10
   Exhibit 2   Notice and Order          23
11             Received by Mr. Grant
12 Exhibit 3   Photo of Notice taped to  26
               Fence
13
   Exhibit 4   Return Receipt            28
14
   Exhibit 5   Appeal Packet             31
15
   Exhibit 6   Petition for Administrative 33
16             Review
17 Exhibit 7   Request for Clarification 34
18 Exhibit 8   Termination of Declaration 40
               of Public Nuisance
19
   Exhibit 9   Notice of Pending Enforcement 45
20
   Exhibit 10  Photo of boat            55
21
   Exhibit 11  Photo of vehicles        56
22
   Exhibit 12  Photo of front fence     58
23
   Exhibit 13  Photo of front of property 59
24
   Exhibit 14  Photo of fence in front of 59
               property
25
```

**Page 5**

```
1  Exhibit 15  Photo of front of house  61
2                  --oo0oo--
```

| | |
|---|---|
| 1 | SACRAMENTO, CALIFORNIA |
| 2 | Friday, July 31st, 2020 |
| 3 | 9:56 A.M. |
| 4 | |
| 5 | MARK GRANT, |
| 6 | having been first duly sworn, was |
| 7 | examined and testified as follows: |
| 8 | |
| 9 | THE VIDEOGRAPHER:  Good morning.  My name |
| 10 | is Soufou Lee.  I'm the video operator today, and |
| 11 | I'm employed by Imagine Reporting, Located at 1350 |
| 12 | Columbia Street, Suite 703, San Diego, California. |
| 13 | Today's date is July 31st, 2020.  The present time |
| 14 | is 9:56 a.m.  The current location of today's |
| 15 | deposition is 915 I Street, Fourth Floor, |
| 16 | Sacramento, California 95814.  Today's witness is |
| 17 | Mark Grant in the case of Mark A. Grant versus |
| 18 | Michael Corral, et al.  This deposition was noticed |
| 19 | by the Office of the City Attorney for the |
| 20 | defendant. |
| 21 | Would Counsel please identify yourself and |
| 22 | state with whom you are appearing. |
| 23 | MS. VELASQUEZ:  Andrea Velasquez for the |
| 24 | City of Sacramento, Jose Mendez, and Michael Corral. |
| 25 | THE VIDEOGRAPHER:  Thank you. |

Page 6

| | |
|---|---|
| 1 | The court reporter is Jahmy Alvarez. |
| 2 | Would the reporter please swear in the |
| 3 | witness. |
| 4 | (Witness sworn.) |
| 5 | MS. VELASQUEZ:  Court reporter, before we |
| 6 | begin, do you have exhibit stickers that I can use? |
| 7 | THE COURT REPORTER:  Yeah. |
| 8 | MS. VELASQUEZ:  So I can just mark my own. |
| 9 | THE COURT REPORTER:  Yes, ma'am.  How many |
| 10 | do you need? |
| 11 | MS. VELASQUEZ:  How about two sheets. |
| 12 | THE COURT REPORTER:  Okay. |
| 13 | MS. VELASQUEZ:  Thanks so much. |
| 14 | THE COURT REPORTER:  You're welcome. |
| 15 | Okay. |
| 16 | MS. VELASQUEZ:  Okay.  Thank you.  Sorry. |
| 17 | I should have asked that off the record. |
| 18 | THE COURT REPORTER:  That's fine. |
| 19 | EXAMINATION |
| 20 | BY MS. VELASQUEZ: |
| 21 | Q.   All right.  Mr. Grant, can you please |
| 22 | state your name and spell your last name for the |
| 23 | record? |
| 24 | A.   My name is Mark Grant.  My last name is |
| 25 | spelled G-R-A-N-T. |

Page 7

| | |
|---|---|
| 1 | Q.   Thank you.  And what is your date of |
| 2 | birth? |
| 3 | A.   4/8/63. |
| 4 | Q.   Have you ever had your deposition taken |
| 5 | before? |
| 6 | A.   Yes. |
| 7 | Q.   When? |
| 8 | A.   Maybe five years ago; I don't recall. |
| 9 | Q.   What was the incident that brought you to |
| 10 | have your deposition taken before? |
| 11 | A.   It was a personal injury claim. |
| 12 | Q.   Were you the plaintiff in that claim? |
| 13 | A.   Yes. |
| 14 | Q.   Were you represented by counsel? |
| 15 | A.   No. |
| 16 | Q.   Who was the claim against? |
| 17 | A.   One of the defendants was Mercury |
| 18 | Insurance.  I forgot who the insured was; I forgot |
| 19 | his name. |
| 20 | Q.   Was it a car accident? |
| 21 | A.   Yes. |
| 22 | Q.   And so the lawyer representing the |
| 23 | defendant took your deposition? |
| 24 | A.   Yes. |
| 25 | Q.   Okay. |

Page 8

| | |
|---|---|
| 1 | How did that case end? |
| 2 | A.   It dragged for a while, but it ended in a |
| 3 | settlement. |
| 4 | Q.   Was that case in Sacramento County |
| 5 | Superior Court? |
| 6 | A.   Yes. |
| 7 | Q.   Okay.  You might remember the ground rules |
| 8 | then, for the deposition, but just in case you |
| 9 | don't, I'm just going to go over it again to |
| 10 | refamiliarize you with it. |
| 11 | One of the things that's different about |
| 12 | this time around is we're wearing masks, you're |
| 13 | wearing a face shield, and that is because we're in |
| 14 | the middle of the COVID-19 pandemic and we're all |
| 15 | trying to protect ourselves.  I do want |
| 16 | to -- though -- make clear that if you can't |
| 17 | understand me because of the mask or for any other |
| 18 | reason, please let me know, and I'm happy to try to, |
| 19 | you know, remedy -- remedy that however I can. |
| 20 | I will then -- I will also do my best to |
| 21 | try and make sure that I understand what you're |
| 22 | saying as you're speaking through a mask and a face |
| 23 | shield, and if I don't, I will be sure to ask you if |
| 24 | you could repeat that, or I'll just tell you, you |
| 25 | know, I'm not quite understanding what you're saying |

Page 9

1  or something like that, and will try our best to
2  understand each other.
3       A.   That's fine.
4       Q.   Okay.  So just know that if I do that, you
5  know --
6       A.   I understand the scope.
7       Q.   Okay.  So you're under oath, right?
8       A.   I'm under oath.
9       Q.   Okay.  The -- your answers to my questions
10 carry with it the same force and effect as if you
11 were testifying at trial; do you understand that?
12      A.   I understand that.
13      Q.   Okay.  You are required to give me your
14 best testimony, which might include times that you
15 have to estimate, okay?  And I'm entitled to that,
16 your best estimate of things, but I don't want you
17 to guess.  So if ever you feel like you need to
18 guess or you don't know the answer, you just need to
19 tell me "I don't know," okay, or "I don't remember."
20 I will, though -- if you tell me you don't remember,
21 I will try to ask follow-up questions to gauge when
22 your memory ends and when your memory begins, okay.
23           So I just want you to know ahead of time
24 that that will happen, because I don't want you to
25 feel like I'm -- you might feel like I'm asking the
                                                    Page 10

1  same question over and over again, and if you do, we
2  can talk about that, but that's what's happening.
3  This is a question-and-answer session where I'm
4  trying to get from you the facts of this case as you
5  know them.  Again, it doesn't help if you guess,
6  because then we're going off of things that might or
7  might not -- may or may not be true.
8           You are entitled to take a break whenever
9  you'd like during the course of this deposition, you
10 just let me know.  It will be presumed that you
11 understand all of my questions if you provide an
12 answer, and so it will be incumbent upon you to let
13 me know if you don't understand a question, and then
14 I can rephrase.
15          You'll be given the opportunity to review
16 your deposition transcript and make any changes to
17 it, but I have to caution you now that if you do
18 make a change to any of your answers, I can comment
19 upon that at trial in an effort to negatively impact
20 your credibility, okay?
21      A.   That's fine.
22      Q.   So it's important that you give your best
23 testimony today; do you understand that?
24      A.   I understand that.
25      Q.   Okay.  Do you have any questions about the
                                                    Page 11

1  process of a deposition before we start?
2       A.   I have no questions.
3       Q.   Okay.  The other thing is that only one
4  person can talk at a time, so we need to do our best
5  to try not to talk over each other, so allow me to
6  finish my full question before you start your
7  answer, and I will allow you the opportunity to
8  finish your full answer before I start my next
9  question.
10      A.   That's fine.
11      Q.   Okay.  Where do you currently reside?
12      A.   909 Regatta Drive, Sacramento, California
13 95819 -- oh, sorry -- 95833.
14      Q.   How long have you lived there?
15      A.   Since 1998.
16      Q.   Are you the owner of that property?
17      A.   Yes, I am.
18      Q.   Have you been the owner since 1998?
19      A.   Yes, I have.
20      Q.   Do you currently live with anyone else?
21      A.   No.
22      Q.   In or around the years 2018, did you live
23 with anyone at the Regatta Drive address?
24      A.   There was a girl that came and left, but
25 she didn't really stay there.
                                                    Page 12

1       Q.   Did she pay rent?
2       A.   No.
3       Q.   Who's on the deed for this property?
4       A.   I am.
5       Q.   By yourself?
6       A.   Yes.
7       Q.   Have you ever been married?
8       A.   Yes.
9       Q.   When were you married?
10      A.   1990, I think.  I don't recall.
11      Q.   Are you currently married?
12      A.   No.
13      Q.   When did your marriage end?
14      A.   I don't have that information, but I am
15 divorced.
16      Q.   Okay.  Were you divorced in 2018?
17      A.   Yes.
18      Q.   Okay.  When you bought the house on
19 Regatta Drive in 1998, were you married?
20      A.   No.
21      Q.   Okay.  And have you been married since
22 owning that house?
23      A.   No.
24      Q.   Okay.  Do you have any children?
25      A.   No.
                                                    Page 13

```
 1      Q.   What part of town is 909 Regatta Drive in?
 2      A.   Natomas.
 3           THE COURT REPORTER:  Could you say that
 4   again?
 5           THE WITNESS:  Natomas.
 6           THE COURT REPORTER:  Natomas.
 7           MS. VELASQUEZ:  Can you spell that for the
 8   court reporter, please?
 9           THE WITNESS:  N-O-T -- sorry,
10   N-A-T-O-M-A-S.
11           THE COURT REPORTER:  Thank you.
12           THE WITNESS:  I believe that's the
13   spelling.  I'm not sure.
14           MS. VELASQUEZ:  I think it is, too.
15           THE COURT REPORTER:  Thank you.
16   BY MS. VELASQUEZ:
17      Q.   Prior to 2018, had you had any interaction
18   with the City of Sacramento?
19      A.   What do you mean "interaction"?
20      Q.   Sure.  So your property that you own at
21   909 Regatta Drive is in the City of Sacramento; is
22   that right?
23      A.   That's correct.
24      Q.   And do you pay utilities to the City of
25   Sacramento?
                                             Page 14
```

```
 1      A.   Yes.
 2      Q.   Okay.  Do you have any other bills that
 3   you pay to the City of Sacramento besides utilities?
 4      A.   No.
 5      Q.   Okay.  Is -- do you pay garbage to the
 6   City?
 7      A.   Yes.
 8      Q.   Okay.
 9      A.   That's all included in the one bill.
10      Q.   Got it.
11           Other than paying bills to the City,
12   before -- I want to talk about before the code
13   enforcement action, which is the subject of this
14   litigation, that began in August of 2018, right?
15      A.   Yes.
16      Q.   Okay.  So before that time, had you had
17   any interaction with City employees from the -- from
18   code enforcement?
19      A.   What do you mean "interaction"?
20      Q.   Had you ever talked to a City employee who
21   you believed was a code enforcement, either
22   personnel, officer, staff member?
23      A.   I've never spoken to any of them.
24      Q.   Okay.  You never -- had you ever called
25   with a complaint to --
                                             Page 15
```

```
 1      A.   Yes.
 2      Q.   -- the City?
 3      A.   Yes.
 4      Q.   Yes.  Okay.  And when was that?
 5      A.   I don't have the exact date.
 6      Q.   Do you have an estimate?
 7      A.   Well, I don't have an estimate, but there
 8   should be a record of it.
 9      Q.   Okay.  Why don't you tell me what the call
10   was about?
11      A.   It was about the neighbor's gate.
12      Q.   And which neighbor was that?
13      A.   The neighbor beside me.
14      Q.   Do you know the address?
15      A.   I think it's -- I think it's 910 Regatta
16   Drive.  I'm not sure.  And then prior to that, I
17   complained about the neighbor on my right, the
18   913 Regatta Drive.
19      Q.   What was your complaint about
20   913 Regatta Drive?
21      A.   They kept flooding my backyard with water.
22      Q.   Okay.  What was your complaint about the
23   gate at 910 Regatta Drive?
24      A.   A lot of times, for no reason at all, I
25   guess the tenants there, they'd just kick it open
                                             Page 16
```

```
 1   and just fly out, out in the traffic, and one day,
 2   they hit a -- they almost hit a vehicle with it.
 3   So...
 4      Q.   They almost hit a vehicle with the gate?
 5      A.   Yes.
 6      Q.   Okay.  Did you have any other -- any other
 7   complaints to code enforcement prior to 2018?
 8      A.   Right off the top of my head, I don't
 9   recall.  There may have been, but I don't recall
10   right off the bat, no.
11      Q.   Okay.  Do you recall what happened
12   to -- with the gate after you complained to the City
13   about the gate issue at 910 Regatta?
14      A.   Pretty much nothing.
15      Q.   Okay.  Were you aware that -- whether or
16   not the City followed up with the -- with either the
17   tenants or the owners of 910 Regatta after your
18   complaint?
19      A.   I don't know.
20      Q.   Okay.  Did you receive any follow-up
21   communication from the City --
22      A.   No.
23      Q.   -- regarding your complaint?  No?
24      A.   (Nods head left to right.)
25      Q.   Okay.  What about your complaint at
                                             Page 17
```

Mark Grant                                                                                                          July 31, 2020

1   913 Regatta; do you know what happened after --
2      A.   Nothing happened.
3      Q.   Okay.
4      A.   I was forced to dig a trench about 60 feet
5   long and installed a concrete barrier.  And by then,
6   it was already too late.  The foundation in the
7   hallways cracked.  I had ants coming through it.
8   So...
9      Q.   Did you take any action against the
10  property owner at 913 Regatta?
11     A.   Yes.
12     Q.   What was that?
13     A.   A lawsuit for -- a lawsuit for them to
14  trigger to the building of the concrete barrier.
15     Q.   You filed a lawsuit?
16     A.   Yes.
17     Q.   Where?
18     A.   Sacramento Superior Court.
19     Q.   You represented yourself in that matter?
20     A.   Yes.
21     Q.   What happened with that lawsuit?
22     A.   I think they were ordered to pay about
23  $5,000, something like that.  I don't know the exact
24  figure.
25     Q.   Did you get a judgment?
                                                       Page 18

1      A.   I don't recall the exact details
2   but -- but they're -- but they did pay.
3      Q.   Okay.  Did you take any action against
4   your neighbors at 910 Regatta for the gate issue?
5      A.   No.
6      Q.   Okay.  Have you initiated any other
7   litigation besides the car accident and this one
8   against your neighbor at --
9      A.   What's the relevance?  I object, because
10  it's irrelevant.
11     Q.   Okay.  That's fine.  You still have to
12  answer unless -- well --
13     A.   I object because it's irrelevant.
14     Q.   I understand that.  There's no judge,
15  though, to --
16     A.   It's public information.  You can find it
17  at the courthouse.
18     Q.   Okay.  Can I take that, then, as you are
19  refusing to answer my question?
20     A.   I'm objecting to the question, because
21  it's public information available to everyone.
22     Q.   Okay.  Got it.  I'm going to take that as
23  a refusal to answer; is that fair?
24     A.   I don't have all the information with me.
25  You're asking me for something I don't have access
                                                       Page 19

1   to right now, so if you need that information, you
2   can pull it up on your computer, or you can go down
3   to the courthouse and research it.
4      Q.   Do you have any other complaints to the
5   Sacramento City Code Enforcement Department other
6   than the two that we just talked about?
7      A.   I do not, no.
8      Q.   Okay.  Since the -- since 2018, or during
9   the same time of 2019, that your Code Enforcement
10  case was going on, did you call and have any
11  complaints to Code Enforcement?
12     A.   I do not know.  That's not something I
13  dwell on.
14     Q.   Okay.  Is that to say that the only times
15  that you can remember calling Code Enforcement are
16  the two that you've already told me about?
17     A.   That's all I can recall.
18     Q.   Okay.
19          How were you made aware of the
20  Code Enforcement case against you?
21     A.   I found a letter taped to the mailbox
22  post.
23     Q.   At any point, did you come to learn how
24  that Code Enforcement case was initiated?
25     A.   No.
                                                       Page 20

1      Q.   Do you have any formation that any of your
2   neighbors called the City to complain about your
3   property?
4      A.   I do not associate with my neighbors.
5      Q.   Why?
6      A.   They're racist.  That's why I don't
7   associate with them.
8      Q.   Okay.  Do you currently have a mortgage on
9   your house?
10     A.   Nope.  I just paid it off.
11     Q.   Good job.  Congratulations.
12          Who was the -- who was the lender that you
13  had the mortgage with before?
14     A.   There was a number of mortgages.  The last
15  one was SLS.net.  I forgot what that stands for.
16     Q.   So let's talk about the posting -- your
17  notification of the Code Enforcement action against
18  you.  Do you recall when you received it?
19     A.   No, I do not.
20     Q.   Okay.  So what is it that you -- you said
21  that it was a posting on the mailbox?
22     A.   Right.
23     Q.   And what was contained in that posting?
24     A.   The documents that -- the notice and
25  order.
                                                       Page 21

1    Q.    What did you understand the issue to be?
2    A.    That's it, it made no sense.  He did not
3 identify any particular issue for me to address.  It
4 just recited the ordinances.
5    Q.    Okay.
6    A.    And that's why I said in discovery, ask
7 him what was going on, what were the violations, and
8 what needed to be done to correct them, and he never
9 responded.
10    Q.    And who are you referring to when you
11 say "he"?
12    A.    Michael Corral.
13    Q.    Okay.
14          How did you know Michael Corral's name?
15    A.    That's the name that was on the notice and
16 order.
17          (Exhibit 1 marked for identification.)
18    Q.    I'm going to show you what I've marked as
19 Exhibit 1.  Can you take a look at that and tell me
20 if this is the notice and order that you're
21 referring to?
22    A.    This appears -- hold on a minute.
23          These other documents were not attached.
24    Q.    Okay.  Why don't you tell me what part of
25 Exhibit 1 you received as the notice and order?

1          Okay.  You're handing me back pages 1, 2,
2 and 3; is that right?
3    A.    This is all I got.  That's all I received.
4 There's some other pages that are missing.
5 Exhibit A, attached to the complaint, that's the
6 exact document, that's all I got.
7    Q.    I'm going to show you these pages that you
8 sent to the City recently with your stipulation.
9 Tell my if that is what you received in your notice
10 and order.
11    A.    This is the full content of what I
12 received in the envelope that was attached to the
13 fence.
14    Q.    Okay.  I'm going to mark these documents,
15 then, as Exhibit 2.
16          (Exhibit 2 marked for identification.)
17    A.    You've identified each document that
18 you're marking as Exhibit 2?  Do you have a list of
19 the documents that you're including in your exhibit?
20    Q.    Yes.  You're going to get a copy of these,
21 actually, because they will be included in the
22 transcript of the deposition, and so these documents
23 together will be in the deposition, but yes, we'll
24 go over it to make clear what we've just done.
25    A.    Okay.

1    Q.    Okay.  So Exhibit 1 that I've handed you
2 is a -- are a series of documents that you have said
3 is -- contains some but -- some of the documents
4 that you received but also contains other documents
5 that you did not receive in your notice and order
6 packet; is that right?
7    A.    That's correct.
8    Q.    Okay.  And Exhibit 2 is the full contents
9 of what you believe you received in --
10    A.    This is what I received, not what I
11 believe I received.
12    Q.    Exhibit 2 is what you received in the
13 notice and order packet?
14    A.    Exactly.
15    Q.    Okay.
16          Okay.  And Exhibit 2 contains a cover
17 letter signed by Michael Corral; is that right?
18    A.    That's correct.
19    Q.    You can just put Exhibit 1 off to the
20 side.
21          So the top front -- the top page of
22 Exhibit 2 is the cover letter for Michael Corral; is
23 that right?
24    A.    That's correct.
25    Q.    Okay.  And then the second page of

1 Exhibit 2 is entitled "Notice and Order to Clean,
2 Remove, Repair, and/or Cease a Public Nuisance;" is
3 that right?
4    A.    Yes, that's correct.
5    Q.    And that's also signed by Michael Corral?
6    A.    That's correct.
7    Q.    And then the third page of Exhibit 2 is
8 entitled "Community Development Department
9 Neighborhood Code Compliance Division," and it's a
10 correction list; is that right?  Well, it's entitled
11 "Correction List"?
12    A.    Where do you see "Correction List"?
13    Q.    If I can -- right in the top-left corner,
14 "Correction List."
15    A.    Okay.
16    Q.    Am I correct in identifying that document
17 in that manner?
18    A.    Yes.
19    Q.    Okay.  And then the next page of
20 Exhibit 2 -- can you turn the page so I can see what
21 you have there?
22          That looks like a legal description of
23 your property?
24    A.    That's correct.
25    Q.    Okay.  And turning the page, what is that

1  last page of Exhibit 2?
2      A.    "Notice of Change of Owner's Address."
3      Q.    Okay.  And it is, in fact, not the last
4  page of Exhibit 2, but the next page of Exhibit 2 is
5  entitled "Notice of Change of Owner's Address or
6  Sale of Property," right?
7      A.    That's correct.
8      Q.    Okay.  And then the last page is a proof
9  of service; is that right?
10     A.    That's correct.
11     Q.    Okay.  And what is the date of Exhibit 2?
12     A.    On which page, the front page?
13     Q.    I think the front page has -- the front
14  two pages are dated, if I'm not mistaken.
15     A.    August 7th.
16     Q.    2018?
17     A.    Correct.
18     Q.    Is that the date that you received this
19  notice and order packet?
20     A.    The exact date I received it, I do not
21  know.  Like I said, it was posted to the mailbox
22  post.
23           (Exhibit 3 marked for identification.)
24     Q.    I'll show you a photograph that I've
25  marked as Exhibit 3.  Is that the front of your
                                              Page 26

1  property?
2      A.    Yes.
3      Q.    Okay.  And is that how the notice and
4  order packet -- do you see the --
5      A.    That's it --
6      Q.    Let me back up.  Let me actually ask a
7  question here.
8           The red thing taped to the white fence
9  depicted in Exhibit 3, is that how you found the
10  notice and order packet?
11     A.    That's correct.
12     Q.    Okay.  And you can see that the date of
13  the photograph is -- sorry -- August 9th, 2018; do
14  you see that on there?
15     A.    Yes.
16     Q.    Okay.  Do you believe that -- that the
17  photograph is properly dated, that the posting was
18  in fact made on -- on or about August 9th, 2018?
19     A.    I have no way of knowing.
20     Q.    Okay.  But you recall that it was sometime
21  in early August of 2018 that you received the notice
22  and order packet?
23     A.    I believe it was in August, yes.
24     Q.    Of 2018?
25     A.    Yes.
                                              Page 27

1      Q.    Okay.
2            Do you recall signing for the letter and
3  returning the --
4      A.    I signed for nothing.
5      Q.    Okay.
6            (Exhibit 4 marked for identification.)
7            Let me show you what I've marked as
8  Exhibit 4.  Do you recognize Exhibit 4?
9      A.    It is a return receipt.
10     Q.    And is that your signature on Exhibit 4?
11     A.    Yes, it is.
12     Q.    Is Exhibit 4 the return -- the signed
13  return receipt of the notice and order packet?
14     A.    I do not know.
15     Q.    Okay.
16     A.    And if it's on the gate, I don't think
17  there would be -- I don't think that's how it would
18  be delivered.  Or if it's on the fence, that's not
19  how it would be delivered.
20     Q.    Do you recall the notice and order packet
21  being delivered in another manner in addition to
22  being posted on the gate as is depicted in
23  Exhibit 3?
24     A.    It could have been, but right at the
25  moment, I do not recall.
                                              Page 28

1      Q.    Okay.  Does looking at Exhibit 4 and
2  seeing that you signed for --
3      A.    I signed for something.
4      Q.    -- something --
5      A.    Yes.
6      Q.    Right, we can agree that Exhibit 4 shows
7  that you signed for something, right?
8      A.    Uh-huh.
9      Q.    Okay.  Does that jog your memory or help
10  you refresh your recollection as to what it was that
11  you signed for or received?
12     A.    No, because I get -- I signed for these
13  frequently.
14     Q.    For what else do you sign those types of
15  forms for?
16     A.    I object.  That's invasion of privacy.
17     Q.    Do you have a -- some options in your head
18  as to what this particular signature on Exhibit 4
19  could have been?
20     A.    I'm pretty sure that it was -- if you say
21  it was another packet, that's probably what it was.
22     Q.    Okay.
23     A.    But I did -- I believe I do -- do recall
24  having a -- two of exhibit --
25     Q.    Two?
                                              Page 29

Mark Grant                                                                  July 31, 2020

1    A.   What happened to exhibit --
2    Q.   I think it's underneath three.
3    A.   Yeah, I think -- I believe this came
4 certified as well.
5    Q.   Okay.  So you got two copies of the same
6 thing?
7    A.   Two copies of the same thing.
8    Q.   Okay.  One of Exhibit 2 was posted on your
9 gate, as depicted in Exhibit 3?
10   A.   Correct.
11   Q.   And then one of Exhibit 2 came certified
12 mail, which you've signed for, as shown in
13 Exhibit 4?
14   A.   I believe so.
15   Q.   Okay.  But the packets were exactly the
16 same?
17   A.   They were exactly the same.
18   Q.   Okay.  And neither one of them were
19 Exhibit 1?
20   A.   No.
21   Q.   Okay.
22   A.   If they were, then I would not have sent
23 in discovery to defend Michael Corral.
24   Q.   Why do you say that?
25   A.   Because from glancing at this, this had
                                              Page 30

1 the information I was requesting.
2    Q.   Glancing at Exhibit 1?
3    A.   Yes.
4    Q.   Okay.  And so you then -- so take me
5 through after you received either one or both of
6 Exhibit 2's, you said you sent discovery to
7 Michael Corral.  Was that the first thing that you
8 did?
9    A.   Yes.
10   Q.   Okay.  Did you ever call the City to
11 inquire with Michael Corral or anyone else before
12 sending the discovery?
13   A.   I called -- I called Michael Corral, there
14 was never an answer, and I think he called -- he
15 might have called back while I was away; I don't
16 know.
17   Q.   Did you -- now, I understand that you did
18 appeal the notice and order packet; is that right?
19   A.   That's correct.
20        (Exhibit 5 marked for identification.)
21   Q.   Okay.  I'm going to show you what I've
22 marked as Exhibit 5, which I believe is your appeal
23 packet, but I'd like you to go through it and tell
24 me if that, in fact, is the contents of your appeal
25 packet.
                                              Page 31

1    A.   This last document, I don't think it was
2 part of my appeal, but it is a document that I sent
3 to the City. ·
4    Q.   Okay.  Can you just pull that out of
5 Exhibit 5?
6        Thank you.  I'll give you that document
7 back.
8        Okay.  So now Exhibit 5 is your appeal
9 packet; is that right?
10   A.   Yes.
11   Q.   Okay.
12        And with this appeal packet, you sent
13 money to the City in order to appeal; is that right?
14   A.   I had to pay -- pay at the same time I
15 filed the appeal.
16   Q.   Right.  And how much was that?
17   A.   $400.
18   Q.   And you paid that to the City of
19 Sacramento?
20   A.   Correct.
21   Q.   Okay.  Do you recall the order in which
22 you sent things in to the City?  Because I know that
23 you sent in -- you have your appeal, you also did a
24 request for clarification and a petition for
25 administrative review.  Do you know which one you
                                              Page 32

1 did first?
2    A.   The appeal is the petition for
3 adminis- -- okay, the administrative review, that
4 was for the fee.
5    Q.   Okay.
6    A.   I believe that had to be in at a certain
7 period of time, so whatever the date is on that,
8 that's the date that it was sent in.
9    Q.   Your notice of appeal, that is
10 Exhibit 5 --
11   A.   Yes.
12   Q.   -- was received on September --
13 September 6th, 2018; do you see that?
14   A.   Yes.
15        (Exhibit 6 marked for identification.)
16   Q.   Okay.  So then, let me show you Exhibit 6,
17 which is your -- tell me what Exhibit 6 is.
18   A.   "Petition for Administrative Review of
19 Order of an Agency or Officer and Declaration of
20 Mark A. Grant." "
21   Q.   Okay.  And what are you saying -- you were
22 saying that that has to do with a fee?
23   A.   It has to do with the fees.
24   Q.   And when did you submit that to the City?
25   A.   That was sent on or about
                                              Page 33

Mark Grant                                                                  July 31, 2020

1  September 3rd, 2018.
2      Q.   And was that the -- the filing fee for the
3  appeal or the fees for the actual violations?
4      A.   Actual fees for violation.
5      Q.   Which were what?
6      A.   $575 and another title fee of $100.
7           (Exhibit 7 marked for identification.)
8      Q.   All right.  And then take a look at
9  Exhibit 7.  This is another document that you sent
10 in to the City; is that right?
11     A.   That is correct.
12     Q.   And what is Exhibit 7?
13     A.   A "Request for Clarification of Code
14 Violations and Production of Evidence."
15     Q.   Okay.  And when did you send that to the
16 City?
17     A.   This was sent August 27th, 2018.
18     Q.   When did you send in your appeal packet?
19     A.   I didn't send it in; I filed it in person.
20     Q.   Okay.
21     A.   And that was on -- September 5th, 2018.
22     Q.   Okay.  So looking at the dates of these
23 documents, would you agree that after receiving the
24 notice and order packet, that's Exhibit 2, that the
25 next thing you did was send in Exhibit 7?
                                              Page 34

1      A.   August 27th, I sent in Exhibit 7, and this
2  was before the appeal was filed.  The appeal was
3  filed on September -- did I say September 3rd?
4      Q.   I think you said September 5th.
5      A.   Oh, September 5th.  So this was --
6  Exhibit 7 was before Exhibit 5.
7      Q.   Okay.  Do you recall how you sent
8  Exhibit 7 to the City?
9      A.   I do not recall.  I either mailed it or
10 delivered it in person; I don't recall.
11     Q.   And on Exhibit 7, do you see the
12 handwritten "attention, Michael Corral" at the top?
13     A.   Yes.
14     Q.   Is that your handwriting?
15     A.   It appears to be so, yes.
16     Q.   Okay.
17          Did you ever get a response from
18 Michael Corral or anyone else at the City to
19 Exhibit 7?
20     A.   I got a -- I believe I got a letter
21 from -- I believe I got a letter from the City; I
22 vaguely remember.
23     Q.   And what do you recall of that letter's
24 contents; what do you recall the contents of that
25 letter being?
                                              Page 35

1      A.   I don't recall what it -- what it said.
2      Q.   Did the letter that you received from the
3  City in response to Exhibit 7 satisfy each of the
4  questions that you had asked in Exhibit 7?
5      A.   No.  Now that I recall, it said -- I
6  believe it said "wait until the hearing" or
7  something like that.  "Resolve it at the
8  hearing" -- I don't recall what the letter said.
9      Q.   Okay.
10     A.   And that's why I requested a stay.
11     Q.   Was that via a separate document?
12     A.   It was part of the appeal.
13     Q.   Okay.  Why did you request a stay?
14     A.   Because I didn't know what ordinance the
15 code violations were about.
16     Q.   Okay.  So you had received the notice of
17 the code violations, and then you sent in Exhibit 7
18 asking for clarification, right?
19     A.   Right.
20     Q.   And then you got a letter from the City
21 saying "no, wait for your hearing," but you wanted
22 to know ahead of the hearing?
23     A.   Exactly, so I can be prepared.
24     Q.   Right, so you could be prepared to appear
25 at the hearing?
                                              Page 36

1      A.   No, so I can be prepared to defend myself
2  at the hearing.
3      Q.   Correct.  Okay.
4           So did anything happen in between -- in
5  between that time of you receiving the letter with
6  the City and then -- well, sorry, let me back up.
7           Did you file the appeal packet before or
8  after you received that letter from the City?
9      A.   I don't recall.
10     Q.   Okay.  At some point, you got a date of
11 your hearing, right?
12     A.   Yes.
13     Q.   Okay.  And do you recall when the date of
14 the hearing was supposed to be?
15     A.   I don't recall.  Maybe the 30th of
16 September; I don't know.
17     Q.   Okay.
18          So if you got the notice of hearing -- if
19 you got the notice of hearing packet in August, then
20 do you remember it was approximately a month until
21 your hearing?
22     A.   I do not recall.  That information you
23 should have.
24     Q.   Okay.  Fair enough.  Did you make other
25 attempts prior to the hearing to ascertain the facts
                                              Page 37

1  or information about the code violation so that you
2  could be prepared for the hearing other than
3  Exhibit 7?
4      A.  Yes, I made discovery requests.
5      Q.  Okay.  And were those ever answered?
6      A.  They were not.
7      Q.  Okay.  Did you get any response?
8      A.  I believe that's the -- that's the one
9  where I got the letter saying to wait for my
10 hearing.
11     Q.  Okay.  Did you get a version of that
12 letter only once or did you get it multiple times?
13     A.  I don't recall.
14     Q.  Okay.  Do you recall whether or not you
15 sent in multiple requests and then got the
16 letter -- and the letter was in response to like
17 your multiple requests or have you got -- if you
18 sent in one request, got a response, sent in another
19 request, got a response, or do you not recall one
20 way or the other?
21     A.  I just -- I sent in a request for
22 clarification, and then I sent in discovery.  That's
23 all I recall.
24     Q.  Okay.
25     A.  I did not get a response to either.
                                              Page 38

1      Q.  Was your -- you said you requested a stay?
2      A.  Yes.
3      Q.  Was that granted?
4      A.  When I got to the hearing, someone met me
5  at the front door and said that my case was dropped
6  because of -- Michael Corral did not show up.  So I
7  never even got inside; I never even made it to the
8  hearing.
9      Q.  Okay.  Do you recall who was the person
10 who told you that, that your case was dropped?
11     A.  There was someone who said she was a
12 representative of the City.  I don't recall her
13 name.
14     Q.  Okay.  Was your hearing -- when you showed
15 up for your hearing, was that on the same date that
16 you think it was originally set for, on or around
17 September 30th?
18     A.  I don't know the exact date of the
19 hearing, but I did show up for the hearing.
20     Q.  Okay.  I guess my question is it didn't
21 get extended or it didn't get moved from the
22 original date?
23     A.  No, it did not.
24     Q.  Okay.
25         Okay.  So then you received notification
                                              Page 39

1  from this representative that your case has been
2  dropped.  What then was the process as you
3  understood it after that?
4      A.  There was no process.  About four or five
5  months later, I get -- I think it was probably
6  around January, I got a refund of the $400.  And
7  then about a month or two after that, I guess they
8  released the declaration of public nuisance.  I
9  don't have the exact date.
10     Q.  And then you never were assessed the fines
11 of $575 or the $100 for the court -- or for the --
12     A.  Title fee?
13     Q.  -- title fee?
14     A.  No.
15     Q.  Okay.  Did you -- had you paid that fine
16 before showing up to your hearing?
17     A.  No.
18     Q.  Okay.  The only thing you had paid at that
19 point was the $400?
20     A.  That's correct.
21         (Exhibit 8 marked for identification.)
22     Q.  Okay.  Let me show you what I've marked as
23 Exhibit 8.
24         Do you recognize this document?
25     A.  Yes.
                                              Page 40

1      Q.  Okay.  And what is this?
2      A.  It's a "Termination of Declaration of
3  Public Nuisance."
4      Q.  Okay.  And this is the -- the form that
5  was recorded, right, with the County Recorder's
6  Office?
7      A.  Yes, I believe so.
8      Q.  Okay.  So looking at this document, on
9  Exhibit 8, it says on the document that the -- that
10 a declaration of public nuisance was filed on
11 August 24th of 2018.  That language is in the --
12     A.  First paragraph.
13     Q.  Yeah, the "I hereby certify."
14     A.  That's what it says.
15     Q.  Okay.  Do you recall that to be true, that
16 the Declaration of Public Nuisance was filed on
17 August 24th, 2018?
18     A.  According to the notice and order, that
19 had already been filed.
20     Q.  Okay.  So the notice and order packet that
21 you received as Exhibit 2, correct?  It's right
22 here.
23     A.  Yes.
24     Q.  Okay.  And so from Exhibit 2, you
25 understood that the Declaration of Public Nuisance
                                              Page 41

Mark Grant                                                           July 31, 2020

1    had been filed when?
2         A.    It had already been filed.  According to
3    this, it had already been filed.
4              It says "a Declaration of Public Nuisance
5    regarding this property has been recorded with the
6    County Recorder."
7         Q.    Okay.  And that's on the first page of
8    Exhibit 2?
9         A.    That's correct.
10        Q.    Okay.
11             All right.  So it was your understanding
12   that the declaration was filed at some prior to
13   August 7th of 2018?
14        A.    No, it was filed -- according to this, it
15   was -- had already been filed.  I don't know when it
16   was filed, but according to that, it was already
17   filed.
18        Q.    Right.  And the date on Exhibit 2 is
19   August 7th, 2018?
20        A.    That is correct.
21        Q.    Okay.  So then is it your understanding
22   that the Declaration of Public Nuisance was filed at
23   some point prior to August 7th, 2018?
24        A.    It was filed on August 7th or prior to it.
25        Q.    Okay.
                                                  Page 42

1         A.    That's my understanding of the letter.
2         Q.    Did you ever check with the
3    County Recorder's Office to see when exactly it was
4    filed?
5         A.    I didn't really check.  I went down
6    there -- down and got a copy, but I don't remember
7    the date on the copy.  They were asking me if
8    I -- they were asking me why I was trying to get a
9    copy when I should have already received a copy.  I
10   told them I never got a copy.  So I went down there
11   and ordered a copy.
12        Q.    And did you, in fact, receive a copy?  I
13   mean, after you ordered it, you got it?
14        A.    Right.
15        Q.    Okay.  So you got a copy from the County?
16        A.    Right.
17        Q.    Okay.  But you're saying you never got a
18   copy of it from the City?
19        A.    Exactly.
20        Q.    Okay.
21             Okay.  Do you still have the copy of the
22   Declaration of Public Nuisance?
23        A.    I believe it's attached to the amended
24   complaint 002 as Exhibit B, I'm not sure.  But I did
25   attach it to the complaint, I believe.
                                                  Page 43

1         Q.    Okay.  So then Exhibit 8 that we were
2    looking at, which is the Termination of the
3    Declaration of Public Nuisance, do you know when
4    that was recorded?
5         A.    I do not.  I never received a copy of it
6    either.
7         Q.    Okay.
8         A.    But according to this, this was filed on
9    January 6th, 2019, according to this document.
10        Q.    Right.
11             So you have told me in responses to
12   discovery that you suffered emotional-distress type
13   injuries, right?
14        A.    Yes.
15        Q.    Okay.  And as I understand it -- and
16   please correct me if I'm wrong in my
17   understanding -- that those emotional distress
18   injuries were caused by the Declaration of Public
19   Nuisance being filed, because at that point, your
20   house was still -- you were still paying your
21   mortgage?
22        A.    Exactly.
23        Q.    Okay.
24             Let's -- let's take a break.  We've been
25   going for almost an hour, and let me see if I can
                                                  Page 44

1    find your attachment to the complaint as Exhibit B,
2    and that will tell us exactly when -- you know, what
3    the documents show for when the -- the public
4    nuisance was recorded.
5         A.    Okay.
6         Q.    Okay.
7              THE VIDEOGRAPHER:  The time is 10:57 a.m.
8    We are off the record.
9              (Recess taken.)
10             THE VIDEOGRAPHER:  The time is 11:04 a.m.
11   We are back on the record.
12   BY MS. VELASQUEZ:
13        Q.    All right.  I'm going to hand you
14   Exhibit 9.  This is the document that you attached
15   to your amended complaint.
16             (Exhibit 9 marked for identification.)
17             Do you recognize Exhibit 9?
18        A.    Yes, I do.
19        Q.    What is Exhibit 9?
20        A.    This is a "Notice of Pending Enforcement
21   Proceeding or Action."
22        Q.    And that was what was filed at the County
23   Recorder's Office on your property?
24        A.    That's correct.
25        Q.    When was it filed?
                                                  Page 45

1    A.   According to this document, it was filed
2  on August 24th, 2018.
3    Q.   Okay.  So we have the -- the filing on
4  August 24th, 2018, and then the termination on
5  January 6th, 2019, right?
6    A.   That is correct.
7    Q.   Is this the window of time that you
8  alleged to have suffered emotional distress damages
9  because of this Code Enforcement case?
10   A.   Repeat -- repeat the question.
11   Q.   You have told me -- let me back up.  You
12 have told me in discovery responses that you
13 suffered emotional distress due to the filing of the
14 Declaration of Public Nuisance?
15   A.   Correct.
16   Q.   Okay.  Now, that filing occurred on
17 August 24th, 2018, and then was terminated on
18 January 6th, 2019?
19   A.   Correct.
20   Q.   Okay.  So I'm just trying to get a handle
21 on is this the period of time that you suffered the
22 emotional distress damages that you're claiming?
23   A.   No, it started on August 7th, when I got
24 that letter.
25   Q.   Okay.  Because that's when you believed
Page 46

1  the filing occurred?
2    A.   Exactly.
3    Q.   Okay.  And then did it -- is the end date
4  January 6th, 2019, or is it some other time?
5    A.   I would say January 6th.
6    Q.   Okay.  So tell me about the emotional
7  distress that you suffered during this time period
8  roughly on or about August 7th, 2018, to
9  January 6th, 2019?
10   A.   It was nothing but stress, because I
11 didn't know what was going on.
12   Q.   Okay.  And how did that manifest itself?
13   A.   What do you mean how did it manifest
14 itself?
15   Q.   How did the stress affect your daily life?
16   A.   I was constantly worried about what was
17 going on, if I was going to lose my
18 property -- property or not.  And then I wouldn't
19 get nowhere with the City when I asked them what was
20 going on, what were the code violations about?  No
21 one would respond; they would tell me "wait until
22 your hearing."
23   Q.   During this time period, were you ever
24 contacted by any of your lenders?
25   A.   No.
Page 47

1    Q.   Did you try to contact them?
2    A.   No.
3    Q.   Were you employed at the time?
4    A.   No.
5    Q.   Did you do anything differently with
6  respect to payment of your house than you were
7  intending to?
8    A.   No.
9    Q.   Did you talk to anyone about the stress
10 that you were under, the circumstances that caused
11 your stress?
12   A.   No.
13   Q.   Did you ever seek medical treatment?
14   A.   No.
15   Q.   Did you ever seek like any -- any
16 counseling services?
17   A.   No.
18   Q.   Okay.  Do you have any out-of-pocket costs
19 for this emotional distress?
20   A.   No.
21   Q.   Okay.  Did you find that your health
22 declined during this time period?
23   A.   Nothing but stress; that's it.
24   Q.   Okay.  Can you tell me how that affected
25 your overall --
Page 48

1    A.   There was a constant worry.
2    Q.   Okay.  Did you take any medication --
3    A.   No.
4    Q.   -- for that?  Okay.
5         Did the constant worry affect any other
6  underlying conditions that you may or may not have
7  had?
8    A.   No.
9    Q.   Did it affect any of the relationships
10 that you have in your life?
11   A.   No.
12   Q.   Okay.  What are the other damages that you
13 allege to have suffered as a result of this -- this
14 Code Enforcement action?
15   A.   Civil rights damage, as alleged in my
16 affidavit and complaint.
17   Q.   Okay.  And that is because -- and your
18 claim there is "discrimination;" is that right?
19   A.   Pretty much so.
20   Q.   Okay.  And I think the -- what is the
21 basis or the factual underlying basis of the civil
22 rights complaint?
23   A.   I was being treated different from other
24 residents.
25   Q.   Okay.  And you believe the City was
Page 49

1    treating you differently because of what?
2        A.   They're not micromanaging all the other
3    properties.
4        Q.   Okay.  And how do you know that?
5        A.   I don't.
6        Q.   Okay.  Are you basing that contention upon
7    the fact -- or partly upon the fact that -- that you
8    called on your neighbors and it appears that nothing
9    happened?
10       A.   No.
11       Q.   Okay.
12       A.   The same violations are -- the same
13   violations that I'm being charged with, I don't see
14   how they apply to me, but there are other properties
15   around me where those violations do apply.
16       Q.   Okay.  And do you have any knowledge that
17   on those other locations where those violations do
18   apply that the City has been informed of those
19   violations?
20       A.   I do not know.
21       Q.   Okay.  Where do you contend violations do
22   occur on other properties?
23       A.   It's in my complaint.  I've listed the
24   addresses.  And that's just some of them.
25       Q.   And these are -- these are locations

1    within your neighborhood?
2        A.   Yes.
3        Q.   Okay.  Are you aware of how the City
4    receives -- well, are you aware of how the City
5    becomes aware of code violations on private
6    property?
7        A.   I don't know how the City operates their
8    Community Development Department.
9        Q.   Okay.  I gather that you know from prior
10   experience that one way that the City becomes aware
11   of -- of code violations is through complaints?
12       A.   That's correct.
13       Q.   Right, you yourself having made a few?
14       A.   Yes.
15       Q.   Okay.  Have you ever called to complain
16   about those other locations you're talking about
17   that have the same violations that you were accused
18   of?
19       A.   No.
20       Q.   Okay.  And you don't know if anyone else
21   has?
22       A.   No, I do not know.
23       Q.   Okay.  How do you know that those other
24   locations aren't being micromanaged?
25       A.   Because if you Google these addresses, the

1    violations are right out in public.  Or if you
2    Google "Google Images," you'll see them.
3        Q.   Okay.  So you're saying that you believe
4    the City is not micromanaging them because the
5    violations are still there?
6        A.   Correct.
7        Q.   Okay.  And had the City been micromanaging
8    them, then they would be gone?
9        A.   Exactly.
10       Q.   Okay.  So the City must not be doing
11   anything because the violations are still there,
12   right?
13       A.   Correct.
14       Q.   Okay.  What is your contention as far
15   as -- so this -- that the City is discriminating
16   against you, is it because of race, gender,
17   ethnicity, color of your skin, what is your
18   contention as far as --
19       A.   I'm not being treated the same as other
20   property owners around me.
21       Q.   Okay.  Do you believe that's because you
22   are -- present -- the color of your skin would lead
23   one to believe that you're African-American?
24       A.   I do not know.
25       Q.   Okay.  I believe in your complaint you had

1    a reference to the fact that most of your neighbors
2    are Hispanic?
3        A.   Correct.
4        Q.   Okay.  And you are one of the only
5    non-Hispanics in your neighborhood; is that right?
6        A.   In that area, yes.
7        Q.   Okay.  And so do you believe that
8    the -- that the City is picking your property
9    because you're the only non-Hispanic, or is it more
10   that you think your neighbors are picking your
11   property to complain against you because you're the
12   only non-Hispanic?
13       A.   It can be a combination of both.  I do not
14   know.
15       Q.   Okay.  Do you know the property owners of
16   these other properties that you're saying have the
17   codes violations that you were accused of having?
18       A.   Do I know them personally?  What do you
19   mean "do I know them"?
20       Q.   Do you know them personally?
21       A.   No.
22       Q.   Okay.  Do you know if they Hispanic?
23       A.   Yes.
24       Q.   You know that they are Hispanic?
25       A.   Yes.

Mark Grant                                                      July 31, 2020

1    Q.   Okay.  How many properties are we talking
2  about?
3    A.   I'd say more than several.
4    Q.   And to you, how many is "several"?  What
5  is your definition of "several"?
6    A.   More than seven.
7    Q.   More than seven, okay.  And these are all
8  in the Natomas area?
9    A.   All in my vicinity.
10   Q.   Okay.
11   A.   Or all in the vicinity of my residence.
12   Q.   Got it.
13        Are you -- are you still out any money as
14 a result of all of this -- this Code Enforcement
15 case?
16   A.   As far as the appeal fee, it was returned.
17   Q.   Okay.  Do you have any other economic
18 damages because of this?
19   A.   No.
20   Q.   Are there any damages that you're claiming
21 because of this, other than the emotional distress?
22   A.   Just the civil rights.
23   Q.   Yes.  Okay.  So the civil rights is -- so
24 the violation of your civil rights?
25   A.   Right.
                                              Page 54

1    Q.   That's what you're referring to.  Okay.
2  And what injuries did you suffer as a result of that
3  violation?
4    A.   The violation of my civil rights.
5    Q.   Right.  Okay.  Did you -- did you lose any
6  money or did you have to spend money on anything
7  that you otherwise would not have done --
8    A.   No.
9    Q.   -- because of the violation of your civil
10 rights?
11   A.   No.
12   Q.   Okay.
13        (Exhibit 10 marked for identification.)
14        All right.  Let me show you Exhibit 10,
15 and this is a picture that is purported to be
16 taken on August 3rd, 2018, by Michael Corral.  Do
17 you recognize what is depicted in Exhibit 10?
18   A.   Yes, it's my boat.
19   Q.   Okay.  And was your boat part of what was
20 alleged to have been a code violation?
21   A.   Say again.
22   Q.   Was your boat part of what was alleged to
23 have been in violation of the code?
24   A.   I do not know.
25   Q.   Okay.  In your appeal packet, I think that
                                              Page 55

1  you submitted some documentation of the boat; is
2  that right?  .
3    A.   I submitted the registration and
4  insurance.
5    Q.   Okay.  And why did you do that?
6    A.   Because they said "the vehicles."  A boat
7  is -- well, the boat is sitting in my trailer, and
8  the trailer is a vehicle.
9    Q.   Okay.  So you did understand that your
10 boat was part of what was alleged to have been in
11 violation of a code?
12   A.   No, I did not.
13   Q.   Okay.
14   A.   I sent information of all the vehicles in
15 my property.
16   Q.   Okay.  Take a look at Exhibit 11.  It's
17 another photograph taken by Michael Corral.  Do
18 you recognize what's depicted in Exhibit 11?
19        (Exhibit 11 marked for identification.)
20   A.   My Range Rover and my van.
21   Q.   And these are two of your vehicles?
22   A.   Exactly.
23   Q.   Okay.  And did you submit registration --
24   A.   And insurance for those two.
25   Q.   Okay.  With your appeal packet?
                                              Page 56

1    A.   I don't think I had the registration for
2  the Range Rover, but it was registered.
3    Q.   Okay.
4    A.   I sent the insurance for that, I believe.
5    Q.   Is there also a motorcycle depicted in
6  Exhibit 11?
7    A.   Yes, and that's registered and insured as
8  well.
9    Q.   Okay.  Is that your motorcycle?
10   A.   Yes.
11   Q.   Okay.
12        Oh, take another look at Exhibit 10, if
13 you would.  I have one more question on it.  That's
14 the boat picture.
15   A.   Okay.
16   Q.   Does Exhibit 10 accurately depict the boat
17 and your front property as it was in August of 2018?
18   A.   It depicts it on a day in August of
19 2019 -- 2018.
20   Q.   What day is that?
21   A.   I don't know.  Whatever date was -- this
22 picture was photographed.  It says "August 3rd," so
23 I assume it was August 3rd, 2018.
24   Q.   Okay.  And do you believe that this
25 picture accurately depicts the condition as it -- as
                                              Page 57

1    it existed on that day?
2        A.    Yes.
3        Q.    Okay.    Now, same question for Exhibit 11.
4    Does Exhibit 11 -- which are the cars right here.
5        A.    Okay.
6        Q.    Does Exhibit 11 accurately depict the cars
7    in your driveway on August -- is that
8    August 4th, 2018?
9        A.    Yes.
10            (Exhibit 12 marked for identification.)
11        Q.    Okay.    All right.    Now, take a look at
12    Exhibit 12 for me.    Exhibit 12 is a photograph of
13    your front fence, taken on August 3rd, 2018; is that
14    right?
15        A.    That is correct, yes.
16        Q.    And does Exhibit 12 accurately reflect
17    what your fence and front yard looked like on
18    August 12th of 2018?
19        A.    I believe so.
20        Q.    I'm sorry, I said August 12th.    I meant
21    August 3rd of 2018.
22        A.    I believe so.
23        Q.    Okay.    And did you understand something
24    about this fence to be part of what was contained as
25    an allegation of a code violation?
                                                  Page 58

1        A.    I did not.
2        Q.    Okay.
3        A.    Oh, I take that back.    I believe so.
4    They're saying that the fence did not go all the way
5    across the yard, and in my appeal, I stated that I
6    couldn't -- the fence cannot go across the yard
7    because there's a utility box in the corner right
8    here.    There's a -- there's a utility easement.
9        Q.    Okay.    And so you're prevented from the
10    fence connecting because of the easement?
11        A.    Right.    That is correct.
12        Q.    Okay.
13        A.    You cannot obstruct public utilities.
14            (Exhibit 13 marked for identification.)
15        Q.    Okay.    Let me show you Exhibit 13.    And
16    this is a picture of the front of your property
17    taken on August 3rd, 2018; is that right?
18        A.    That is correct.
19        Q.    Does this picture --
20        A.    It says "August 3rd, 2018," yes.
21        Q.    Yeah.    Does this picture accurately
22    reflect the front of your property on
23    August 3rd, 2018?
24        A.    I believe so.
25            (Exhibit 14 marked for identification.)
                                                  Page 59

1        Q.    Okay.
2            I'll show you Exhibit 14.    This is a
3    photograph, again, of your fence in the front of
4    your property taken, this time, on 10/17/18, so
5    that's October.    Do you recognize what's depicted in
6    Exhibit 14?
7        A.    Yes, I do.
8        Q.    Okay.    Does Exhibit 14 accurately reflect
9    what your -- that fence in your property looked like
10    on October 17th, 2018?
11        A.    I assume so.
12        Q.    Okay.    Is -- and this, again, is that
13    portion of the fence that is not connected, and
14    you're saying it's because there's a utility
15    easement, right?
16        A.    That is correct.
17        Q.    Okay.    And is the utility box that you
18    referenced before depicted in Exhibit 14?
19        A.    It's not depicted, but it's in there.
20    Right there where all these -- the brush and debris
21    is, there's a giant green utility box under there.
22        Q.    Okay.    And is that brush and debris from
23    your tree?
24        A.    Some of it is, some was obtained from the
25    neighbors.    Instead of throwing it in their waste
                                                  Page 60

1    bin, they came around and threw it on top of the
2    box.    And then when I was trimming that tree, there
3    used to be a huge pile -- there used to be a huge
4    pile of debris there, and since the car didn't come
5    out every week, I stored it right there in the
6    easement, and I would put a little bit in the -- you
7    know, in the waste -- in the green bin every week
8    until I got rid of it all.
9            (Exhibit 15 marked for identification.)
10        Q.    Let me show you Exhibit 15, which is a
11    photograph of the front of your house taken on
12    November 13th, 2018; is that right?
13        A.    That is correct.
14        Q.    And does Exhibit -- I'm sorry -- 15, does
15    Exhibit 15 accurately reflect what the front of your
16    property looked like on November 13th, 2018?
17        A.    It appears so.
18        Q.    Okay.    And in Exhibit 15, you can now see
19    that utility box, right?
20        A.    Yes.
21        Q.    Okay.    And there is a pile of debris in
22    the gutter in front of your sidewalk?
23        A.    That is correct.
24        Q.    Is that the pile of debris that you're
25    saying gets moved from that location to the easement
                                                  Page 61

1  on top of the utility box?
2      A.    No.
3      Q.    Okay.
4      A.    I hired a guy to come rake my yard, and
5  that's from raking the yard and from raking all
6  the -- the -- I guess the needles from around the
7  tree. I was trying to keep the sun from killing it.
8      Q.    Okay. After your conversation with the
9  representative of the City at the hearing, who told
10 you that your hearing had been dropped because
11 Michael Corral did not show up, did you have any
12 other further contact with anyone who worked for the
13 City regarding your -- your house or your code case?
14     A.    No.
15     Q.    Okay. Have you received any notifications
16 of code violations since?
17     A.    Not that I'm aware of.
18     Q.    Have you -- have you had any contact with
19 anyone at the City, other than me, regarding this
20 litigation with the City since?
21     A.    No.
22     Q.    Okay.
23            Are there any witnesses to -- to the
24 injuries that you suffered as a result of --
25     A.    No.
                                                   Page 62

1      Q.    No. Okay. Did you speak with anyone,
2  maybe family members, or anyone, about the
3  code -- the code hearing or the violations or any of
4  the stress that you were under as a result of the
5  city's conduct?
6      A.    No.
7      Q.    Are you still under the same type of
8  stress and suffering from the -- the emotional
9  distress that -- that we discussed earlier?
10     A.    No. I paid my house off, so I don't have
11 to worry about that no more.
12     Q.    Okay. And is that to say that you don't
13 anticipate any future -- suffering any future
14 injuries or any injuries in the future as a result
15 of this incident?
16     A.    No.
17     Q.    Okay. What would you like to see happen
18 in this case?
19     A.    What do you mean what would I like to see
20 happen?
21     Q.    What outcome would be your -- what outcome
22 are you looking for?
23     A.    Get a trial and settlement.
24     Q.    Okay. And if it was a trial, what would
25 it be that you're after? What would you be wanting
                                                   Page 63

1  out of a trial?
2      A.    Damages for the violations.
3      Q.    Okay. Were you employed at the time of
4  this code violation case?
5      A.    I was not.
6      Q.    Okay. Are you currently employed?
7      A.    No, I am not.
8      Q.    Okay. Are you retired?
9      A.    Yes.
10     Q.    When did you retire?
11     A.    I'd say 2001 or 2, something -- sometime
12 around there.
13     Q.    Okay. What kind of work did you do when
14 you did work?
15     A.    Oh, between jobs, I did mechanic work. I
16 used to work -- I haven't worked in a while.
17     Q.    Okay. Are you on any boards or committees
18 or anything like that?
19     A.    I am not.
20     Q.    Okay. Do you participate in any volunteer
21 work?
22     A.    No.
23     Q.    Okay. Are you affiliated with any type of
24 organization or non-profit or anything?
25     A.    No.
                                                   Page 64

1      Q.    Okay. That's all the questions that I
2  have for you. I appreciate you coming down and
3  taking the time to do this deposition, and that's
4  it.
5            THE VIDEOGRAPHER: The time is 11:34 a.m.
6  We are off the record.
7                    --oo0oo--
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
                                                   Page 65

1   STATE OF CALIFORNIA      )
                             )ss.
2   COUNTY OF _____  )

3

4        I, MARK GRANT, do hereby certify:

5        That I have read the foregoing

6   deposition;

7        That I have made such changes in form

8   and/or substance to the within deposition as might

9   be necessary to render the same true and correct;

10       That having made such changes thereon, I

11  hereby subscribe my name to the deposition.

12       I declare, under penalty of perjury, that

13  the foregoing is true and correct.

14       Executed this _____ day of _____,

15  20__,

16  at _____, California.

17

18

19       _____

20            MARK GRANT

21

22

23

24

25                                        Page 66

---

1              CORRECTION CERTIFICATE

2   To add testimony, indicate "Add" and print the exact
    words you wish to add. To delete testimony, indicate

3   "Delete" and print the exact words you wish to delete.

4

5   Deposition of:      Mark Grant
    Proceedings Date:   July 31, 2020

6

7   I, Mark Grant,
    have the following changes to my proceedings transcript:

8

9   PAGE   LINE   CHANGE TESTIMONY TO READ AS FOLLOWS:

10  ____   ____   _____

11  ____   ____   _____

12  ____   ____   _____

13  ____   ____   _____

14  ____   ____   _____

15  ____   ____   _____

16  ____   ____   _____

17  ____   ____   _____

18  ____   ____   _____

19  ____   ____   _____

20  ____   ____   _____

21  ____   ____   _____

22  ____   ____   _____

23

24  _____Date_____

    Mark Grant

25                                        Page 68

---

1              REPORTER'S CERTIFICATE

2

3

4        I, Jahmy Alvarez, CSR No. 14094, Certified

5   Shorthand Reporter, certify:

6        That the foregoing proceedings were taken before

7   me at the time and place therein set forth, at which

8   time the witness was put under oath by me;

9        That the testimony of the witness, the questions

10  propounded, and all objections and statements made

11  at the time of the examination were recorded

12  stenographically by me and were thereafter

13  transcribed;

14       That the foregoing is a true and correct

15  transcript of my shorthand notes so taken.

16       I further certify that I am not a relative or

17  employee of any attorney of the parties, nor

18  financially interested in the action.

19       I declare under penalty of perjury under the

20  laws of California that the foregoing is true and

21  correct.

22       Dated this 31st day of August, 2020.

23       _____

24       JAHMY ALVAREZ, CSR No. 14094

25                                        Page 67

Mark Grant

July 31, 2020

| | | | |
|---|---|---|---|
| **Exhibits** | **$400** 32:17 40:6,19 | **2001** 64:11 | **7** |
| | **$5,000** 18:23 | **2018** 12:22 13:16 | |
| **Exhibit 1** 4:9 | **$575** 34:6 40:11 | 14:17 15:14 17:7 | **7** 34:7,9,12,25 35:1, |
| 22:17,19,25 24:1,19 | | 20:8 26:16 27:13, | 6,8,11,19 36:3,4,17 |
| 30:19 31:2 | **-** | 18,21,24 33:13 | 38:3 |
| **Exhibit 2** 4:10 | | 34:1,17,21 41:11,17 | **703** 6:12 |
| 23:15,16,18 24:8, | **--oo0oo--** 65:7 | 42:13,19,23 46:2,4, | **7th** 26:15 42:13,19, |
| 12,16,22 25:1,7,20 | | 17 47:8 55:16 | 23,24 46:23 47:8 |
| 26:1,4,11 30:8,11 | **0** | 57:17,19,23 58:8, | |
| 31:6 34:24 41:21,24 | | 13,18,21 59:17,20, | **8** |
| 42:8,18 | **002** 43:24 | 23 60:10 61:12,16 | |
| **Exhibit 3** 4:12 | | **2019** 20:9 44:9 | **8** 40:21,23 41:9 44:1 |
| 26:23,25 27:9 28:23 | **1** | 46:5,18 47:4,9 | |
| 30:9 | | 57:19 | **9** |
| **Exhibit 4** 4:13 | **1** 22:17,19,25 23:1 | **2020** 6:2,13 | |
| 28:6,8,10,12 29:1,6, | 24:1,19 30:19 31:2 | **24th** 41:11,17 46:2, | **9** 45:14,16,17,19 |
| 18 30:13 | **10** 55:13,14,17 | 4,17 | **909** 12:12 14:1,21 |
| **Exhibit 5** 4:14 | 57:12,16 | **27th** 34:17 35:1 | **910** 16:15,23 17:13, |
| 31:20,22 32:5,8 | **10/17/18** 60:4 | | 17 19:4 |
| 33:10 35:6 | **10:57** 45:7 | **3** | **913** 16:18,20 18:1, |
| **Exhibit 6** 4:15 | **11** 56:16,18,19 57:6 | | 10 |
| 33:15,16,17 | 58:3,4,6 | **3** 23:2 26:23,25 27:9 | **915** 6:15 |
| **Exhibit 7** 4:17 | **11:04** 45:10 | 28:23 30:9 | **95814** 6:16 |
| 34:7,9,12,25 35:1,6, | **11:34** 65:5 | **30th** 37:15 39:17 | **95819** 12:13 |
| 8,11,19 36:3,4,17 | **12** 58:10,12,16 | **31st** 6:2,13 | **95833** 12:13 |
| 38:3 | **12th** 58:18,20 | **3rd** 34:1 35:3 55:16 | **9:56** 6:3,14 |
| **Exhibit 8** 4:18 | **13** 59:14,15 | 57:22,23 58:13,21 | **9th** 27:13,18 |
| 40:21,23 41:9 44:1 | **1350** 6:11 | 59:17,20,23 | |
| **Exhibit 9** 4:19 | **13th** 61:12,16 | | **A** |
| 45:14,16,17,19 | **14** 59:25 60:2,6,8, | **4** | |
| **Exhibit 10** 4:20 | 18 | | **a.m.** 6:3,14 45:7,10 |
| 55:13,14,17 57:12, | **15** 61:9,10,14,15,18 | **4** 28:6,8,10,12 29:1, | 65:5 |
| 16 | **17th** 60:10 | 6,18 30:13 | **access** 19:25 |
| **Exhibit 11** 4:21 | **1990** 13:10 | **4/8/63** 8:3 | **accident** 8:20 19:7 |
| 56:16,18,19 57:6 | **1998** 12:15,18 | **4th** 58:8 | **accurately** 57:16, |
| 58:3,4,6 | 13:19 | | 25 58:6,16 59:21 |
| **Exhibit 12** 4:22 | | **5** | 60:8 61:15 |
| 58:10,12,16 | **2** | | **accused** 51:17 |
| **Exhibit 13** 4:23 | | **5** 31:20,22 32:5,8 | 53:17 |
| 59:14,15 | **2** 23:1,15,16,18 | 33:10 35:6 | **action** 15:13 18:9 |
| **Exhibit 14** 4:24 | 24:8,12,16,22 25:1, | **5th** 34:21 35:4,5 | 19:3 21:17 45:21 |
| 59:25 60:2,6,8,18 | 7,20 26:1,4,11 30:8, | | 49:14 |
| **Exhibit 15** 5:1 | 11 34:24 41:21,24 | **6** | **actual** 34:3,4 |
| 61:9,10,14,15,18 | 42:8,18 64:11 | | **addition** 28:21 |
| | **2's** 31:6 | **6** 33:15,16,17 | **address** 12:23 |
| **$** | | **60** 18:4 | |
| | | **6th** 33:13 44:9 46:5, | |
| **$100** 34:6 40:11 | | 18 47:4,5,9 | |

| | |
|---|---|
| 16:14 22:3 26:2,5 | |
| **addresses** 50:24 | |
| 51:25 | |
| **adminis-** 33:3 | |
| **administrative** | |
| 32:25 33:3,18 | |
| **affect** 47:15 49:5,9 | |
| **affected** 48:24 | |
| **affidavit** 49:16 | |
| **affiliated** 64:23 | |
| **African-american** | |
| 52:23 | |
| **Agency** 33:19 | |
| **agree** 29:6 34:23 | |
| **ahead** 10:23 36:22 | |
| **allegation** 58:25 | |
| **allege** 49:13 | |
| **alleged** 46:8 49:15 | |
| 55:20,22 56:10 | |
| **Alvarez** 7:1 | |
| **amended** 43:23 | |
| 45:15 | |
| **and/or** 25:2 | |
| **Andrea** 6:23 | |
| **answers** 10:9 | |
| 11:18 | |
| **anticipate** 63:13 | |
| **ants** 18:7 | |
| **appeal** 31:18,22,24 | |
| 32:2,8,12,13,15,23 | |
| 33:2,9 34:3,18 35:2 | |
| 36:12 37:7 54:16 | |
| 55:25 56:25 59:5 | |
| **appearing** 6:22 | |
| **appears** 22:22 | |
| 35:15 50:8 61:17 | |
| **apply** 50:14,15,18 | |
| **approximately** | |
| 37:20 | |
| **area** 53:6 54:8 | |
| **ascertain** 37:25 | |
| **assessed** 40:10 | |

Mark Grant    July 31, 2020

associate 21:4,7

assume 57:23 60:11

attach 43:25

attached 22:23 23:5,12 43:23 45:14

attachment 45:1

attempts 37:25

attention 35:12

Attorney 6:19

August 15:14 26:15 27:13,18,21, 23 34:17 35:1 37:19 41:11,17 42:13,19, 23,24 46:2,4,17,23 47:8 55:16 57:17, 18,22,23 58:7,8,13, 18,20,21 59:17,20, 23

aware 17:15 20:19 51:3,4,5,10 62:17

**B**

back 23:1 27:6 31:15 32:7 37:6 45:11 46:11 59:3

backyard 16:21

barrier 18:5,14

basing 50:6

basis 49:21

bat 17:10

began 15:14

begin 7:6

begins 10:22

believed 15:21 46:25

bill 15:9

bills 15:2,11

bin 61:1,7

birth 8:2

bit 61:6

boards 64:17

boat 55:18,19,22 56:1,6,7,10 57:14,

16

bought 13:18

box 59:7 60:17,21 61:2,19 62:1

break 11:8 44:24

brought 8:9

brush 60:20,22

building 18:14

**C**

California 6:1,12, 16 12:12

call 16:9 20:10 31:10

called 15:24 21:2 31:13,14,15 50:8 51:15

calling 20:15

car 8:20 19:7 61:4

carry 10:10

cars 58:4,6

case 6:17 9:1,4,8 11:4 20:10,20,24 39:5,10 40:1 46:9 54:15 62:13 63:18 64:4

caused 44:18 48:10

caution 11:17

Cease 25:2

certified 30:4,11

certify 41:13

change 11:18 26:2, 5

charged 50:13

check 43:2,5

children 13:24

circumstances 48:10

City 6:19,24 14:18, 21,24 15:3,6,11,17, 20 16:2 17:12,16,21 20:5 21:2 23:8 31:10 32:3,13,18,22

33:24 34:10,16 35:8,18,21 36:3,20 37:6,8 39:12 43:18 47:19 49:25 50:18 51:3,4,7,10 52:4,7, 10,15 53:8 62:9,13, 19,20

city's 63:5

civil 49:15,21 54:22,23,24 55:4,9

claim 8:11,12,16 49:18

claiming 46:22 54:20

clarification 32:24 34:13 36:18 38:22

Clean 25:1

clear 9:16 23:24

code 15:12,18,21 17:7 20:5,9,11,15, 20,24 21:17 25:9 34:13 36:15,17 38:1 46:9 47:20 49:14 51:5,11 54:14 55:20,23 56:11 58:25 62:13,16 63:3 64:4

codes 53:17

color 52:17,22

Columbia 6:12

combination 53:13

comment 11:18

committees 64:17

communication 17:21

Community 25:8 51:8

complain 21:2 51:15 53:11

complained 16:17 17:12

complaint 15:25 16:19,22 17:18,23, 25 23:5 43:24,25 45:1,15 49:16,22 50:23 52:25

complaints 17:7

20:4,11 51:11

Compliance 25:9

computer 20:2

concrete 18:5,14

condition 57:25

conditions 49:6

conduct 63:5

Congratulations 21:11

connected 60:13

connecting 59:10

constant 49:1,5

constantly 47:16

contact 48:1 62:12, 18

contacted 47:24

contained 21:23 58:24

contend 50:21

content 23:11

contention 50:6 52:14,18

contents 24:8 31:24 35:24

conversation 62:8

copies 30:5,7

copy 23:20 43:6,7, 9,10,11,12,15,18,21 44:5

corner 25:13 59:7

Corral 6:18,24 22:12 24:17,22 25:5 30:23 31:7,11,13 35:12,18 39:6 55:16 56:17 62:11

Corral's 22:14

correct 14:23 22:8 24:7,18,24 25:4,6, 16,24 26:7,10,17 27:11 30:10 31:19 32:20 34:11 37:3 40:20 41:21 42:9,20 44:16 45:24 46:6, 15,19 51:12 52:6,13 53:3 58:15 59:11,18

60:16 61:13,23

correction 25:10, 11,12,14

costs 48:18

counsel 6:21 8:14

counseling 48:16

County 9:4 41:5 42:6 43:3,15 45:22

court 7:1,5,7,9,12, 14,18 9:5 14:3,6,8, 11,15 18:18 40:11

courthouse 19:17 20:3

cover 24:16,22

COVID-19 9:14

cracked 18:7

credibility 11:20

current 6:14

**D**

daily 47:15

damage 49:15

damages 46:8,22 49:12 54:18,20 64:2

date 6:13 8:1 16:5 26:11,18,20 27:12 33:7,8 37:10,13 39:15,18,22 40:9 42:18 43:7 47:3 57:21

dated 26:14 27:17

dates 34:22

day 17:1 57:18,20 58:1

debris 60:20,22 61:4,21,24

declaration 33:19 40:8 41:2,10,16,25 42:4,12,22 43:22 44:3,18 46:14

declined 48:22

deed 13:3

defend 30:23 37:1

defendant 6:20

Mark Grant

July 31, 2020

8:23

defendants 8:17

definition 54:5

delivered 28:18, 19,21 35:10

Department 20:5 25:8 51:8

depict 57:16 58:6

depicted 27:9 28:22 30:9 55:17 56:18 57:5 60:5,18, 19

depicts 57:18,25

deposition 6:15,18 8:4,10,23 9:8 11:9, 16 12:1 23:22,23 65:3

description 25:22

details 19:1

Development 25:8 51:8

Diego 6:12

differently 48:5 50:1

dig 18:4

discovery 22:6 30:23 31:6,12 38:4, 22 44:12 46:12

discriminating 52:15

discrimination 49:18

discussed 63:9

distress 44:17 46:8,13,22 47:7 48:19 54:21 63:9

Division 25:9

divorced 13:15,16

document 23:6,17 25:16 32:1,2,6 34:9 36:11 40:24 41:8,9 44:9 45:14 46:1

documentation 56:1

documents 21:24 22:23 23:14,19,22

24:2,3,4 34:23 45:3

door 39:5

dragged 9:2

Drive 12:12,23 13:19 14:1,21 16:16,18,20,23

driveway 58:7

dropped 39:5,10 40:2 62:10

due 46:13

duly 6:6

dwell 20:13

**E**

earlier 63:9

early 27:21

easement 59:8,10 60:15 61:6,25

economic 54:17

effect 10:10

effort 11:19

emotional 44:17 46:8,13,22 47:6 48:19 54:21 63:8

emotional-distress 44:12

employed 6:11 48:3 64:3,6

employee 15:20

employees 15:17

end 9:1 13:13 47:3

ended 9:2

ends 10:22

enforcement 15:13,18,21 17:7 20:5,9,11,15,20,24 21:17 45:20 46:9 49:14 54:14

entitled 10:15 11:8 25:1,8,10 26:5

envelope 23:12

estimate 10:15,16 16:6,7

et al 6:18

ethnicity 52:17

Evidence 34:14

exact 16:5 18:23 19:1 23:6 26:20 39:18 40:9

EXAMINATION 7:19

examined 6:7

exhibit 7:6 22:17, 19,25 23:5,15,16, 18,19 24:1,8,12,16, 19,22 25:1,7,20 26:1,4,11,23,25 27:9 28:6,8,10,12, 23 29:1,6,18,24 30:1,8,9,11,13,19 31:2,6,20,22 32:5,8 33:10,15,16,17 34:7,9,12,24,25 35:1,6,8,11,19 36:3, 4,17 38:3 40:21,23 41:9,21,24 42:8,18 43:24 44:1 45:1,14, 16,17,19 55:13,14, 17 56:16,18,19 57:6,12,16 58:3,4,6, 10,12,16 59:14,15, 25 60:2,6,8,18 61:9, 10,14,15,18

existed 58:1

experience 51:10

extended 39:21

**F**

face 9:13,22

fact 26:3 27:18 31:24 43:12 50:7 53:1

facts 11:4 37:25

factual 49:21

fair 19:23 37:24

family 63:2

fee 33:4,22 34:2,6 40:12,13 54:16

feel 10:17,25

fees 33:23 34:3,4

feet 18:4

fence 23:13 27:8 28:18 58:13,17,24 59:4,6,10 60:3,9,13

figure 18:24

file 37:7

filed 18:15 32:15 34:19 35:2,3 41:10, 16,19 42:1,2,3,12, 14,15,16,17,22,24 43:4 44:8,19 45:22, 25 46:1

filing 34:2 46:3,13, 16 47:1

find 19:16 45:1 48:21

fine 7:18 10:3 11:21 12:10 19:11 40:15

fines 40:10

finish 12:6,8

flooding 16:21

Floor 6:15

fly 17:1

follow-up 10:21 17:20

force 10:10

forced 18:4

forgot 8:18 21:15

form 41:4

formation 21:1

forms 29:15

found 20:21 27:9

foundation 18:6

Fourth 6:15

frequently 29:13

Friday 6:2

front 24:21 26:12, 13,25 39:5 57:17 58:13,17 59:16,22 60:3 61:11,15,22

full 12:6,8 23:11 24:8

future 63:13,14

**G**

G-R-A-N-T 7:25

garbage 15:5

gate 16:11,23 17:4, 12,13 19:4 28:16,22 30:9

gather 51:9

gauge 10:21

gender 52:16

giant 60:21

girl 12:24

give 10:13 11:22 32:6

glancing 30:25 31:2

Good 6:9 21:11

Google 51:25 52:2

Grant 6:5,17 7:21, 24 33:20

granted 39:3

green 60:21 61:7

ground 9:7

guess 10:17,18 11:5 16:25 39:20 40:7 62:6

gutter 61:22

guy 62:4

**H**

hallways 18:7

hand 45:13

handed 24:1

handing 23:1

handle 46:20

handwriting 35:14

handwritten 35:12

happen 10:24 37:4 63:17,20

happened 17:11 18:1,2,21 30:1 50:9

Mark Grant                                                                    July 31, 2020

happening 11:2

happy 9:18

head 17:8,24 29:17

health 48:21

hearing 36:6,8,21, 22,25 37:2,11,14, 18,19,21,25 38:2,10 39:4,8,14,15,19 40:16 47:22 62:9,10 63:3

hired 62:4

Hispanic 53:2,22, 24

hit 17:2,4

hold 22:22

hour 44:25

house 13:18,22 21:9 44:20 48:6 61:11 62:13 63:10

huge 61:3

**I**

identification 22:17 23:16 26:23 28:6 31:20 33:15 34:7 40:21 45:16 55:13 56:19 58:10 59:14,25 61:9

identified 23:17

identify 6:21 22:3

identifying 25:16

Images 52:2

Imagine 6:11

impact 11:19

important 11:22

incident 8:9 63:15

include 10:14

included 15:9 23:21

including 23:19

incumbent 11:12

information 13:14 19:16,21,24 20:1 31:1 37:22 38:1

56:14

informed 50:18

initiated 19:6 20:24

injuries 44:13,18 55:2 62:24 63:14

injury 8:11

inquire 31:11

inside 39:7

installed 18:5

insurance 8:18 56:4,24 57:4

insured 8:18 57:7

intending 48:7

interaction 14:17, 19 15:17,19

invasion 29:16

irrelevant 19:10,13

issue 17:13 19:4 22:1,3

**J**

Jahmy 7:1

January 40:6 44:9 46:5,18 47:4,5,9

job 21:11

jobs 64:15

jog 29:9

Jose 6:24

judge 19:14

judgment 18:25

July 6:2,13

**K**

kick 16:25

killing 62:7

kind 64:13

knowing 27:19

knowledge 50:16

**L**

language 41:11

late 18:6

lawsuit 18:13,15, 21

lawyer 8:22

lead 52:22

learn 20:23

Lee 6:10

left 12:24 17:24

legal 25:22

lender 21:12

lenders 47:24

letter 20:21 24:17, 22 28:2 35:20,21,25 36:2,8,20 37:5,8 38:9,12,16 43:1 46:24

letter's 35:23

life 47:15 49:10

list 23:18 25:10,11, 12,14

listed 50:23

litigation 15:14 19:7 62:20

live 12:20,22

lived 12:14

Located 6:11

location 6:14 61:25

locations 50:17,25 51:16,24

long 12:14 18:5

looked 58:17 60:9 61:16

lose 47:17 55:5

lot 16:24

**M**

made 20:19 22:2 27:18 38:4 39:7 51:13

mail 30:12

mailbox 20:21 21:21 26:21

mailed 35:9

make 9:16,21 11:16,18 23:24 37:24

manifest 47:12,13

manner 25:17 28:21

mark 6:5,17 7:8,24 23:14 33:20

marked 22:17,18 23:16 26:23,25 28:6,7 31:20,22 33:15 34:7 40:21,22 45:16 55:13 56:19 58:10 59:14,25 61:9

marking 23:18

marriage 13:13

married 13:7,9,11, 19,21

mask 9:17,22

masks 9:12

matter 18:19

meant 58:20

mechanic 64:15

medical 48:13

medication 49:2

member 15:22

members 63:2

memory 10:22 29:9

Mendez 6:24

Mercury 8:17

met 39:4

Michael 6:18,24 22:12,14 24:17,22 25:5 30:23 31:7,11, 13 35:12,18 39:6 55:16 56:17 62:11

micromanaged 51:24

micromanaging 50:2 52:4,7

middle 9:14

minute 22:22

missing 23:4

mistaken 26:14

moment 28:25

money 32:13 54:13 55:6

month 37:20 40:7

months 40:5

morning 6:9

mortgage 21:8,13 44:21

mortgages 21:14

motorcycle 57:5,9

moved 39:21 61:25

multiple 38:12,15, 17

**N**

N-A-T-O-M-A-S 14:10

N-O-T 14:9

Natomas 14:2,5,6 54:8

needed 22:8

needles 62:6

negatively 11:19

neighbor 16:12,13, 17 19:8

neighbor's 16:11

neighborhood 25:9 51:1 53:5

neighbors 19:4 21:2,4 50:8 53:1,10 60:25

nods 17:24

non-hispanic 53:9,12

non-hispanics 53:5

non-profit 64:24

notice 21:24 22:15, 20,25 23:9 24:5,13

25:1 26:2,5,19 27:3, 10,21 28:13,20 31:18 33:9 34:24 36:16 37:18,19 41:18,20 45:20

noticed 6:18

notification 21:17 39:25

notifications 62:15

November 61:12, 16

nuisance 25:2 40:8 41:3,10,16,25 42:4, 22 43:22 44:3,19 45:4 46:14

number 21:14

**O**

oath 10:7,8

object 19:9,13 29:16

objecting 19:20

obstruct 59:13

obtained 60:24

occur 50:22

occurred 46:16 47:1

October 60:5,10

Office 6:19 41:6 43:3 45:23

officer 15:22 33:19

open 16:25

operates 51:7

operator 6:10

opportunity 11:15 12:7

options 29:17

order 21:25 22:16, 20,25 23:10 24:5,13 25:1 26:19 27:4,10, 22 28:13,20 31:18 32:13,21 33:19 34:24 41:18,20

ordered 18:22

43:11,13

ordinance 36:14

ordinances 22:4

organization 64:24

original 39:22

originally 39:16

out-of-pocket 48:18

outcome 63:21

owner 12:16,18 18:10

Owner's 26:2,5

owners 17:17 52:20 53:15

owning 13:22

**P**

packet 24:6,13 26:19 27:4,10,22 28:13,20 29:21 31:18,23,25 32:9,12 34:18,24 37:7,19 41:20 55:25 56:25

packets 30:15

pages 23:1,4,7 26:14

paid 21:10 32:18 40:15,18 63:10

pandemic 9:14

paragraph 41:12

part 14:1 22:24 32:2 36:12 55:19,22 56:10 58:24

participate 64:20

partly 50:7

pay 13:1 14:24 15:3,5 18:22 19:2 32:14

paying 15:11 44:20

payment 48:6

Pending 45:20

period 33:7 46:21 47:7,23 48:22

person 12:4 34:19 35:10 39:9

personal 8:11

personally 53:18, 20

personnel 15:22

petition 32:24 33:2,18

photograph 26:24 27:13,17 56:17 58:12 60:3 61:11

photographed 57:22

picking 53:8,10

picture 55:15 57:14,22,25 59:16, 19,21

pile 61:3,4,21,24

plaintiff 8:12

point 20:23 37:10 40:19 42:23 44:19

portion 60:13

post 20:22 26:22

posted 26:21 28:22 30:8

posting 21:16,21, 23 27:17

prepared 36:23,24 37:1 38:2

present 6:13 52:22

presumed 11:10

pretty 17:14 29:20 49:19

prevented 59:9

prior 14:17 16:16 17:7 37:25 42:12, 23,24 51:9

privacy 29:16

private 51:5

Proceeding 45:21

process 12:1 40:2, 4

Production 34:14

proof 26:8

properly 27:17

properties 50:3, 14,22 53:16 54:1

property 12:16 13:3 14:20 18:10 21:3,25 23 26:6 27:1 42:5 45:23 47:18 51:6 52:20 53:8,11,15 56:15 57:17 59:16,22 60:4,9 61:16

protect 9:15

provide 11:11

public 19:16,21 25:2 40:8 41:3,10, 16,25 42:4,22 43:22 44:3,18 45:3 46:14 52:1 59:13

pull 20:2 32:4

purported 55:15

put 24:19 61:6

**Q**

question 11:1,13 12:6,9 19:19,20 27:7 39:20 46:10 57:13 58:3

question-and-answer 11:3

questions 10:9,21 11:11,25 12:2 36:4 65:1

**R**

race 52:16

racist 21:6

rake 62:4

raking 62:5

Range 56:20 57:2

reason 9:18 16:24

recall 8:8 13:10 17:9,11 19:1 20:17 21:18 27:20 28:2, 20,25 29:23 32:21 35:7,9,10,23,24 36:1,5,8 37:9,13,15,

22 38:13,14,19,23 39:9,12 41:15

receipt 28:9,13

receive 17:20 24:5 43:12

received 21:18 22:25 23:3,9,12 24:4,9,10,11,12 26:18,20 27:21 29:11 31:5 33:12 36:2,16 37:8 39:25 41:21 43:9 44:5 62:15

receives 51:4

receiving 34:23 37:5

recently 23:8

recess 45:9

recited 22:4

recognize 28:8 40:24 45:17 55:17 56:18 60:5

recollection 29:10

record 7:17,23 16:8 45:8,11 65:6

recorded 41:5 42:5 44:4 45:4

Recorder 42:6

Recorder's 41:5 43:3 45:23

red 27:8

refamiliarize 9:10

reference 53:1

referenced 60:18

referring 22:10,21 55:1

reflect 58:16 59:22 60:8 61:15

refresh 29:10

refund 40:6

refusal 19:23

refusing 19:19

Regatta 12:12,23 13:19 14:1,21 16:15,18,20,23

17:13,17 18:1,10 19:4

registered 57:2,7

registration 56:3, 23 57:1

relationships 49:9

released 40:8

relevance 19:9

remedy 9:19

remember 9:7 10:19,20 20:15 35:22 37:20 43:6

Remove 25:2

rent 13:1

Repair 25:2

repeat 9:24 46:10

rephrase 11:14

reporter 7:1,2,5,7, 9,12,14,18 14:3,6,8, 11,15

Reporting 6:11

representative 39:12 40:1 62:9

represented 8:14 18:19

representing 8:22

request 32:24 34:13 36:13 38:18, 19,21

requested 36:10 39:1

requesting 31:1

requests 38:4,15, 17

required 10:13

research 20:3

reside 12:11

residence 54:11

residents 49:24

Resolve 36:7

respect 48:6

respond 47:21

responded 22:9

response 35:17 36:3 38:7,16,18,19, 25

responses 44:11 46:12

result 49:13 54:14 55:2 62:24 63:4,14

retire 64:10

retired 64:8

return 28:9,12,13

returned 54:16

returning 28:3

review 11:15 32:25 33:3,18

rid 61:8

rights 49:15,22 54:22,23,24 55:4,10

roughly 47:8

Rover 56:20 57:2

rules 9:7

**S**

Sacramento 6:1, 16,24 9:4 12:12 14:18,21,25 15:3 18:18 20:5 32:19

Sale 26:6

San 6:12

satisfy 36:3

scope 10:6

seek 48:13,15

send 34:15,18,19, 25

sending 31:12

sense 22:2

separate 36:11

September 33:12, 13 34:1,21 35:3,4,5 37:16 39:17

series 24:2

service 26:9

services 48:16

session 11:3

set 39:16

settlement 9:3 63:23

sheets 7:11

shield 9:13,23

show 22:18 23:7 26:24 28:7 31:21 33:16 39:6,19 40:22 45:3 55:14 59:15 60:2 61:10 62:11

showed 39:14

showing 40:16

shown 30:12

shows 29:6

side 24:20

sidewalk 61:22

sign 29:14

signature 28:10 29:18

signed 24:17 25:5 28:4,12 29:2,3,7,11, 12 30:12

signing 28:2

sitting 56:7

skin 52:17,22

Sls.net. 21:15

Soufou 6:10

speak 63:1

speaking 9:22

spell 7:22 14:7

spelled 7:25

spelling 14:13

spend 55:6

spoken 15:23

staff 15:22

stands 21:15

start 12:1,6,8

started 46:23

state 6:22 7:22

stated 59:5

stay 12:25 36:10,13 39:1

stickers 7:6

stipulation 23:8

stored 61:5

Street 6:12,15

stress 47:10,15 48:9,11,23 63:4,8

subject 15:13

submit 33:24 56:23

submitted 56:1,3

suffer 55:2

suffered 44:12 46:8,13,21 47:7 49:13 62:24

suffering 63:8,13

Suite 6:12

sun 62:7

Superior 9:5 18:18

supposed 37:14

swear 7:2

sworn 6:6 7:4

**T**

taking 65:3

talk 11:2 12:4,5 15:12 21:16 48:9

talked 15:20 20:6

talking 51:16 54:1

taped 20:21 27:8

tenants 16:25 17:17

terminated 46:17

termination 41:2 44:2 46:4

testified 6:7

testifying 10:11

testimony 10:14 11:23

thing 12:3 27:8 30:6,7 31:7 34:25

40:18

things 9:11 10:16 11:6 32:22

threw 61:1

throwing 60:25

time 6:13 9:12 10:23 12:4 15:16 20:9 32:14 33:7 37:5 45:7,10 46:7, 21 47:4,7,23 48:3, 22 60:4 64:3 65:3,5

times 10:14 16:24 20:14 38:12

title 34:6 40:12,13

today 6:10 11:23

today's 6:13,14,16

told 20:16 39:10 43:10 44:11 46:11, 12 62:9

top 17:8 24:21 35:12 61:1 62:1

top-left 25:13

town 14:1

traffic 17:1

trailer 56:7,8

transcript 11:16 23:22

treated 49:23 52:19

treating 50:1

treatment 48:13

tree 60:23 61:2 62:7

trench 18:4

trial 10:11 11:19 63:23,24 64:1

trigger 18:14

trimming 61:2

true 11:7 41:15

turn 25:20

turning 25:25

type 44:12 63:7 64:23

types 29:14

Mark Grant                                                              July 31, 2020

| U | W |
|---|---|
| **Uh-huh** 29:8 | **wait** 36:6,21 38:9 47:21 |
| **underlying** 49:6, 21 | **wanted** 36:21 |
| **underneath** 30:2 | **wanting** 63:25 |
| **understand** 9:17, 21 10:2,6,11,12 11:11,13,23,24 19:14 22:1 31:17 44:15 56:9 58:23 | **waste** 60:25 61:7 |
| | **water** 16:21 |
| | **wearing** 9:12,13 |
| | **week** 61:5,7 |
| **understanding** 9:25 42:11,21 43:1 44:17 | **white** 27:8 |
| | **window** 46:7 |
| **understood** 40:3 41:25 | **witnesses** 62:23 |
| **utilities** 14:24 15:3 59:13 | **work** 64:13,14,15, 16,21 |
| **utility** 59:7,8 60:14, 17,21 61:19 62:1 | **worked** 62:12 64:16 |
| | **worried** 47:16 |
| V | **worry** 49:1,5 63:11 |
| **vaguely** 35:22 | **wrong** 44:16 |
| **van** 56:20 | Y |
| **vehicle** 17:2,4 56:8 | **yard** 58:17 59:5,6 62:4,5 |
| **vehicles** 56:6,14, 21 | **years** 8:8 12:22 |
| **Velasquez** 6:23 7:5,8,11,13,16,20 14:7,14,16 45:12 | |
| **version** 38:11 | |
| **versus** 6:17 | |
| **vicinity** 54:9,11 | |
| **video** 6:10 | |
| **violation** 34:4 38:1 54:24 55:3,4,9,20, 23 56:11 58:25 64:4 | |
| **violations** 22:7 34:3,14 36:15,17 47:20 50:12,13,15, 17,19,21 51:5,11,17 52:1,5,11 53:17 62:16 63:3 64:2 | |
| **volunteer** 64:20 | |



City of
SACRAMENTO
Community Development

300 Richards Blvd., 3rd Floor
Sacramento, CA 95811

Help Line: 916-264-6011
CityofSacramento.org/cdd

18-018110 Michael Corral 909 REGATTA DR N&O/JV
GRANT MARK A
909 REGATTA DR
SACRAMENTO, CA 95833

08/07/2018

Subject: Property located at 909 REGATTA DR
Assessor's Parcel Number: 26203200010000

Enclosed is a Notice and Order to Clean, Remove, Repair or Cease illegal use on the property of which you are the owner of record and/or beneficiary. A fee of $575.00 has been charged against this property. Additionally, a Title fee of $100.00 for Residential or $650.00 for a Commercially zoned property is due per parcel. Failure to comply with this Notice and Order within the specified time may result in the assessment of a Neighborhood Code Compliance Monitoring fee of $275 for each subsequent inspection related to this case. All charges are pursuant to Chapter 8 of the Sacramento City Code and are due and payable. These fees are to recover enforcement costs and do not include permits or other related fees if applicable.

A Declaration of Public Nuisance regarding this property has been recorded with the County Recorder. When all violations have been corrected and when all fees are paid, and a $160.00 Termination fee paid, the Declaration of Public Nuisance will be cleared with the County Recorder.

If you disagree with the requirements of the Notice and Order, you have the right to appeal. Your appeal must be in writing and must be filed with the Code Enforcement Department within 30 days of such Notice and Order.

If you need clarification of the Notice and Order, or any information provided herein, it is recommended that you contact the code enforcement officer shown below.

Sincerely,

Michael Corral
Code Enforcement Officer
(916) 808-4778

EXHIBIT
1

Case #:18-018110



*City of*
**SACRAMENTO**
Community Development

300 Richards Blvd., 3rd Floor
Sacramento, CA 95811

Help Line: 916-264-5011
CityofSacramento.org/cdd

18-016110 Michael Corral 909 REGATTA DR N&O/JV
GRANT MARK A
909 REGATTA DR
SACRAMENTO, CA 95833

08/07/2018

### NOTICE AND ORDER TO CLEAN, REMOVE, REPAIR
### AND/OR CEASE A PUBLIC NUISANCE

1.    YOU ARE BEING NOTIFIED AS Record Owner and/or Beneficiary that the Code Enforcement Manager, Neighborhood Code Compliance Division of the Code Enforcement Department, has caused to be inspected and has determined that the property(s) at:    909 REGATTA DR

County Assessor's Parcel Number:  26203200010000
(See Attachment A for legal description of property)
(is) (are) in a public nuisance conditions under the provisions of Title 8 of the Sacramento City Code.

2.    That the conditions which render the property as a public nuisance under are set forth on the attached list of existing violations.

3.    The Code Enforcement Manager has determined that the violations on subject property(s) must be corrected.

4.    If you elect to correct the violations, the work therefore shall commence within 14 days from the date of this Order and completed within 30 days from the date of this order.

5.    YOU ARE FURTHER NOTIFIED that if the corrections are not commenced and/or completed within the specified time, the Code Enforcement Manager: (1) may assess a Neighborhood Code Compliance Monitoring Fee in the amount of $275 for each subsequent inspection related to this Notice and Order; (2) may assess Administrative Penalty; (3) may seek an Inspection/Abatement Warrant to bring the property into compliance; and (4) may submit this matter to Superior Court for injunctive relief.  All costs shall be charged against the property or against you as the owner.

6.    YOU ARE FURTHER NOTIFIED that any person having any record title or legal interest in the property may appeal this Notice and Order or any action of the Code Enforcement Manager to the Code Enforcement Appeals Hearing Examiner*; the appeal must be filed with the Code Enforcement Manager within 30 days from the date of this Notice and Order, and <u>that failure to appeal will constitute a waiver of all right to an administrative hearing and determination of the matter. An appeal fee of $400.00 is required at the time of the appeal request.</u> Unless an appeal is filed, the Code Enforcement Manager will proceed to an inspection/abatement warrant and/or injunctive relief without further notice to you.

Dated:  08/07/2018

By_____

Michael Corral
Code Enforcement Officer
(916) 808-4778

*Forms for Appeal may be obtained from the Public Assistance Counter of the Code Enforcement Department, 300 Richards Blvd., 3rd Floor, Sacramento, CA 95811

COMMUNITY DEVELOPMENT DEPARTMENT
NEIGHBORHOOD CODE COMPLIANCE DIVISION
Correction List
Case #: 18-018110    Address: 909 REGATTA DR

Code: C13: SCC 8.04.100 A
Description: CODE - Storing Trash, Junk, Debris
Full Violation: Cease the keeping, storage, depositing or accumulation of trash, junk and debris.
Comments: OUTDOOR STORAGE AND ACCUMULATION OF MISCELLANEOUS JUNK, TRASH, RUBBISH AND DEBRIS INCLUDING DIRT, SAND, GRAVEL, CONCRETE OR SIMILAR MATERIALS DISCARDED ON THE PREMISES CREATING A PUBLIC NUISANCE TO THE NEIGHBORHOOD.

Code: C14: SCC 8.04.100 A
Description: CODE - Storing Inoperable Vehicles
Full Violation: Cease the keeping, storage, depositing or accumulation of inoperative, abandoned, dismantled or wrecked vehicle(s). Remove, repair or put in enclosed structure.
Comments: KEEPING AND/OR STORAGE OF ANY ABANDONED, INOPERABLE, PARTIALLY DISMANTLED JUNK VEHICLE AND/OR VEHICLE PARTS DISCARDED OR LEFT IN A STATE OF DISREPAIR CREATING A PUBLIC NUISANCE TO THE NEIGHBORHOOD.

Code: C18: SCC 8.04.100 E
Description: CODE - Dangerous/Unsightly
Full Violation: Cease maintaining any dangerous, unsightly, or blighted condition which is detrimental to the health, safety, or welfare of the public.
Comments: ANY DANGEROUS, UNSIGHTLY OR BLIGHTED CONDITION WHICH IS DETRIMENTAL TO THE HEALTH, SAFETY OR WELFARE OF THE PUBLIC.

Code: C46: SCC 17.612
Description: CODE - Landscaping and Paving Regulations
Full Violation: Landscape and maintenance requirements. The unpaved portion of a front-yard setback and street side-yard setback shall be landscaped, irrigated, and maintained. The landscape may include grass, annuals, perennials, groundcover, shrubs, trees, and any design elements such as planters, rocks, mulch, or similar elements when integrated as part of the landscape. However, only living vegetation may be used as a primary ground cover; no cement, brick, artificial turf, or other non-vegetative products such as plastic plants or flowers may be used for this purpose. All landscaping materials shall be mowed, trimmed, and maintained as often as necessary to prevent overgrowth and blight. No junk, debris, or other similar materials shall be stored in the landscaped setback area.
Comments: LACK OF PROPER LANDSCAPE MAINTENANCE CAUSING OVERGROWN, DEAD, DECAYING VEGETATION CREATING A PUBLIC NUISANCE TO THE NEIGHBORHOOD. ALLOWING DRY OR GREEN GRASS/WEEDS/BUSHES TO CULTIVATE UNCONTROLLABLY CREATING A PUBLIC NUISANCE TO THE NEIGHBORHOOD.

Code: C48: SCC 17.620
Description: CODE - Wall, Fence, Gate
Full Violation: Cease violation of wall, fence and gate regulations.
Comments: IMPROPER MAINTENANCE OF EXISTING FENCE CAUSING POTENTIAL HAZARD AND A PUBLIC NUISANCE CAUSING BLIGHT TO THE NEIGHBORHOOD.



*City of*
SACRAMENTO
Community Development

300 Richards Blvd., 3rd Floor
Sacramento, CA 95811

Help Line: 916-264-5011
CityofSacramento.org/cdd

### PROOF OF SERVICE BY CERTIFIED MAIL
(CCP § 1013a, 2015.5)

I, Josie Valdez, declare that:

I am over the age of eighteen years and not a party to the within cause. I am employed in the County of Sacramento, California; my business address is:

300 Richards Blvd., 3rd Floor
Sacramento, California 95811

I am familiar with the City of Sacramento's business practice for the collection and process of the mail in which the mail is deposited with the United States Postal Service on the same day that it is deposited for collection and mailing, in the ordinary course of business.

On 08/07/2018, I served the following document:
**Notice and Order Packet, Appeal Request Form and Proof of Service by Certified Mail**

on the interested parties in said cause, by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail at Sacramento, California, addressed as follows:

18-018110 Michael Corral 909 REGATTA DR N&O/JV
GRANT MARK A
909 REGATTA DR
SACRAMENTO, CA 95833

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed at Sacramento, California, on 08/07/2018.

*Josie Valdez*

Josie Valdez

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
**Domestic Mail Only**

7310

1854

0000

0350

7018

Certified Mail Fee
$

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)          $
☐ Return Receipt (electronic)        $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required
☐ Adult Signature Restricted Delivery

Postmark
Here

18-018110 Michael Corral 909 REGATTA DR N&O/JV

Postage
$
Total Postage   GRANT MARK A
$             909 REGATTA DR
Sent To        SACRAMENTO, CA 95833
Street and

City, State,

909 REGATTA DR
Case#:  18-018110

CODE - N&O

11/13/2019                                        Letter View

# NOTICE OF ALLEGED VIOLATION



City of
**SACRAMENTO**
Community Development

**City of Sacramento**
**Community Development Department**
**Neighborhood Code Compliance Division**
**300 Richards Blvd, 3rd Floor Sacramento, CA 95811**

| Violation Case No: 18-018110 | Location of Violation: 909 REGATTA DR | Date: 07/03/2018 | APN: 26203200010000 |
|---|---|---|---|

18-018110 / 909 REGATTA DR NOTALLEGVIO
Attn: Tenant/Current Resident
909 REGATTA DR
SACRAMENTO CA 95833

**The following checked violation(s) are alleged to exist on your property:**

| No. | | Violation | No. | | Violation |
|---|---|---|---|---|---|
| 1. | ☑ | Outdoor storage of junk and debris | 20. | ☐ | Fence: Barbed wire |
| 2. | ☑ | Inoperable or dismantled vehicles | 21. | ☑ | Fence: Maintenance requirements |
| 3. | ☑ | Dangerous, unsightly, blighted condition | 22. | ☐ | Fence: Swimming pool – access openings |
| 4. | ☐ | Home auto repair business | 23. | ☐ | Fence: Swimming pool – height |
| 5. | ☐ | Minor vehicle repair | 24. | ☐ | Fence: Swimming pool – latching device |
| 6. | ☐ | Major vehicle repair | 25. | ☐ | Semi-trucks: Parked on private property |
| 7. | ☐ | Vehicle parking on unimproved surface | 26. | ☐ | Semi-trucks: Parked in street (R-zone) |
| 8. | ☐ | Boat repair | 27. | ☐ | Noise: Mechanical device |
| 9. | ☐ | Boat storage | 28. | ☐ | Noise: Portable gas power leaf blowers |
| 10. | ☐ | Landscape: Dead, decaying grass/weeds | 29. | ☐ | Trailer coach/Motor home: Setback area |
| 11. | ☑ | Landscape: Unmaintained yard | 30. | ☐ | Obstruction: Portable basketball hoops |
| 12. | ☐ | Landscape: No grass, bushes, trees | 31. | ☐ | Garage/Yard Sales: Continuous sales |
| 13. | ☐ | Landscape: Driveway (off-street parking) | 32. | ☐ | Green Swimming Pools |
| 14. | ☐ | Landscape: Clear view zone obstructions | 33. | ☐ | Vector: - Hazardous, unsanitary premises |
| 15. | ☐ | Landscape: Right-of-way overgrowth | | ☐ | - Inadequate sanitation |
| 16. | ☐ | Landscape: Unmaintained easements | 34. | ☐ | Signs/Banners: Prohibited use unlawful display |
| 17. | ☐ | Fences height: Front yard | 35. | ☐ | Portable Canopy: Front setback |
| 18. | ☐ | Fence height: Street side yard | 36. | ☐ | Medical Marijuana: Cultivation |
| 19. | ☐ | Fence: Prohibited materials | 37. | ☐ | Other: |

**If you have and/or are in receipt of this Notice, you are the occupant, owner, or hold interest in the property, you are required to maintain such property pursuant to S.C.C section 8.04.060. If you are in violation of any other code violation(s) aside from what has been checked, you are responsible for correcting such violations within 21 days of the date noted above.**

-IMPORTANT-
**Please read the Violation Description and Corrections List that is attached to this Notice.  You are responsible for correcting all code violations within 21 days.**

The City of Sacramento received a complaint alleging violation(s) of the Sacramento City Code exist(s) on the property you own at the address listed.  The city is requesting your voluntary compliance to correct the violation(s).  Property owners are responsible for the correction of any violation(s) that may exist, and are also subject to any cost recovery fees and/or administrative penalties assessed for non-compliance.

If you believe that the conditions do not exist on your property, please contact the undersigned Code Enforcement Officer below between the hours of 9:00 AM and 4:00 PM, Monday through Thursday at (916) 808-2633 (808-CODE), or email CL@cityofsacramento.org.

| Code Liaison Representative: Code Liaison Officer | Badge No: | METHOD OF SERVICE |
|---|---|---|
| | Telephone No.: (916) 808-2633 | ☑ Property Owner and/or Occupant ☑ First-Class mail |

# Important Information – Responding to a Code Violation Notice

## 1. What Is a Notice of Alleged Violation?

A *Notice of Alleged Violation* is a courtesy notice used to notify the property owner of the following:
- The property was reported to have conditions and/or unlawful activity in violation of the City Code.
- The alleged code violation(s) and/or unlawful activities have been documented and there is a time limit to resolve or correct the violation(s) voluntarily.
- A follow-up date for property inspection by a Code Enforcement Officer may be scheduled to determine if compliance was achieved upon expiration of the 21 day time limit.
- Failure to take the initiative to comply will result in additional enforcement action (issuance of a **Notice and Order, Administrative Penalty, and/or Criminal Citation**). **See Question 4 which describes what this means to you.**

## 2. What do I do if I receive a *Notice of Alleged Violation* from the City of Sacramento?

- Correct the violation(s) within the 21 day time limit.
- If you (1) cannot correct the violation(s) within the 21 days, or (2) you do not understand or have questions about this Notice, contact the Code Enforcement or Liaison Officer whose name and telephone number is listed on the notice. The Officer will assist you and may grant an extension when the need for such a request can be demonstrated.

## 3. What happens when violation(s) are not corrected?

- If the violation(s) are not corrected at the time the Code Enforcement Officer conducts a follow-up inspection, he/she shall issue a **Notice and Order, Administrative Penalty, and/or Criminal Citation** to the property owner. The Notice and Order is sent by first class and certified mail with a copy posted on the property.
- Failure to comply with this Notice and Order within the specified time may result in the assessment of a **Code Compliance Monitoring fee** of $275 for **each** subsequent inspection related to this case.

## 4. What is a Notice and Order?

A written notice served upon the property owner stating that the condition or use of the property is in violation of the City Code (or applicable statue, rule, codes or regulations) and mandates the owner to take corrective action within 30 days to bring the property into compliance. The **Notice and Order** informs the property owner:
- The condition(s) of the property is in violation of the City Code and such condition(s) is deemed a public nuisance;
- Provides a time frame to correct the violations;
- If not voluntarily corrected, it authorizes the City to take appropriate action to correct and/or abate the violation(s).
- Allows the property owner the right to appeal within 30 days from the date the notice was served.

The fees (see table below) are imposed whenever a *Notice and Order* is sent to the property owner for non-compliance. Once the *Notice and Order* is sent, the fees imposed are due and payable regardless of whether the violation(s) are/were eliminated in response to the *Notice and Order*. Failure to comply with a Notice and Order may result in the assessment of a Code Compliance Monitoring fee for each subsequent inspection required due to noncompliance. You will be required to pay for all of the costs expended by the City of Sacramento in enforcing its code sections. An invoice will be mailed to you once the violation(s) are corrected and the case file is closed.

| FEES AND PENALTIES    (approved by the City Council) | Effective: 07-01-2016 |
|---|---|
| Notice of Violation | No fee |
| Notice & Order (to Abate Public Nuisance) | $575.00 |
| Code Compliance Monitoring Fee (imposed or additional inspection) | $275.00 |
| Notice and Order Appeal Processing Fee | $400.00 |
| Termination of a Declaration (County Recorder's Office) | $150.00 |
| Title Report | $100.00 |
| Administrative Fee for Code Enforcement Abatements | $1,500.00 |
| Administrative penalties (Failure to comply with the *Notice and Order*) | $100 to $25,000 |

## 5. Inspection and Notice Process



11/13/2019                                                    Letter View

**Complaint Type - Section /Violation**                      **Corrections Required**

1) **Junk and Debris - 8.04.100**
   VIOLATION: Outdoor storage and accumulation of          CORRECTIVE MEASURES: Remove and properly dispose all
   miscellaneous junk, trash, rubbish and debris including dirt,   miscellaneous junk, trash, rubbish or debris from the property.
   sand, gravel, concrete or similar materials discarded on the
   premises creating a public nuisance to the neighborhood.

2) **Inoperable vehicle(s) - 8.04.100**
   VIOLATION: Keeping and/or storage of any abandoned,
   inoperable, partially dismantled junk vehicle and/or vehicle   CORRECTIVE MEASURES: Repair or remove from the premises, or
   parts discarded or left in a state of disrepair creating a public   enclose vehicle(s) in garage.
   nuisance to the neighborhood.

3) **Blighted conditions - 8.04.100**
   VIOLATION: Any dangerous, unsightly, or blighted condition
   which is detrimental to the health, safety or welfare of the   CORRECTIVE MEASURES: Remove any dangerous, unsightly, or
   public.                                                   blighted conditions.

4) **Home Auto Repair - 17.228.240**
   VIOLATION: Automotive repair activity operating from the   CORRECTIVE MEASURES: Violation of Home Occupation
   premises.                                                 regulations; use not permitted in any residential zone.

5) **Minor Vehicle Repair - 10.52.020**
   VIOLATION: Vehicle maintenance, repair, or replacement of   CORRECTIVE MEASURES: The vehicle undergoing repair work must
   engine component parts including oil changes, lamp        be registered to a current occupant of the premises; repair work shall
   replacement and flat tires on vehicle(s) that is not currently   not exceed 48-hours if work is performed outside a fully enclosed
   registered to the current occupant of the premises; repair work   structure; no more that two (2) vehicles can be repaired at one time on
   exceeds 48-hours; and upon more than two (2) vehicles at   the same premises or by the same person.
   one time.

6) **Major Vehicle Repair - 10.52.030**
   VIOLATION: Vehicle maintenance, repair or replacement or   CORRECTIVE MEASURES: Repair work must be performed within a
   removal of engines, engine rebuilding, repair of internal   fully enclosed building; vehicle under repair is registered to a current
   components, transmissions differentials and axles, dismantling   occupant of the premises; no more that two (2) vehicles can be
   vehicles and body work.                                   repaired at one time on the same premises or by the same person.

7) **Parking - 10.44.010 / (unimproved surface) - 17.612.010
   (A-1-d)**
   VIOLATION: Vehicles parked on the lawn or other          CORRECTIVE MEASURES: All vehicle parking areas on private
   unimproved surface area of the property.                 property must be on a solid surface such as asphalt, concrete, or
                                                            masonry. Parking on the grass, dirt, crushed granite, or other type of
                                                            rock material does not meet the code requirements.

8) **Boat Repair - 8.04.470**
   VIOLATION: Engaging in repair or maintenance of any boat
   or vessel exceeding 48-hours in any residential zone outside a   CORRECTIVE MEASURES: Repair or remove from the premises, or
   fully enclosed structure.                                 enclose boat/vessel in garage.

9) **Boat Storage - 8.04.480**
   VIOLATION: Storage of any boat or vessel in any residential
   zone that is visible from the public right-of-way that is not   CORRECTIVE MEASURES: Remove from the premises or register
   currently registered to the occupant of the premises and   boat or vessel to the current occupant of the premises.
   parked on a paved surface.

10) **Grass/Weeds - 17.612.010, 8.100.650**
    VIOLATION: Lack of proper landscape maintenance causing   CORRECTIVE MEASURES: Maintain property appearance by
    overgrown, dead, decaying vegetation creating a public   mowing, trimming and maintenance as often as necessary, performing
    nuisance Dead grass to the neighborhood.                any necessary handwork along fence lines, sidewalks, parkways,
                                                            driveways streets, or structures to prevent overgrowth and blight to
                                                            the neighborhood.

11/13/2019                                                         Letter View

11) Grass/Weeds: Overgrowth - 17.612.010

VIOLATION: Allowing dry or green grass/weeds/bushes to cultivate uncontrollably creating a public nuisance to the neighborhood.

CORRECTIVE MEASURES:  Maintain property appearance by mowing, trimming and maintenance as often as necessary, performing any necessary handwork along fence lines, sidewalks, parkways, driveways streets, or structures to prevent overgrowth and blight to the neighborhood.

12) Landscaping: No grass - 17.612.010

VIOLATION: Property conditions lacks minimum required landscaping and irrigation requirements.

CORRECTIVE MEASURES:  All required setback areas not occupied by other structures, driveways and walkways shall be planted with turf or other acceptable living groundcover.

13) Landscaping: Driveways - 17.612.010

VIOLATION: Driveway surface paving area exceeds the maximum allowance for off- street vehicle parking and walkways.

CORRECTIVE MEASURES:  A maximum 40 percent of the required front setback area may be paved for off-street parking and driveways. Any excess paving exceeding 40% must be removed.

14) Landscaping/Clear zones - 12.28.010 (Corner Lots) / 17.612.010 (Driveways) (A-1-c)

VIOLATION: Landscaping plants (trees, shrubs, hedges and bushes, other plant materials and non-plant obstructions) exceeds the clear-zone height limitations on corner lots and/or driveways abutting the street or sidewalk.

CORRECTIVE MEASURES:  Eliminate sight obstruction by removing and/or trimming the obstructing hedge, shrub, tree limbs to a maximum height of thee feet six inches on corner lots and four feet for driveways.  Trees must be maintained free of branches a minimum five feet above finished grade.

15) Landscaping: Right-of-Way - 17.612.010

VIOLATION: Landscaping plants (trees, shrubs, hedges and bushes or other plant materials) projects beyond the property line of the property abutting the right-of-way and/or projects over the right-of-way obstructing the view of traffic and prevents pedestrian use constituting a hazard to drivers or pedestrians.

CORRECTIVE MEASURES:  Remove and/or trim any landscaping plants, branches or groundcover that extends over the property line into the sidewalk and/or street.

16) Landscaping: Public Utilities Easements - 12.56.050

VIOLATION: Lack of maintenance (allowing weeds and other obstructions to) in easements and unpaved areas adjacent to public street right-of-way.

CORRECTIVE MEASURES:  Maintain the grounds of maintenance easements; maintenance includes watering as needed and keeping such easements and unpaved areas free from weeds or any obstructions contrary to public safety.

17) Fences: Front yard - 17.620.110

VIOLATION: Six (6) foot high front yard fence located in the front setback area exceeds maximum height of four (4) feet.

CORRECTIVE MEASURES:  Reduce existing fence height to four (4) feet.

18) Fences: Street side yard - 17.620.110

VIOLATION:  Six (6) foot high street side yard fence located within the five-foot street side yard setback area exceeds maximum height of four (4) feet.

CORRECTIVE MEASURES:  Reduce fence height to four (4) feet or relocate existing six (6) foot high fence five (5) feet from the back of the property line.

19) Fences: Prohibited materials - 15.156.020

VIOLATION: Illegal fence constructed on your property using prohibited materials (cast-off, second-hand materials) not originally intended for use for constructing or maintaining a fence.

CORRECTIVE MEASURES:  Remove existing prohibited materials, and replace with approved permanent material such as wood, chain link, stone, rock, concrete block, masonry brick, brick or decorative wrought iron or other material approved by the Code Enforcement Manager.

20) Fences: Barbed wire, etc. - 17.620.110

VIOLATION: Concertina, razor or barbed wire or other similar fencing materials attached and/or integrated into the existing

CORRECTIVE MEASURES:  Immediately remove whole or in part of concertina, razor or barbed wire or other similar fencing materials from

fence.

the property. Materials described herein are not permitted on any residential parcel.

**21)   Fences: Maintenance - 15.156.020**
VIOLATION: Improper maintenance of existing fence causing potential hazard and a public nuisance causing blight to the neighborhood.

CORRECTIVE MEASURES: All fences, walls, trellises and gates must be maintained in good condition. Deteriorated materials must be repaired, replaced or removed.

**22)   Fences: Swimming pools - 15.64.070**
VIOLATION: Swimming pool is not properly fenced and/or unfenced (including self-latching gate) to prevent access to the pool from other than from within the building.

CORRECTIVE MEASURES: Repair fence to eliminate access openings.

**23)   Fences: Swimming pools - 15.64.070**
VIOLATION: Swimming pool is not properly fenced and/or unfenced (including self-latching gate) to prevent access to the pool from other than from within the building.

CORRECTIVE MEASURES: Construct new fence with minimum height of five feet with no openings or projections or other facilities that would make such fence conducive to climbing by a child. If vertical members are supported by top and bottom rails connected to posts, the space between each vertical member shall not exceed five inches.

**24)   Fences: Swimming pools - 15.64.070**
VIOLATION: Swimming pool is not properly fenced and/or unfenced (including self-latching gate) to prevent access to the pool from other than from within the building.

CORRECTIVE MEASURES: Install self-latching device to gate to maintain gate closure at al times.

**25)   Semi-Trucks (R-Zone Off-Street) - 10.44.020**
VIOLATION: Residential Districts Commercial semi-trailer truck with GVWR of 10,000 pounds parked Off-Street on residential property.

CORRECTIVE MEASURES: Discontinue parking commercial semi trailer truck on your residential property. Commercial vehicles having a gross vehicle weight rating of 10,000 pounds or more are prohibited from parking on private property within a residential district including street frontages contiguous to schools, colleges, universities, and hospitals.

**26)   Semi-Trucks (On-Street) - 10.36.120**
VIOLATION: Residential Districts Commercial semi-trailer truck with GVWR of 10,000 pounds parked on the street in a residential district.

CORRECTIVE MEASURES: Discontinue parking commercial semi trailer truck on the public right-of-way. Commercial vehicles having a gross vehicle weight rating of 10,000 pounds or more are prohibited from parking on any street within a residential district including street frontages contiguous to schools, colleges, universities, and hospitals.

**27)   Noise (General) - 8.68**
VIOLATION: Operating or permitting the use of any mechanical device, apparatus or equipment in such a manner that exceeds the maximum noise level standards set forth in the Sacramento City Code.

CORRECTIVE MEASURES: Minimize excessive or unnecessary noise to a reasonable level. Control the level of noise in a manner that promotes the use, value, and enjoyment of property, conduct of business, sleep and repose and reduces unnecessary and excessive sound in the environment.

**28)   Noise (Leaf Blowers) - 8.68.180**
VIOLATION: Operating or permitting the use of a portable gasoline powered leaf blower during the hours and days permitted.

CORRECTIVE MEASURES: Allowable hours are permitted between 9:00 AM to 6:00 PM Monday through Saturday and between the hours of 10:00 AM to 4:00 PM on Sunday.

**29)   Trailer Coach / Motor Home - 15.140.020**
VIOLATION: Unlawful to permanently keep or maintain,

CORRECTIVE MEASURES: Except for loading and unloading, travel

Letter View

and/or store on residential property any uninhabited travel          trailer must be removed from the premises.
trailer within the setback area of a dwelling.


30)  Portable basketball Hoop - 12.24.020

VIOLATION:  Maintaining a portable basketball hoop and/or         CORRECTIVE MEASURES:  Remove portable basketball hoop from
other sporting equipment on the sidewalk or in the street.        the sidewalk.  It is prohibited to place any obstruction of any kind in or
                                                                  upon any public street, alley, sidewalk or other public property. If the
                                                                  hoop or other sporting equipment remains in the public right-of-way, it
                                                                  may be confiscated.


31)  Garage/Yard Sales - 5.88.200

VIOLATION:  Continuous garage/yard sales occurring each           CORRECTIVE MEASURES:  Garage/yard sale may occur once per
weekend.                                                          calendar year not to exceed two consecutive days.


32)  Green Swimming Pools

VIOLATION:  Unmaintained swimming pool (green pool)               CORRECTIVE MEASURES:  All swimming pools and/or spas or other
recirculation and purification system is not operating and/or     bodies of water shall be maintained as to not create a health hazard.
maintained properly.                                              Repair swimming pool's recirculation and purification system and
                                                                  maintain proper chemical balance and acid content of the water to
                                                                  eliminate green algae and mosquito infestation.


33)  Vector: Cockroaches/Rodents - 8.100.650, 8.100.560

                                                                  CORRECTIVE MEASURES:  Take immediate measures to remedy
VIOLATION:  Hazardous or Unsanitary Premises - Lack of            any dangerous health conditions that exist. Secure a licensed pest
regular maintenance resulting in infestation of cockroaches       control service or eradicate infestation treatment yourself, including
and/or rodents.                                                   preventive maintenance to complete eradication and harborage
                                                                  removal.
VIOLATION:  Inadequate Sanitation - Infestation of insects,
vermin, or rodents as determined by the health officer.


34)  Signs/Banners - 15.148.670

VIOLATION:  Portable signs/banners prohibited.                    CORRECTIVE MEASURES:  Remove signs/banners.


35)  Detached Accessory Structures - 17.624.050

VIOLATION:  Detached accessory structure not permitted in         CORRECTIVE MEASURES:  Remove structure from the property.
the required front or street setback.


37)  Other:                                                       CORRECTIVE MEASURES:



Initial Inspection Photo: BOAT

**Date Taken:**08/03/2018
**Address:**909 REGATTA DR

**Taken by:**Michael Corral
**Case Number:**18-018110



08/03/2018 13:12

Initial Inspection Photo: VEHICLES

**Date Taken:**08/03/2018
**Address:**909 REGATTA DR

**Taken by:**Michael Corral
**Case Number:**18-018110



Initial Inspection Photo: FENCE MISSING

**Date Taken:**08/03/2018                    **Taken by:**Michael Corral
**Address:**909 REGATTA DR                    **Case Number:**18-018110



08/03/2018 13:12

Initial Inspection Photo: STREET VIEW

**Date Taken:**08/03/2018
**Address:**909 REGATTA DR

**Taken by:**Michael Corral
**Case Number:**18-018110



**City of**
# SACRAMENTO
Community Development

300 Richards Blvd., 3rd Floor
Sacramento, CA 95811

Help Line: 916-264-5011
CityofSacramento.org/cdd

18-018110 Michael Corral 909 REGATTA DR N&O/JV
GRANT MARK A
909 REGATTA DR
SACRAMENTO, CA 95833

08/07/2018

Subject: **Property located at 909 REGATTA DR**
Assessor's Parcel Number: 26203200010000

Enclosed is a Notice and Order to Clean, Remove, Repair or Cease illegal use on the property of which you are the owner of record and/or beneficiary. A fee of **$575.00** has been charged against this property. Additionally, a Title fee of **$100.00 for Residential or $650.00 for a Commercially zoned property** is due per parcel. Failure to comply with this Notice and Order within the specified time may result in the assessment of a Neighborhood Code Compliance Monitoring fee of **$275** for each subsequent inspection related to this case. All charges are pursuant to Chapter 8 of the Sacramento City Code and are due and payable. These fees are to recover enforcement costs and do not include permits or other related fees if applicable.

A Declaration of Public Nuisance regarding this property has been recorded with the County Recorder. When all violations have been corrected and when all fees are paid, and a **$150.00 Termination fee** paid, the Declaration of Public Nuisance will be cleared with the County Recorder.

If you disagree with the requirements of the Notice and Order, you have the right to appeal. Your appeal must be in writing and must be filed with the Code Enforcement Department within **30 days** of such Notice and Order.

If you need clarification of the Notice and Order, or any information provided herein, it is recommended that you contact the code enforcement officer shown below.

Sincerely,

Michael Corral
Code Enforcement Officer
(916) 808-4778

**EXHIBIT**
*1*

Case #:18-018110



*City of*
**SACRAMENTO**
Community Development

300 Richards Blvd., 3rd Floor
Sacramento, CA 95811

Help Line: 916-264-5011
CityofSacramento.org/cdd

18-018110 Michael Corral 909 REGATTA DR N&O/JV
GRANT MARK A
909 REGATTA DR
SACRAMENTO, CA 95833

08/07/2018

## NOTICE AND ORDER TO CLEAN, REMOVE, REPAIR AND/OR CEASE A PUBLIC NUISANCE

1.    YOU ARE BEING NOTIFIED AS Record Owner and/or Beneficiary that the Code Enforcement  Manager, Neighborhood Code Compliance Division of the Code Enforcement Department, has caused to be inspected and has determined that the property(s) at:   909 REGATTA DR

County Assessor's Parcel Number:   26203200010000
(See Attachment A for legal description of property)
(is) (are) in a public nuisance conditions under the provisions of Title 8 of the Sacramento City Code.

2.    That the conditions which render the property as a public nuisance under are set forth on the attached list of existing violations.

3.    The Code Enforcement Manager has determined that the violations on subject property(s) must be corrected.

4.    If you elect to correct the violations, the work therefore shall commence within 14 days from the date of this Order and completed within 30 days from the date of this order.

5.    YOU ARE FURTHER NOTIFIED that if the corrections are not commenced and/or completed within the specified time, the Code Enforcement Manager:  (1) may assess a **Neighborhood Code Compliance Monitoring Fee in the amount of $275 for each subsequent inspection** related to this Notice and Order; (2) may assess Administrative Penalty; (3) may seek an Inspection/Abatement Warrant to bring the property into compliance; and (4) may submit this matter to Superior Court for injunctive relief.  All costs shall be charged against the property or against you as the owner.

6.    YOU ARE FURTHER NOTIFIED that any person having any record title or legal interest in the property may appeal this Notice and Order or any action of the Code Enforcement Manager to the Code Enforcement Appeals Hearing Examiner*; the appeal must be filed with the Code Enforcement Manager within 30 days from the date of this  Notice and Order, and <u>that failure to appeal will constitute a waiver of all right to an administrative hearing and determination of the matter.  An appeal fee of $400.00 is required at the time of the appeal request.</u>  Unless an appeal is filed, the Code Enforcement Manager will proceed to an inspection/abatement warrant and/or injunctive relief without further notice to you.

Dated:  08/07/2018

By_____

Michael Corral
Code Enforcement Officer
(916) 808-4778

*Forms for Appeal may be obtained from the Public Assistance Counter of the Code Enforcement Department, 300 Richards Blvd., 3rd Floor, Sacramento, CA 95811

COMMUNITY DEVELOPMENT DEPARTMENT
NEIGHBORHOOD CODE COMPLIANCE DIVISION

Correction List
Case #: 18-018110    Address: 909 REGATTA DR

**Code: C13: SCC 8.04.100 A**
**Description:** CODE - Storing Trash, Junk, Debris
**Full Violation:** Cease the keeping, storage, depositing or accumulation of trash, junk and debris.
**Comments:** OUTDOOR STORAGE AND ACCUMULATION OF MISCELLANEOUS JUNK, TRASH, RUBBISH AND DEBRIS INCLUDING DIRT, SAND, GRAVEL, CONCRETE OR SIMILAR MATERIALS DISCARDED ON THE PREMISES CREATING A PUBLIC NUISANCE TO THE NEIGHBORHOOD.

**Code: C14: SCC 8.04.100 A**
**Description:** CODE - Storing Inoperable Vehicles
**Full Violation:** Cease the keeping, storage, depositing or accumulation of inoperative, abandoned, dismantled or wrecked vehicle(s). Remove, repair or put in enclosed structure.
**Comments:** KEEPING AND/OR STORAGE OF ANY ABANDONED, INOPERABLE, PARTIALLY DISMANTLED JUNK VEHICLE AND/OR VEHICLE PARTS DISCARDED OR LEFT IN A STATE OF DISREPAIR CREATING A PUBLIC NUISANCE TO THE NEIGHBORHOOD.

**Code: C18: SCC 8.04.100 E**
**Description:** CODE - Dangerous/Unsightly
**Full Violation:** Cease maintaining any dangerous, unsightly, or blighted condition which is detrimental to the health, safety, or welfare of the public.
**Comments:** ANY DANGEROUS, UNSIGHTLY OR BLIGHTED CONDITION WHICH IS DETRIMENTAL TO THE HEALTH, SAFETY OR WELFARE OF THE PUBLIC.

**Code: C46: SCC 17.612**
**Description:** CODE - Landscaping and Paving Regulations
**Full Violation:** Landscape and maintenance requirements. The unpaved portion of a front-yard setback and street side-yard setback shall be landscaped, irrigated, and maintained. The landscape may include grass, annuals, perennials, groundcover, shrubs, trees, and any design elements such as planters, rocks, mulch, or similar elements when integrated as part of the landscape. However, only living vegetation may be used as a primary ground cover; no cement, brick, artificial turf, or other non-vegetative products such as plastic plants or flowers may be used for this purpose. All landscaping materials shall be mowed, trimmed, and maintained as often as necessary to prevent overgrowth and blight. No junk, debris, or other similar materials shall be stored in the landscaped setback area.
**Comments:** LACK OF PROPER LANDSCAPE MAINTENANCE CAUSING OVERGROWN, DEAD, DECAYING VEGETATION CREATING A PUBLIC NUISANCE TO THE NEIGHBORHOOD. ALLOWING DRY OR GREEN GRASS/WEEDS/BUSHES TO CULTIVATE UNCONTROLLABLY CREATING A PUBLIC NUISANCE TO THE NEIGHBORHOOD.

**Code: C48: SCC 17.620**
**Description:** CODE - Wall, Fence, Gate
**Full Violation:** Cease violation of wall, fence and gate regulations.
**Comments:** IMPROPER MAINTENANCE OF EXISTING FENCE CAUSING POTENTIAL HAZARD AND A PUBLIC NUISANCE CAUSING BLIGHT TO THE NEIGHBORHOOD.



300 Richards Blvd., 3rd Floor
Sacramento, CA 95811

Help Line: 916-264-5011
CityofSacramento.org/cdd

**NOTICE AND ORDER TO CLEAN, REMOVE, REPAIR AND/OR CEASE A PUBLIC NUISANCE**

**Attachment A**
08/07/2018

Legal Property Description for 909 REGATTA DR
County Assessor's Parcel Number: 26203200010000

Legal Description:
WOODGATE 02

Case #: 18-018110

*City of*
# SACRAMENTO
Community Development

300 Richards Blvd., 3rd Floor
Sacramento, CA 95811

Help Line: 916-264-5011
CityofSacramento.org/cdd

## NOTICE OF CHANGE OF OWNER'S ADDRESS
## OR
## SALE OF PROPERTY

IF YOU MOVE, YOU MUST SEND A WRITTEN NOTICE OF YOUR NEW ADDRESS TO CODE ENFORCEMENT DEPARTMENT, NEIBHBORHOOD CODE COMPLIANCE DIVISION, TO THE ADDRESS LISTED BELOW.

SHOULD YOU SELL THE PROPERTY, THE NEW OWNER IS TO BE NOTIFIED OF THIS ACTION, AND THE CITY OF SACRAMENTONOTIFIED OF THE CHANGE OF OWNERSHIP AND THE ADDRESS OF THE NEW OWNER(S).

COMMUNITY DEVELOPMENT DEPARTMENT
NEIGBORHOOD CODE COMPLIANCE DIVISION
300 RICHARDS BLVD., 3RD FLOOR
SACRAMENTO, CA 95811

Case #: 18-018110



*City of*
SACRAMENTO
Community Development

300 Richards Blvd., 3rd Floor
Sacramento, CA 95811

Help Line: 916-264-5011
CityofSacramento.org/cdd

## PROOF OF SERVICE BY FIRST CLASS MAIL
(CCP § 1013a, 2015.5)

I, Josie Valdez, declare that:

I am over the age of eighteen years and not a party to the within cause. I am employed in the County of Sacramento, California; my business address is:

300 Richards Blvd., 3rd Floor
Sacramento, California 95811

I am familiar with the City of Sacramento's business practice for the collection and process of the mail in which the mail is deposited with the United States Postal Service on the same day that it is deposited for collection and mailing, in the ordinary course of business.

On 08/07/2018, I served the following document:
**Notice and Order Packet, Appeal Request Form and Proof of Service by First Class Mail**

on the interested parties in said cause, by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail at Sacramento, California, addressed as follows:

18-018110 Michael Corral 909 REGATTA DR N&O/JV
GRANT MARK A
909 REGATTA DR
SACRAMENTO, CA 95833

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed at Sacramento, California, on 08/07/2018.

*Josie Valdez*

Josie Valdez

909 REGATTA DR
Case#: 18-018110

CODE - N&O

View File

11/13/2019



Reinspection Photo: NOTICE AND ORDER POSTED

**Date Taken:** 08/09/2018
**Address:** 909 REGATTA DR

**Taken by:** Michael Corral
**Case Number:** 18-018110

EXHIBIT
3



* G C 1 8 - 0 1 8 1 1 0 *

**RETURNED GREEN CARD**

**909 REGATTA DR**

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

18-018110 Michael Corral 909 REGATTA DR N&O/JV

**GRANT MARK A**
**909 REGATTA DR**
**SACRAMENTO, CA 95833**

9590 9402 3982 8079 1849 91

2. Article Number (Transfer from service label)

7018 0360 0000 1854 7310

PS Form **3811**, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent
                        ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
MARK M. Gron                8-10-18

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:         ☐ No

AUG 1 4 2018

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

**EXHIBIT**
**4**

City of Sacramento
Community Developent Department
Neighborhood Code Compliance Division
300 Richards Blvd., 3rd Floor
Sacramento, CA 95811
Phone: (916) 808-5404

NEIGHBORHOOD CODE COMPLIANCE DIVISION
APPEAL REQUEST FORM

I hereby appeal the *Notice and Order* relative to Case # 18-018110, for the property located at: 909 REGATTA DR and *agree to pay the Notice and Order Appeal Processing Fee of $400.00, prior to the City scheduling a date for the Appeal Hearing.*

[X] PAID      [ ] CHECK#/CASH RECEIPT#: _____

My legal interest in this property is:

[X] Owner      ____ Beneficiary      ____ Other: _____

I submit the following material facts to substantiate action in reversing, modifying or setting aside the action of the

City of Sacramento: _____

_____ See attached Notice of Appeal
_____ and Appeal
_____
_____

I hereby certify under penalty of perjury that the information submitted in the appeal is true.

Print Name:                          Signature:

Mark A. Grant                        Mark A. B

Address:                             Date: 9-06-2018

909 Regatta Dr.                      Phone:( 916 ) 345 - 6662

City: Sacramento, CA 95833

State: CA.          Zip: 95833

*NOTE:* If this form is received incomplete and/or without the Appeal Processing Fee it will be returned to you and may result in a delay in scheduling a hearing.

Case #: 18-018110/Code Notice and Order

Accounting Information:

ACCOUNT: 322220
OPERATING UNIT: 21000
FUND: 1001
DEPARTMENT: 21001313

**EXHIBIT**
tabbies
5

RECEIVED
SEP 0 6 2018
BY HEARINGS SECTION

Mark A. Grant
909 Regatta Drive
Sacramento, California 95833
Self Representation

CITY OF SACRAMENTO, SACRAMENTO COUNTY CODE ENFORCEMENT
300 RICHARDS BLVD. 3RD FLOOR SACRAMENTO, CA 95811

| | |
|---|---|
| Code Enforcement Director and, ] | CASE # 18 - 018110 |
| Code Enforcement Officer Michael Corral, [ | |
| CITY OF SACRAMENTO, [ | 909 REGATTA DR |
| Plaintiff, ] | |
| vs. [ | NOTICE OF APPEAL |
| ] | AND APPEAL; DECLARATION |
| Mark A. Grant, [ | OF MARK A GRANT; EXHIBITS; |
| Residential Property Owner, [ | |
| ] | REQUEST FOR STAY |
| [ | |

I, Mark A. Grant, declare the following material facts to substantiate action in reversing, modifying, dismissing, nullifying or setting aside the action of the City Of Sacramento and finding that the Notice & Order as follows;

I, Mark A. Grant am the Legal owner of the property located at 909 Regatta Drive Sacramento.

* The Notice and Order (N&O) appeal allows the property owner and/or interested parties to show that when the N&O was issued there were no violations on the property, making the N&O null and void. Please keep in mind that during this appeal opportunity, the fees associated with a N&O are not considered, it is ONLY a time to determine whether or not the violations cited by the officer/inspector were valid at the date the N&O was issued.

2. The Code Enforcement Department determined that the Premises known as 909 Regatta Dr. Sacramento, CA is in a Public Nuisance Condition under the provisions of Title 8 of the Sacramento City Code.

**City Of Sacramento Code 8.04.100 Generally.**

It is unlawful and a misdemeanor and a public nuisance for any person owning, leasing, occupying, or having charge or possession of any premises in this city to maintain the premises in a manner that any one or more of the conditions or activities described in the following subsections are found to exist and allowed to continue:

A.    The keeping, storing, depositing, or accumulating on the premises of any personal property within the view of persons on adjacent or nearby real property or the public

NOTICE OF APPEAL AND APPEAL            PAGE 1 OF 14

right-of-way, when the personal property constitutes visual blight, reduces the aesthetic appearance of the neighborhood, is offensive to the senses, or is detrimental to nearby real property or property value. Personal property includes but is not limited to the following: junk as defined in section 8.04.090; abandoned, wrecked, dismantled, or inoperative vehicles; unseaworthy boats or vessels; automotive parts and equipment; appliances; furniture; containers; packing materials; scrap metal; wood; building materials; rubbish; and debris. Wood and building materials being used, or to be used, for a repair or renovation project authorized by a valid building permit may be stored for as long as is necessary to expeditiously complete the project. Upon expiration or cancellation of the permit, wood and building materials for the project must be immediately removed;

B.      The keeping, storage, depositing, or accumulation of dirt, sand, gravel, concrete, or other similar materials that constitute visual blight, reduces the aesthetic appearance of the neighborhood, is offensive to the senses, or is detrimental to nearby property or property values;

C.      The operation of a junk yard or automobile dismantling yard, except in an industrial zone pursuant to a conditional use permit;

D.      Any abandoned drive-in enterprise;

E.      Any dangerous, unsightly, or blighted condition that is detrimental to the health, safety, or welfare of the public;

F.      Any condition in violation of the Sacramento City Building Code, set forth in Chapter 15.20;

G.      Any condition in violation of Chapter 9.44, Article III (Animal Care Services);

H.      Any condition in violation of the Planning and Development Code set forth in Title 17;

I.      Any condition in violation of the fire prevention code, set forth in Title 15;

J.      Any condition in violation of Chapter 5.152 (Regulation of Unattended Donation Boxes);

K.      Any condition recognized in law or in equity as constituting a public nuisance;

L.      The maintenance of the exterior of any vacant or unoccupied building or the interior of any such building that is readily visible from any public street or adjacent parcel of property in a state of unsightliness so as to constitute a blighted condition detrimental to the property values in the neighborhood or otherwise detrimental to the public welfare. Once proceedings have been commenced pursuant to this title to declare a building or property to be a public nuisance under this subsection, no such building or property shall be deemed to be in compliance with this title solely because the building or property thereafter becomes occupied;

M.      Any unimproved real property that has become a dumping ground for litter, garbage, junk, debris, discarded vehicles, vehicle parts or vehicle hulks, and which real property has been subject to abatement action on one or more occasion by the city;

**NOTICE OF APPEAL AND APPEAL**          **PAGE 2 OF 14**

N.        Any illegal activity occurring on the property that is detrimental to the life, health, safety, or welfare of the residents, neighbors, or public. For purposes of this chapter, illegal activity is defined as any violation of state or federal law, rules or regulations, or local ordinance;

O.        Any condition in violation of chapter 8.132 (cultivation of cannabis); and

P.        Any condition (including Dutch elm disease, or other pests or disease) of trees on private property that constitutes a threat to the health, safety, or welfare of the residents, neighbors, public, or other trees. (Ord. 2018-0034 § 2; Ord. 2018-0009 § 2; Ord. 2017-0047 § 2; Ord. 2016-0026 § 2; Ord. 2013-0021 § 18; Ord. 2012-045 § 1; Ord. 2010-001 § 2; Ord. 2001-046 § 3; Ord. 2000-017 § 5(a), (b); prior code § 61.04.401)

### Alleged Code Violations:

Code: C13: SEC 8.04.100A
Description: CODE - Storing Trash, Junk, Debris
Full Violation: Cease the keeping, storage, depositing or accumulation of trash, junk and debris.
Comments: OUTDOOR STORAGE AND ACCUMULATION OF MISCELLANEOUS
JUNK, TRASH, RUBBISH AND DEBRIS INCLUDING DIRT, SAND, GRAVEL,
CONCRETE OR SIMILAR MATERIALS DISCARDED ON THE PREMISES CREATING
A PUBLIC NUISANCE TO THE NEIGHBORHOOD.

Objection #1:
There is no OUTDOOR STORAGE AND ACCUMULATION OF MISCELLANEOUS JUNK, TRASH , RUBBISH AND DEBRIS INCLUDING DIRT, SAND, GRAVEL, CONCRETE OR SIMILAR MATERIALS DISCARDED ON THE PREMISES CREATING A PUBLIC NUISANCE TO THE NEIGHBORHOOD and nor is there any OUTDOOR STORAGE AND ACCUMULATION OF MISCELLANEOUS JUNK, TRASH, RUBBISH AND DEBRIS INCLUDING DIRT, SAND, GRAVEL, CONCRETE OR SIMILAR MATERIALS DISCARDED ON THE PREMISES CREATING A PUBLIC NUISANCE TO THE NEIGHBORHOOD <u>within the view of persons on adjacent or nearby real property or the public right-of-way when the personal property constitutes visual blight, reduces the aesthetic appearance of the neighborhood, is offensive to the senses, or is detrimental to nearby property or property values</u>

Objection #2.
Neither I, Mark A. Grant nor the premises known as 909 Regatta Dr. Sacrament have now or ever engaged in the keeping, storing, depositing, or accumulating on the premises of any personal property within the view of persons on adjacent or nearby real property or the public right-of-way, when the personal property constitutes visual blight, reduces the aesthetic appearance of the neighborhood, is offensive to the senses, or is detrimental to nearby real property or property value. Personal property includes but is not limited to the following: junk as defined in section 8.04.090; abandoned, wrecked, dismantled, or inoperative vehicles; unseaworthy boats or vessels; automotive parts and equipment; appliances; furniture; containers; packing materials; scrap metal; wood; building materials; rubbish; and debris. Wood and building materials being used, or to be used, for

---

**NOTICE OF APPEAL AND APPEAL**                    **PAGE 3 OF 14**

a repair or renovation project authorized by a valid building permit may be stored for as long as is necessary to expeditiously complete the project. Upon expiration or cancellation of the permit, wood and building materials for the project must be immediately removed;

Objection #3

I have requested more information/Discovery from the City Of Sacramento regarding the alleged violation to which the City of Sacramento responded that it would respond in 48 hours or less to which it has failed or refused to responded at all in over a week and continuing. (See Exhibit 'I" Discovery Request and the City of Sacramento Response.)

Code: C14: sec 8.04 100 A
Description: CODE - Storing Inoperable Vehicles
Full Violation: Cease the keeping, storage, depositing or accumulation of inoperative, abandoned, dismantled or wrecked vehicle(s). Remove, repair or put in enclosed structure.
Comments:    KEEPING    AND/OR    STORAGE    OF    ANY    ABANDONED, INOPERABLE, PARTIALLY DISMANTLED JUNK VEHICLE AND/OR VEHICLE PARTS DISCARDED OR LEFT IN A STATE OF DISREPAIR CREATING A PUBLIC NUISANCE TO THE NEIGHBORHOOD.

Objection #1

There are no Inoperable/and/or wrecked Vehicles being stored, deposited, accumulated, abandoned or dismantled vehicles on this property (909 Regatta Dr.) **within the view of persons on adjacent or nearby real property or the public right-of-way when the personal property constitutes visual blight, reduces the aesthetic appearance of the neighborhood, is offensive to the senses, or is detrimental to nearby property or property values.** as all vehicles on this property are lawfully parked, registered/insured to property owner and comply with Sacramento City Code: 17.228.101. The vehicles on the premises of 909 Regatta Dr. do not Create a Public Nuisance to the Neighborhood. And no more than 2 under going Service of Repair (See Exhibit '2')

**Sacramento City Code**

| Up | Previous | Next | Main | Search | Print | No Frames |

Title 17 PLANNING AND DEVELOPMENT CODE
Division II ZONING DISTRICTS AND LAND USE REGULATIONS
Chapter 17.228 SPECIAL USE REGULATIONS
Article I. General

**17.228.101 Personal auto storage.**

Auto storage is a permissible accessory use if the vehicle being stored is registered to a resident of the premises. Any service, repair, or storage of the vehicle shall be located on an approved paved surface and must not violate any other provision of this title or the

NOTICE OF APPEAL AND APPEAL                    PAGE 4 OF 14

city code. No more than two vehicles may be undergoing service or repair or may be stored on the premises at any one time. A vehicle that is inoperable or in pieces is presumed to be undergoing repair. (Ord. 2013-0020 § 1; Ord. 2013-0007 § 1)

Objection #2

I have requested more information from the City Of Sacramento regarding the alleged violation to which the City of Sacramento responded that it would respond in 48 hours or less to which it has failed and/or Refused and has not responded in over a week and continuing. (See Exhibit "1" Discovery Request and the City of Sacramento Response.)

Code: C18: SEC 8.04.100 E
Description: CODE - Dangerous/Unsightly
Full Violation: Cease maintaining any dangerous, unsightly, or blighted condition which is detrimental to the health, safety, or welfare of the public.
Comments: ANY DANGEROUS, UNSIGHTLY OR BLIGHTED CONDITION WHICH IS DETRIMENTAL TO THE HEALTH, SAFETY OR WELFARE OF THE PUBLIC.

Objection #1

The City Of Sacramento and/or Michael Corral state/allege nonthing more than a code citation that is vague and unintelligible as alleged against myself or my property. The City Of Sacramento and/or Michael Corral failed to state/allege ANY DANGEROUS, UNSIGHTLY OR BLIGHTED CONDITION WHICH IS DETRIMENTAL TO THE HEALTH, SAFETY OR WELFARE OF THE PUBLIC thas has been or is being committed by myself or on my premises..

Objection #2

The City Of Sacramento and/or Michael Corral failed to state/allege how my alleged violation of Code: C18: sec 8.04.100 E is to be corrected.

Objection #3

No violation of Code: C18: SEC 8.04.100 E has ever existed on/at 909 Regatta Dr.

Objection #4

I have requested more information from the City Of Sacramento regarding the alleged violation to which the City of Sacramento responded that it would respond in 48 hours or less to which it has not responded in over a week and continuing. (See Exhibit "1" Discovery Request and the City of Sacramento Response.)

Code: C46: SEC 17.612
Description: CODE - Landscaping and Paving Regulations
Full Violation: Landscape and maintenance requirements. The unpaved portion of a front-yard setback and street side-yard setback shall be landscaped, irrigated, and maintained. The landscape may include grass, annuals, perennials, groundcover, shrubs

, trees, and any design elements such as planters, rocks, mulch, or similar elements when integrated as part of the landscape. However, only living vegetation may be used as a primary ground cover; no cement, brick, artificial turf, or other non-vegetative products such as plastic plants or flowers may be used for this purpose. All landscaping materials shall be mowed, trimmed, and maintained as often as necessary to prevent overgrowth and blight. No junk, debris, or other similar materials shall be stored in the landscaped setback area.

Comments: LACK OF PROPER LANDSCAPE MAINTENANCE CAUSING OVERGROWN, DEAD, DECAYING VEGETATION CREATING A PUBLIC NUISANCE TO THE NEIGHBORHOOD. ALLOWING DRY OR GREEN GRASS/WEEDS/BUSHES TO CULTIVATE UNCONTROLLABLY CREATING A PUBLIC NUISANCE TO THE NEIGHBORHOOD.

Objection #1.

The City Of Sacramento Allegation of Violation of Code: C46: sec 17.612 is inaccurate, or unintelligible, and/or non-existent as the most likely alleged code is the following;

Sacramento City Code 17.612.010

A.      Landscaping requirements in setback areas.

1.      Single-unit and duplex dwellings-Front-yard and street side-yard setbacks.

a.      Setback area paving restrictions. A maximum of 50% of each of the required front-yard and street side-yard setbacks may be paved for off-street parking, driveways, walkways, uncovered patios, and other forms of hardscape. However, this maximum limitation does not apply to that portion of the street side-yard located behind a fence that complies with the street side fence requirements set forth in chapter 17.620.

b.      Landscape and maintenance requirements. The unpaved portion of the required front-yard and street side-yard setbacks shall be landscaped and maintained. The landscape shall primarily consist of grass, annuals, perennials, groundcover, shrubs, trees, or other living vegetation provided that artificial turf may be used if it and its substrate is permeable, has a minimum pile height of 1.25 inches, and is not located within the drip line of any trees. Design elements like planters, rocks, mulch, wood chips, bark, or similar elements are permitted when integrated as part of the landscape. All landscaping materials shall be mowed, trimmed, and maintained as often as necessary to prevent overgrowth and blight. No junk, debris, or other similar materials shall be stored in the landscaped setback area.

Objection #1

The Front Setback of the premises located at 909 Regatta drive complies with Sacramento City Code 17.612.010 Landscaping and Paving Regulations and there has never been a violations of Sacramento City Code 17.612.010 Landscaping and Paving Regulations as alleged by The City Of Sacramento and/or Michael Corral.

---

Objection #2
Any alleged violation of Sacramento City Code 17.612.010 is exempt under
Sacramento City Code 17.612.010 as any such alleged violation is behind a fence
in compliance with Sacramento City Code 17.620.

Objection #3
I have requested more information from the City Of Sacramento regarding the
alleged violation to which the City of Sacramento responded that it would respond
in 48 hours or less to which it has not responded in over a week and continuing.
(See Exhibit '1" Discovery Request and the City of Sacramento Response.)

Objection #3
 There has been no LACK OF PROPER LANDSCAPE MAINTENANCE CAUSING
 OVERGROWN, DEAD, DECAYING VEGETATION CREATING A PUBLIC NUISANCE
 ' TO THE NEIGHBORHOOD on the premises known as 909 Regatta Drive.

Objection #4
I am not and nor have I allowed DRY OR GREEN GRASS/WEEDS/BUSHES TO
CULTIVATE UNCONTROLLABLY CREATING A PUBLIC NUISANCE TO THE
NEIGHBORHOOD within the view of persons on adjacent or nearby real property
or the public right-of-way when the personal property constitutes visual blight,
reduces the aesthetic appearance of the neighborhood, is offensive to the senses,
or is detrimental to nearby property or property values.

Objection #5
The City Of Sacramento and/or Michael Corral has failed to state/allege
where this violation is occurring or how this violation is occurring and how the
alleged violation of Sacramento City Code17.612.010 is to be corrected.

Objection #6
I have requested more information from the City Of Sacramento regarding the
·alleged violation to which the City of Sacramento responded that it would respond
in 48 hours or less to which it has not responded in over a week and continuing.
(See Exhibit '1" Discovery Request and the City of Sacramento Response.)

Code: C48: sec 17.620
Description: CODE - Wall, Fence, Gate
Full Violation: Cease violation cif wall, fence and gate regulations.
Comments: IMPROPER MAINTENANCE OF EXISTING FENCE CAUSING
POTENTIAL HAZARD AND A PUBLIC NUISANCE CAUSING BLIGHT TO THE
NEIGHBORHOOD.

**Sacramento City Code 17.620.100 General requirements.**
A.      Applicability. The regulations in this article apply to walls and fences on residential or nonresidential property. These regulations do not apply to sound walls along arterial streets.

B.      Measurement of height of fences and walls. The height of a wall or fence is measured from the highest point of the fence or wall to the adjacent finish grade. Where the finish grades differ on each side of the wall or fence, such as when the wall or fence is also used as a soil retaining structure, the height is measured from the higher adjacent finish grade.

D.      Maintenance. Maintenance of the wall or fence is the responsibility of the owner of the property on which the fence or wall is located.

E.      Nonconforming wall or fence. A property owner may repair, maintain, or replace in the same location a wall or fence that does not conform to these regulations if the wall or fence was constructed prior to February 14, 1980. (Ord. 2013-0020 § 1; Ord. 2013-0007 § 1)

Objection #1
There is no violation of 17.620 and never was, never ever was there such a violation.

Objection #2
I have requested more information from the City Of Sacramento regarding the alleged violation to which the City of Sacramento responded that it would respond in 48 hours or less to which it has not responded in over a week and continuing.

(See Exhibit '1" Discovery Request and the City of Sacramento Response.)

*****************************************************************************************
**Sacramento City Code 8.04.030 Application.**
The provisions of this code shall apply generally to all property throughout the city wherein any of the conditions, hereinafter specified, are found to exist; provided, however, <u>that any condition which would constitute a violation of this code, but which is duly authorized under any city, state or federal law, shall not be deemed to violate this code.</u> (Prior code § 61.01.103)
*****************************************************************************************

*****************************************************************************************
<u>Sacramento City Code 8.08.040 Application</u>
The provisions of this chapter shall apply generally to all property throughout the city wherein any of the nuisances hereinafter specified, are found to exist; provided, however, that any condition which would constitute a violation of this chapter, but which is duly authorized under any city, state or federal law, shall not be deemed to violate this chapter.

---

**The provisions of this chapter shall not apply to activities which constitute a bona fide exercise of constitutional rights.** (Prior code § 61.16.1604)

*****************************************************************

**Sacramento City Code 8.04.080 Violation—Penalty.**

D.        Reasonable Period to Correct Violations. No administrative penalty shall be imposed for violations of provisions of the Planning and Development Code unless the owner has been provided a reasonable period of time to correct the violation before imposition of the penalty, except in those cases in which there is an immediate danger to health or safety. The reasonable period for purposes of this title shall be 30 days from service of a notice of violation relating to the violation of the Planning and Development Code.

E.        The increased civil penalties, imposition of administrative penalties, and modification of the crime classification from an infraction to a misdemeanor shall apply to all violations where a notice and order or other official notice from the city has not been sent to the person in violation prior to the effective date of the ordinance codified in this chapter. The civil penalties and crime classification as provided in the city code prior to the effective date of the ordinance codified in this chapter shall continue to apply to all violations where a notice and order or other official notice of violation was sent by the city prior to the effective date of the ordinance codified in this chapter.  (Ord. 2013-0021 § 17; Ord. 2010-021 § 7; Ord. 2001-046 § 3; prior code § 61.02.205)

**8.04.120 Commencement of nuisance abatement proceedings—Issuance of notice and order.**

To commence nuisance abatement proceedings, the department head shall issue a notice of violation and order to abate (notice and order) directed to the record owner(s) of the premises. The notice and order shall contain:

A.        The street address and/or such other description as is required to identify the premises;

B.        A statement specifying the conditions which constitute the nuisance and declaring such conditions to be a public nuisance pursuant to Section 8.04.100 of this chapter;

C.        A statement of the action required to be taken to eliminate the public nuisance;

D.        A statement ordering the owner to abate the nuisance prior to a set date;

E.        A statement advising that any person having any record title or legal interest in the premises may appeal the notice and order provided that the appeal is made in writing as provided in Section 8.04.170 of this chapter;

F.    A statement that the appeal request must be in writing and filed with the department head within thirty (30) days of service of the notice and order;

G.    A statement that failure to appeal the notice and order will constitute a waiver of all right to an administrative hearing and will be a final determination of the matter;

H.    If the city intends to seek attorney's fees pursuant to Section 38773.5 of the Government Code, a statement that the city intends to seek and recover attorney's fees. (Prior code § 61.05.502)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
<u>City of Sacramento Due Process/Procedural Due Process violations</u>
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Enclosed is a Notice and Order to Clean, Remove, Repair or Cease illegal use on the property of which you are the owner of Record and/or Beneficiary. A fee of $575 has been charged against this property.  (see exhibit 'A')

The City Of Sacramento has found me guilty of violating all the ordinances listed in the Notice and Order to clean, prior to any hearing on the matter and assessed a $575 fee against myself/my property  with no remedy for hearing or appeal of the fee, which is volatile of Procedural Due Process.

The City Of Sacramento has found me guilty of violating all the ordinances listed in the Notice and Order to clean, prior to any hearing on the matter and assessed a title fee of $100.00  against myself/my property  with no remedy for hearing or appeal of the fee, which is volatile of Procedural Due Process

<u>City of Sacramento Due Process/Procedural Due Process violations</u>
A Declaration of Public Nuisance regarding this property has been recorded with the County Recorder. When All violations have been corrected and when all fees have been paid, and a $150 Termination Fee is paid, the Declaration of Public Nuisance will be cleared with the County Recorder.

The City Of Sacramento has found/Adjudged me guilty of violating all the ordinances listed in the Notice and Order to clean, prior to any hearing on the matter and recorded A Declaration of Public Nuisance regarding this property above described and demand $150 Termination Fee be paid in order for the Declaration of Public Nuisance to be cleared with the County Recorder, with no remedy for hearing or appeal of the Declaration of Public Nuisance

**NOTICE OF APPEAL AND APPEAL**                    **PAGE 10 OF 14**

## IN SUMMARY:

The maintenance and use of the property by Mark A. Grant known as 909 Regatta Drive and activities thereon constitute a bona fide exercise of constitutional rights and/or are duly authorized under The City Of Sacramento Code.

Any and all concerns could of duly and timely addressed had the city sent the correspondence it claimed to have sent and/or been more clear as to where on the property the violations were occurring and specifically what must be done to correct the violations. The Notice and order is Vague and Unintelligible leaving property owner to Guest Work when no such violations exist.

### 8.04.170 Appeal.

A.    Form of Appeal. Any person having any record title or legal interest in the premises may appeal from any notice and order of the department head under this title by filing at the office of the department head within thirty (30) days from the date of service of such notice and order, a written appeal containing:

1.    A brief statement setting forth the legal interest of each of the appellants in the premises involved in the notice and order;

2.    A brief statement in ordinary and concise language of the specific order or action protested, together with any material facts claimed to support the contentions of the appellant;

3.    A brief statement in ordinary and concise language of the relief sought, and the reasons why it is claimed the protested order or action should be reversed, modified, or otherwise set aside;

4.    The signatures of all parties named as appellants and their official mailing addresses, with statements from each appellant that each agrees to accept service of the written notice of the time and place of the appeal hearing and the decision of the hearing examiner at such address;

5.    The verification (by declaration under penalty of perjury) of at least one appellant as to the truth of the matters stated in the appeal.

B.    Processing of Appeal. Upon receipt of any appeal filed and the appeal fee pursuant to this section, the department head shall transmit said appeal to the secretary of the hearing examiner who shall calendar it for hearing as follows:

1.    If the appeal is received by the department head not later than fifteen (15) days prior to the next regular appeal hearing, it shall be calendared for hearing at said meeting.

2.    If the appeal is received by the department head on a date less than fifteen (15) days prior to the next appeal hearing, it shall be calendared for the next subsequent appeal hearing.

---

**NOTICE OF APPEAL AND APPEAL**                    **PAGE 11 OF 14**

C.        Noticing Appeal for Hearing. Written notice of the time and place of the hearing shall be given at least ten (10) calendar days prior to the date of the hearing to each appellant by the secretary of the hearing examiner either by causing a copy of such notice to be delivered to the appellant personally or by mailing a copy thereof, postage prepaid, addressed to the appellant at his or her address shown on the appeal.

D.        Appeal Fee. The department may collect and require an appeal fee to be paid at the time the written appeal notice is filed. The appeal fee shall be set by resolution of the city council. The fee shall be calculated to recover the total city costs incurred in the appeal including, but not limited to, staff time to process and handle the appeal, hearing examiner compensation, preparation and service of notices and staff appearance in the appeal hearing. No appeal shall proceed without payment of the fee at the time the appeal is filed provided that the department head may waive or defer the appeal fee upon written request for good cause shown. Good cause may include severe economic hardship, significant attempts to comply with the notice and order, and other factors indicating good faith attempts to comply.

E.        Effect of Failure to Appeal. Failure of any person to file a timely appeal in accordance with the provisions of this section shall constitute an irrevocable waiver of the right to an administrative hearing and a final adjudication of the notice and order, or any portion thereof.

F.        Only those matters or issues specifically raised by the appellant in the appeal notice shall be considered in the hearing of the appeal.

## REQUEST FOR STAY

G.        Staying of Order Under Appeal. Enforcement of any notice and order of the department head issued under this title shall be stayed during the pendency of an appeal there from which is properly and timely filed. (Prior code § 61.05.607)

In the Notice and Order I received from the City Of Sacramento Code Enforcement Officer Michael Corral states in the first Page at Second Paragraph the following at end of Paragraph:

"A Declaration of Public Nuisance regarding this property has been recorded with the County Recorder." When all violations have been Corrected and when all fees are paid. And a $150.00 Termination fee paid, the Declaration of Public Nuisance will be Cleared with the County Recorder.

Point:
The City Of Sacramento and/or Michael Corral have failed to state the Authority under which City or County Code/Ordinance that the "Declaration of Public Nuisance" regarding the 909 Regatta Drive property was issued under and in failing to do so I have been denied my Due Process Rights to defend against such said Declaration.

NOTICE OF APPEAL AND APPEAL                    PAGE 12 OF 14

Declaration of Public Nuisance regarding 909 Regatta Dr. must be rescinded and or recalled due to lack of Notice and hearing. **16.18.503 Hearing Notice.** At no time was I, the property owner of 909 Regatta Drive served with any Notice Of Hearing and/or Order To Appear Before Hearing Examiner to Show Cause Why The Premises known as 909 Regatta Drive should not be Declared A Public Nuisance as required by 16.18.503 which violates my Due Process Rights.

**Discovery**
The court in People v. Amor, supra, at page 30, further held: " Not only may the requirements of notice and a hearing be implied from the due process clause, but, in addition, the rights to discovery, confrontation, cross-examination, and other procedural devices may likewise be implied." [53 Cal. App. 3d 692]

**I move the City of Sacramento to reverse, dismiss or set aside the action(s) of the City Of Sacramento and find that the N & Order as void for failing to respond to Discovery Requests.**

I, Mark A. Grant, request that the City of Sacramento find and declare that the Notice and Order is reversed, and/or modified, and/or dismissed, and/or nullified and/or set aside.

<div align="center">

**REQUEST FOR STAY**

</div>

**I HAVE PETITIONED THE CITY OF SACRAMENTO FOR REVIEW OF THE FEES AND DECLARATION OF PUBLIC NUISANCE ATTACHED TO 909 REGATTA DRIVE SACRAMENTO/MYSELF FOR DUE PROCESS VIOLATIONS AS THE CITY OF SACRAMENTO HAS STATED THAT THE FEES WILL NOT BE ADDRESSED UNDER APPEAL.**

**I REQUEST A STAY PENDING DECISSION ON MY PETITION FOR ADMINISTRATIVE REVIEW. (SEE EXHIBIT '3')**

<div align="center">

**DECLARATION OF MARK A GRANT**

</div>

I, Mark A. Grant, declare under penalty of perjury, that I and the legal owner of 909 Regatta Dr. Sacramento and that the forgoing herein and above, to include exhibits is true and correct and that this declaration was executed at Sacramento, California.

**Dated : September 05, 2018**

Mark A. Grant _____

# Exhibits

## Exhibit '1'

DISCOVERY REQUEST AND THE CITY OF SACRAMENTO RESPONSE

## Exhibit '2'

VEHICLE REGISTRATIONS AND INSURANCE

## Exhibit '3'

PETITION FOR ADMINISTATIVE REVIEW

@ Fundamental fairness forbids Code Enforcement Officers from serving as judges in the same cause, whether a person is charged with a crime or a building code violation. California Law codifies this principal and the City of Sacramento's failure to establish a neutral appeals process for fees charged against Property Owners violate that process.

@ City government should serve all members of the public, not become a hostile, bureaucratic adversary to those it disfavors.

**NOTICE OF APPEAL AND APPEAL**                    **PAGE 14 OF 14**

# Exhibit '1'

Mark A. Grant
909 Regatta Drive
Sacramento, California 95833
Self Representation

CITY OF SACRAMENTO, SACRAMENTO COUNTY CODE ENFORCEMENT
300 RICHARDS BLVD. 3RD FLOOR SACRAMENTO, CA 95811

| | |
|---|---|
| Code Enforcement Director and, ] | CASE # 18 - 018110 |
| Code Enforcement Officer Michael Corral, [ | 909 REGATTA DR |
| Plaintiff, ] | |
| vs. [ | REQUEST FOR |
| ] | CLARFICATION OF |
| Mark A. Grant, [ | CODE/ORDINANCE |
| Residential Property Owner, [ | VIOLATIONS AND |
| and respondent. ] | PRODUCTION OF |
| [ | EVIDENCE |
| [ | |

Dear Code Enforcement Officer, Michael Corral;

I, Mark A. Grant hereby request the following:

1. I request for each alleged code violation, clarification as to where on the
premises you believe the code/ordinance violations are occurring.

2. Clarification as to what actions must be taken to clear up the alleged Violation.

3. Any and all photos depicting the alleged violation(s).

It is difficult to comply with the Notice and Order, because of the lack of
specificity in alleged the code/ordinance violation. I believe that compliance with
these allege code/ordinance violations is impossible because of their vagueness and
extreme lack of specificity. They are therefore unenforceable without more.

Please Forward Your Response to sunshadow51@gmail.com or 909 regatta Dr. Sacto, CA

Code: C13: SEC 8.04.100A
Description: CODE - Storing Trash, Junk, Debris
Full Violation: Cease the keeping, storage, depositing or accumulation of trash, junk and debris.
Comments: OUTDOOR STORAGE AND ACCUMULATION OF MISCELLANEOUS
JUNK, TRASH, RUBBISH AND DEBRIS INCLUDING DIRT, SAND, GRAVEL,
CONCRETE OR SIMILAR MATERIALS DISCARDED ON THE PREMISES CREATING A
PUBLIC NUISANCE TO THE NEIGHBORHOOD.

I, Mark A. Grant hereby request the following:
1. I request for each alleged code violation, clarification as to where on the premises you believe the code/ordinance violations are occurring.
2. Clarification as to what actions must be taken to clear up the alleged Violation.
3. Any and all photos depicting the alleged violation(s).

Code: C14: SEC 8.04.100 A
Description: CODE - Storing Inoperable Vehicles
Full Violation: Cease the keeping, storage, depositing or accumulation of inoperative, abandoned, dismantled or wrecked vehicle(s). Remove, repair or put in enclosed structure.
Comments: KEEPING AND/OR STORAGE OF ANY ABANDONED, INOPERABLE, PARTIALLY DISMANTLED JUNK VEHICLE AND/OR VEHICLE PARTS DISCARDED OR LEFT IN A STATE OF DISREPAIR CREATING A PUBLIC NUISANCE TO THE NEIGHBORHOOD.

I, Mark A. Grant hereby request the following:
1. I request for each alleged code violation, clarification as to where on the premises you believe the code/ordinance violations are occurring.
2. Clarification as to what actions must be taken to clear up the alleged Violation.
3. Any and all photos depicting the alleged violation(s).

Code: C18: SEC 8.04.100 E
Description: CODE - Dangerous/Unsightly
Full Violation: Cease maintaining any dangerous, unsightly, or blighted condition which is detrimental to the health, safety, or welfare of the public.
Comments: ANY DANGEROUS, UNSIGHTLY OR BLIGHTED CONDITION WHICH IS DETRIMENTAL TO THE HEALTH, SAFETY OR WELFARE OF THE PUBLIC.

I, Mark A. Grant hereby request the following:
1. I request for each alleged code violation, clarification as to where on the premises you believe the code/ordinance violations are occurring.
2. Clarification as to what actions must be taken to clear up the alleged Violation.
3. Any and all photos depicting the alleged violation(s).

Code: C46: SEC 17.612
Description: CODE - Landscaping and Paving Regulations
Full Violation: Landscape and maintenance requirements. The unpaved portion of a front-yard setback and street side-yard setback shall be landscaped, irrigated, and maintained. The landscape may include grass, annuals, perennials, groundcover, shrubs, trees, and any design elements such as planters, rocks, mulch, or similar elements when integrated as part of the landscape. However, only living vegetation may be used as a primary ground cover; no cement, brick, artificial turf, or other non-vegetative products

such as plastic plants or flowers may be used for this purpose. All landscaping materials shall be mowed, trimmed, and maintained as often as necessary to prevent overgrowth and blight. No junk, debris, or other similar materials shall be stored in the landscaped setback area.
Comments: LACK OF PROPER LANDSCAPE MAINTENANCE CAUSING OVERGROWN, DEAD, DECAYING VEGETATION CREATING A PUBLIC NUISANCE TO THE NEIGHBORHOOD. ALLOWING DRY OR GREEN GRASS/WEEDS/BUSHES TO CULTIVATE UNCONTROLLABLY CREATING A PUBLIC NUISANCE TO THE NEIGHBORHOOD.

I, Mark A. Grant hereby request the following:
1. I request for each alleged code violation, clarification as to where on the premises you believe the code/ordinance violations are occurring.
2. Clarification as to what actions must be taken to clear up the alleged Violation.
3. Any and all photos depicting the alleged violation(s).

Code: C48: sec 17.620
Description: CODE - Wall, Fence, Gate
Full Violation: Cease violation cif wall, fence and gate regulations.
Comments: IMPROPER MAINTENANCE OF EXISTING FENCE CAUSING POTENTIAL HAZARD AND A PUBLIC NUISANCE CAUSING BLIGHT TO THE NEIGHBORHOOD.

I, Mark A. Grant hereby request the following:
1. I request for each alleged code violation, clarification as to where on the premises you believe the code/ordinance violations are occurring.
2. Clarification as to what actions must be taken to clear up the alleged Violation.
3. Any and all photos depicting the alleged violation(s).

I declare under penalty of perjury the foregoing is true and correct.

Please Forward Your Response to sunshadow51@gmail.com or 909 regatta Dr. Sacto, CA

Respectfully requested,

*Mark A. Grant*

August 27, 2018    _____
                    Property Owner / Mark A. Grant

**REQUEST FOR CLARFICATION OF VIOLATIONS AND PRODUCTION OF EVIDENCE   PG 3 OF 3**

# Exhibit '2'

1. USAA  Auto Issuance Policy  for  Chrysler Mini Van
2. Registration for  Chrysler Mini Van  (driven nearly every day.
3. USAA  Auto Issuance Policy  for  Land Rover Range Rover
4. Miss placed registration for Land Rover Range Rover / will present at hearing
5. USAA MOTORCYCLE  Policy
6. MOTORCYCLE  Registration
7. USAA  Watercraft/Boat  Insurance
8. Watercraft/Boat  Registration
9. Watercraft/Boat  **Trailer**  Registration

For Roadside Assistance: 800-531-8555

Report a claim, get coverage and deductible information, request a tow from the accident scene, schedule an appraisal or reserve a rental car using:

- usaa.com,
- USAA's Mobile App, or
- By calling 210-531-USAA (8722), our mobile phone shortcut number #8722 or 800-531-USAA.

## California Evidence of Financial Responsibility

This ID card is evidence of liability insurance for your vehicle. The card is valid only as long as liability insurance remains in force. Keep a copy of the ID card in your vehicle at all times.

You may be required to produce your identification card at vehicle registration or inspection, when applying for a driver's license, following an accident, or upon a law enforcement officer's request.

FCA1   Rev. 6-13                                                                50781-0513_02

---

**CALIFORNIA EVIDENCE OF FINANCIAL RESPONSIBILITY**

Name and Address of Insured        NAIC 18600

MARK GRANT
PO BOX 191566
SACRAMENTO CA 95819-7566

MARK GRANT

| Insurance Company |  |  |
|---|---|---|
| USAA GENERAL INDEMNITY COMPANY |  |  |

| Policy Number | Effective Date | Expiration Date |
|---|---|---|
| 03628 25 71G   7101 3 | 07/04/18 | 01/04/19 |

| Vehicle Make/Vehicle Identification Number | Year |
|---|---|
| CHRYSLER         2C4GP54L15R417491 | 2005 |

This policy provides at least the minimum amounts of liability insurance required by the CA VEH CODE SECTION 16056 for the specified vehicle and named insureds and may provide coverage for other persons and other vehicles as provided by the insurance policy.

**back**

California Evidence of Financial Responsibility
Keep this card.

IMPORTANT: The California Financial Responsibility Act (Section 16020) of the Vehicle Code requires every owner or operator of a vehicle subject to the requirements of the Financial Responsibility Act to carry evidence of financial responsibility in the vehicle at all times. Under vehicle code (Section 16028) every driver involved in an accident must provide evidence of financial responsibility at the scene. Failure to comply is an infraction and shall be punishable by fines, impoundment or license suspension.

Additional copies available at usaa.com

CONTACT US: 210-531-USAA(8722)
OR 800-531-USAA

9800 Fredericksburg Road, San Antonio, Texas 78288



*A Public Service Agency*

THIS VALIDATED REGISTRATION CARD OR A FACSIMILE COPY IS TO BE KEPT WITH THE
VEHICLE FOR WHICH IT IS ISSUED. THIS REQUIREMENT DOES NOT APPLY WHEN THE
VEHICLE IS LEFT UNATTENDED. IT NEED NOT BE DISPLAYED. PRESENT IT TO ANY PEACE
OFFICER UPON DEMAND. IF YOU DO NOT RECEIVE A RENEWAL NOTICE, USE THIS FORM
TO PAY YOUR RENEWAL FEES OR NOTIFY THE DEPARTMENT OF MOTOR VEHICLES OF THE
PLANNED NON-OPERATIONAL STATUS (PNO) OF A STORED VEHICLE. RENEWAL FEES MUST
BE PAID ON OR BEFORE THE REGISTRATION EXPIRATION DATE OR PENALTIES WILL BE
DUE PURSUANT TO CALIFORNIA VEHICLE CODE SECTIONS 9552 - 9554.

EVIDENCE OF LIABILITY INSURANCE FROM YOUR INSURANCE COMPANY MUST BE PROVIDED
TO THE DEPARTMENT WITH THE PAYMENT OF RENEWAL FEES. EVIDENCE OF LIABILITY
INSURANCE IS NOT REQUIRED WITH REGISTRATION RENEWAL OF OFF-HIGHWAY VEHICLES,
TRAILERS, VESSELS, OR IF YOU FILE A PNO ON THE VEHICLE.

WHEN WRITING TO DMV, ALWAYS GIVE YOUR FULL NAME, PRESENT ADDRESS, AND THE
VEHICLE MAKE, LICENSE, AND IDENTIFICATION NUMBERS.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*    DO NOT DETACH - REGISTERED OWNER INFORMATION    \*\*\*\*\*\*\*\*\*\*\*\*\*\*



*A Public Service Agency*

REGISTRATION CARD VALID FROM: 04/16/2018 TO: 04/16/2019

| MAKE | YR MODEL | YR 1ST SOLD | VLF CLASS | *YR | TYPE VEH | TYPE LIC | LICENSE NUMBER |
|------|----------|-------------|-----------|-----|----------|----------|----------------|
| CHRY | 2005 | 2005 | CH | 2008 | 12S | 11 | 6CVE413 |

| BODY TYPE MODEL | NP | MO | | | | VEHICLE ID NUMBER |
|-----------------|----|----|--|--|--|-------------------|
| SV | G | ZR | | | | 2C4GP54L15R417491 |

| TYPE VEHICLE USE | DATE ISSUED | CC/ALCO | I/T FEE RECVD | PIC | STICKER ISSUED |
|------------------|-------------|---------|---------------|-----|----------------|
| AUTOMOBILE | 04/06/18 | 34 | 04/06/18 | 9 | K2210858 |

PR EXP DATE :- 04/16/2018

REGISTERED OWNER
GRANT MARK A
4750 J ST
PO BX 191566

SACRAMENTO
CA                95819

LIENHOLDER

AMOUNT DUE
$   129.00

AMOUNT RECVD
CASH :
CHCK :
CRDT :    129.00

AMOUNT PAID
$   129.00

---

**For Roadside Assistance: 800-531-8555**

Report a claim, get coverage and deductible information, request a tow from the accident scene, schedule an appraisal or reserve a rental car using:

- usaa.com,
- USAA's Mobile App, or
- By calling 210-531-USAA (8722), our mobile phone shortcut number #8722 or 800-531-USAA.

---

### California Evidence of Financial Responsibility

This ID card is evidence of liability insurance for your vehicle. The card is valid only as long as liability insurance remains in force. Keep a copy of the ID card in your vehicle at all times.

You may be required to produce your identification card at vehicle registration or inspection, when applying for a driver's license, following an accident, or upon a law enforcement officer's request.

FCA1 Rev. 6-13                                           50781-0513__02

---

**CALIFORNIA EVIDENCE OF FINANCIAL RESPONSIBILITY**

Name and Address of Insured          NAIC 18600

MARK GRANT
PO BOX 191566
SACRAMENTO CA 95819-7566

MARK GRANT

| Insurance Company |  |  |
|---|---|---|
| USAA GENERAL INDEMNITY COMPANY |  |  |

| Policy Number | Effective Date | Expiration Date |
|---|---|---|
| 03628 25 71G   7101  3 | 07/04/18 | 01/04/19 |

| Vehicle Make/Vehicle Identification Number | Year |
|---|---|
| LANROVER   SALPV1447VA358018 | 1997 |

This policy provides at least the minimum amounts of liability insurance required by the CA VEH CODE SECTION 16056 for the specified vehicle and named insureds and may provide coverage for other persons and other vehicles as provided by the insurance policy.

**b a c k**

**California Evidence of Financial Responsibility**
**Keep this card.**

**IMPORTANT:** The California Financial Responsibility Act (Section 16020) of the Vehicle Code requires every owner or operator of a vehicle subject to the requirements of the Financial Responsibility Act to carry evidence of financial responsibility in the vehicle at all times. Under vehicle code (Section 16028) every driver involved in an accident must provide evidence of financial responsibility at the scene. Failure to comply is an infraction and shall be punishable by fines, impoundment or license suspension.

**Additional copies available at usaa.com**

CONTACT US: 210-531-USAA(8722)
OR 800-531-USAA

9800 Fredericksburg Road, San Antonio, Texas 78288

## Account Summary

View Another Account

September 06, 2018 |

### Motorcycle >> Nickname

| | | | |
|---|---|---|---|
| Policy Number | MC410701935 | Insured By | Progressive Insurance Company |
| Policy Term | 03/07/2018 – 03/07/2019 | Manage My Policy | 1-877-689-9794 24 hours a day 7 days a week |
| Named Insured | MARK GRANT | File a Claim | 1-800-776-4737 24 hours a day 7 days a week |

**VEHICLE DETAILS    COVERAGE**

2005 HONDA VTX1300          1HFSC52185A200344


USAA
COMMUNITY
Get Support. Discuss. Explore.
Visit the USAA Community.


Financial Advice
Questions & Answers


GO MOBILE
apps & more

Corporate Info & Media    News Center    Privacy    Careers    Accessibility    Contact Us    Site Map    FAQs    Site Terms

Switch to mobile site

REGISTRATION VALID FROM
11/12/2017 TO 11/12/2018    TYPE 21    LICENSE NUMBER 17L7061

VEHICLE IDENTIFICATION NUMBER
_HFSC52185A200344                                    MAKE HOND

BODY TYPE MODEL        CYLS.        DATE FIRST SOLD    CLASS    YR.    Yr. Model
RS                          00/00/2004      CH              2005

DATE ISSUED         TYPE VEH.   MP   AX   WC   UNLADEN/GVW/GCW    TOTAL FEES PAID
11/25/2017    220   G                              $103
ENG NO S052E2205570                                       3400

                    GRANT MARK A
O                   4750 J ST
W                   PO BX 191566
N                   SACRAMENTO    CA 95819-5003
E
R

                                                  L0010

                                    142110820170789

                    STATE OF CALIFORNIA
                    DEPARTMENT OF MOTOR VEHICLES
                    VALIDATED REGISTRATION CARD      J6099485
                    READ REVERSE SIDE - IMPORTANT INSTRUCTIONS

TO REMOVE THE STICKER
FROM THE BACKING,
BEND STICKER AT SLIT AND PEEL SLOWLY.

INSTRUCTIONS FOR
APPLYING STICKER TO LICENSE PLATE
1. CLEAN SURFACE THOROUGHLY. SCRAPE
   OFF ACCUMULATED STICKERS (STICKER
   WILL NOT STICK IF WET OR DIRTY).
2. PUT STICKER ON REAR LICENSE PLATE
   AS SHOWN BELOW:
MOTORCYCLES:
Right Half of This Well

    CAL
    1A0000

ALL OTHERS:
In Top Right Corner

    CALIFORNIA
    1SAM123

EXCEPT:
Truck Tractors And Commercial Vehicles With
A Declared Gross Vehicle Weight of 10,001 lbs.
or More—Must Apply Sticker To Front Plate



# Account Summary

View Another Account

September 06, 2018 |

## Watercraft >> Nickname

| | | | |
|---|---|---|---|
| Policy Number | 375415084 | Insured By | Progressive Insurance Company |
| Policy Term | 01/03/2018 – 01/03/2019 | Manage My Policy | 1-877-689-9794<br>24 hours a day<br>7 days a week |
| Named Insured | MARK GRANT | File a Claim | 1-800-776-4737<br>24 hours a day<br>7 days a week |

**WATERCRAFT DETAILS    COVERAGE**

| | | | |
|---|---|---|---|
| 2006 SEA R 205 SPORT | 20 | 195 | SERV2566H506 |



USAA COMMUNITY
Get Support. Discuss. Explore.
Visit the USAA Community.



Financial Advice
Questions & Answers

GO MOBILE
apps & more

| Corporate Info & Media | News Center | Privacy | Careers | Accessibility | Contact Us | Site Map | FAQs | Site Terms |

Switch to mobile site



VESSEL CERTIFICATE OF NUMBER

| BUILDER | | VESSEL USE | | REGISTRATION EXPIRES | CO. CODE | TYPE | VESSEL NUMBER |
|---------|---|------------|---|----------------------|----------|------|---------------|
| SEARAY | | PLEASURE | | DEC/31/2019 | 3400 | V1 | CF 7925 RH |

HULL NUMBER  SER/2566H506

| YEAR MODEL | YEAR BUILT | LENGTH FT | IN | TYPE VSL | HULL TYPE | HULL MATL. | PROP | FUEL |
|------------|-----------|-----------|-----|----------|-----------|-----------|------|------|
| 2005 | 2005 | 021 | 00 | B2 | R | P | N | G |

DATE ISSUED
11/24/2017

TOTAL FEES PAID
$36

REGISTERED OWNER LIEN HOLDER

----- GRANT MARK A
PO BOX 191566
SACRAMENTO  CA 95819-7566

| RF | |
|----|---|
| PEN | |
| DI | |
| TOT | |

State of California
DEPARTMENT OF MOTOR VEHICLES

95381

**PTI SERVICE FEE PAYMENT RECEIPT**

| MAKE SHRLN | YR MODEL | YR 1ST SOLD 0000 | VLF CLASS AD | *YR 2005 | TYPE VEH 42 | TYPE LIC PA | LICENSE NUMBER NT8113 |
|---|---|---|---|---|---|---|---|
| DY TYPE | MP | MO | AX | WC | UNLADEN WT | VEHICLE ID NUMBER | |
| RRIER Public Service Agency | | | 1 | A | 250 | 238760 | |

| TYPE VEHICLE USE | DATE ISSUED 01/25/2017 | CC/ALCO 34 | DT FEE RCVD 01/12/2017 | PIC | USE TAX |
|---|---|---|---|---|---|

EXP DATE: 02/28/2022

MISC#                    AMOUNT PAID
ACT#                     $  10.00

AMT DUE        AMT RECVD
$  10.00       CASH:
               CHCK:   10.00
               CRDT:

REGISTERED OWNER

GRANT MARK ANTHONY
PO BOX 191566

SACRAMENTO
CA          95819

1410112201704 9005

********************** DO NOT DETACH - PTI OWNER INFORMATION **********************

THIS IS NOT A PERMANENT TRAILER IDENTIFICATION (PTI) CARD. THIS RECEIPT IS EVIDENCE OF PAYMENT OF THE PTI SERVICE FEE AND/OR PLATE WITH OWNER (PWO) RENEWAL FEES FOR THE TRAILER FOR WHICH IT IS ISSUED. PAYMENT OF THE PWO FEE PREVENTS YOUR ENVIRONMENTAL LICENSE PLATE OR SPECIAL INTEREST LICENSE PLATE FROM BECOMING SUBJECT TO CANCELLATION, AND THE CONFIGURATION BEING MADE AVAILABLE TO OTHER INTERESTED PARTIES (CALIFORNIA VEHICLE CODE SECTIONS 5067b, 5106c.). NO NEW PTI STICKER WILL BE ISSUED, HOWEVER, REPLACEMENT PTI STICKERS ARE AVAILABLE UPON REQUEST.
**NOTE:** PTI STICKERS ARE NOT ISSUED FOR PTI PLATES.

IMMEDIATELY NOTIFY DMV IN PERSON OR BY MAIL ON THE PROPER DMV FORMS WHEN:

* YOU CHANGE YOUR ADDRESS.
* YOU SELL YOUR TRAILER.
* YOU ARE INVOLVED IN AN ACCIDENT ( WHETHER OR NOT IT WAS YOUR FAULT) WHEN THERE WAS OVER $750 DAMAGE OR ANY BODILY INJURY OR DEATH.

WHEN WRITING TO DMV, ALWAYS GIVE YOUR FULL NAME, PRESENT ADDRESS, AND THE VEHICLE'S MAKE, LICENSE, AND IDENTIFICATION NUMBERS.

000141

# Exhibit '3'

Mark A. Grant (916) 345 - 6662
909 Regatta Drive
Sacramento, California 95833
Self Representation

### CITY OF SACRAMENTO, SACRAMENTO CODE ENFORCEMENT
### 300 RICHARDS BLVD. 3RD FLOOR SACRAMENTO, CA 95811

| | |
|---|---|
| City Of Sacramento | |
| Code Enforcement Director and, | CASE # 18 - 018110 |
| Code Enforcement Officer Michael Corral, | 909 REGATTA DR |
| Respondent, | |
| vs. | |
| | PETITION FOR |
| Mark A. Grant, | ADMINISTRATIVE REVIEW |
| Residential Property Owner, | OF ORDER OF AN AGENCY |
| Petitioner. | OR OFFICER, AND |
| | DECLARATION OF MARK |
| | A. GRANT (EXHIBIT 'A') |

I, Mark A. Grant, hereby petition the City Of Sacramento Board of Administrative Review to review the Order of Code Enforcement Officer Michael Corral in:

    a) charging a fee of $575.00 dollars against myself/premises known as 909 Regatta Dr. Sacramento, CA without a Due Process Hearing.

    b) charging a title fee of $100.00 dollars against myself/premises known as 909 Regatta Dr. Sacramento, CA without a Due Process Hearing.

    c) Recording a Declaration of Public Nuisance regarding 909 Regatta Dr. Sacramento with the County Recorder without and prior to a Due Process Hearing.

**The City Of Sacramento and/or Code Enforcement Officer Michael Corral has deprived me of property in the form of money and a derogatory Declaration of Public Nuisance without "due process of law." ( SEE EXHIBIT 'A')**

As a government agent, code enforcement officers are prohibited from depriving people of life, liberty or property without "due process of law." Generally, there are two types of due process: procedural and substantive due process.

Procedural due process is the process utilized to arrive at a decision as opposed to the substance of a decision. Generally, procedural due process requires that a person, prior to taking adverse action regarding the person's property, must be given:

    1. Notice of the action to be taken;

    2. The reason or basis for the proposed action; and

    3. An opportunity to explain why the action shouldn't be taken.

Alliance Mortgage Co. v. Pastine, 281 Kan. 1266, 1275, 136 P.3d 457 (2006)

PETITION FOR ADMINISTRATIVE REVIEW          pg 1 or 3

EXHIBIT
6

Substantive due process addresses the fairness of the decision as opposed to the process taken to get to the decision. Generally, it means the overall decision must be fair. Substantive due process claims may be asserted regarding a legislative action or regarding an executive action.

Code Enforcement Officer Michael Corral on behalf of the City of Sacramento was unfair in his/her decisions above complained of and said decisions were volatile of Substantive Due Process as I was not given an opportunity to explain why the action shouldn't be taken, and the action taken by Code Enforcement Officer Michael Corral on behalf of the City of Sacramento implies that alleged ordinances were violated and Declaration of Public Nuisance was recorded against the property/myself and fees issued/assessed accordingly.

### Constitutional Provisions

The right to due process is derived from the United States Constitution and in some cases individual state constitutions. The Fifth Amendment, while generally applying to criminal actions, also prohibits governments from denying persons of "life, liberty or property without due process of law." U.S. Const. Amend. V. It prohibits the taking of private property without just compensation. These provisions are frequently cited by plaintiffs as being violated when property is removed from the premises as part of an abatement action or they are denied access to their property due to condemnation or the boarding of a structure.

The United States Supreme Court has made it clear that the right of continuous use and enjoyment of one's property and the right to exclude others from one's property are constitutionally protected property interests. See: Rakas v. Illinois, 439 U.S. 128, 143 (1978) and Greene v. Lindsey, 456 U.S. 444 (1982).

The Fourteenth Amendment to the United States Constitution provides that no state "shall deprive any person of life, liberty or property without due process of law." U.S. Const. Amend V. Most code enforcement actions affect some form of property rights of owners. This is particularly true when properties are abated and property seized from its owners.

Lastly, many state constitutions also provide that due process must be granted to citizens of its state. See CALIFORNIA CONSTITUTION ARTICLE 1 DECLARATION OF RIGHTS SEC 7.

Property owners or occupants affected by code decisions frequently bring actions in Federal Court pursuant to 42 U.S.C. § 1983. Remedies however do exist for individuals complaining of lack of due process under both federal and state law. The most common statute used for recovery is 42 U.S.C. § 1983.

---

This statute provides that: Every person who, under color of any statute, ordinance, regulation, custom, or usage of any state...subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privilege or immunities secured by the constitution and laws, shall be liable to the party injured in the action of law. 42 U.S.C. § 1983.

## Liability of Individual Officers

Section 1983 claims may be brought against individual officers as well as municipalities. There are two elements necessary to state a § 1983 claim against an individual: 1. A violation of a right secured by the constitution and laws of the United States; and 2. The alleged deprivation was committed by a person acting under color of state law. See e.g. West v. Atkins, 487 U.S. 42, 48 (1988). Courts have recognized that an individual has a constitutional right to freely own and utilize both personal and real property.

Actions by code enforcement officers to remove property or preclude the use of property may arise to the level of a 4 constitutional violation, if done without the appropriate notice and an opportunity to be heard is not afforded to the property owner. The color of state law element is seldom at issue in a §1983 case.

Courts have generally applied a broad interpretation to this requirement. Under "color of law" generally means under pretense of law. Acts of officers who undertake to perform their official duties are included whether they follow the line of their authority or overstep it. Screws v. United States, 325 U.S. 91 (1944). Section 1983 is intended to "enforce provisions of the Fourteenth Amendment against those who carry a badge of authority and represent it in some capacity, whether they act in accordance with their authority or misuse it." Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978). In Lugar v. Edmondson Oil Company, 457 U.S. 922, 929 (1982), the Supreme Court held that an officer acts under color of the law if he is clothed with the authority of the state, and is purporting to act under the authority, even if he misuses or abuses that authority. Municipal Liability To impose § 1983 liability upon a governmental entity, it must be shown that the government entity itself was the "moving force" behind the deprivation such that it would be proper to impose liability on the municipality. Monell v. New York City Department of Social Services, 436 U.S. 658, 694 (1978).

## In Summary

The actions of Code Enforcement Officer Michael Corral on behalf of the City of Sacramento should be reversed, set aside, declared null and void to include the removal of all fees herein complained of and the Declaration of Public Nuisance against the premises known as 909 Regatta Dr.

Respectfully submitted,
Mark A. Grant     _Mark A. Grant_     09/03/2018

---

PETITION FOR ADMINISTRATIVE REVIEW                    pg 3 or 3



Mark A. Grant
909 Regatta Drive
Sacramento, California 95833
Self Representation

### CITY OF SACRAMENTO, SACRAMENTO COUNTY CODE ENFORCEMENT
### 300 RICHARDS BLVD. 3RD FLOOR SACRAMENTO, CA 95811

| | | |
|---|---|---|
| Code Enforcement Director and, | ] | CASE # 18 - 018110 |
| Code Enforcement Officer Michael Corral, | [ | 909 REGATTA DR |
| Plaintiff, | [ | |
| | ] | REQUEST FOR |
| vs. | [ | CLARFICATION OF |
| | ] | CODE/ORDINANCE |
| Mark A. Grant, | [ | VIOLATIONS AND |
| Residential Property Owner, | [ | PRODUCTION OF |
| and respondent. | ] | EVIDENCE |
| | [ | |

Dear Code Enforcement Officer, Michael Corral;

I, Mark A. Grant hereby request the following:

1. I request for each alleged code violation, clarification as to where on the premises you believe the code/ordinance violations are occurring.

2. Clarification as to what actions must be taken to clear up the alleged Violation.

3. Any and all photos depicting the alleged violation(s).

It is difficult to comply with the Notice and Order, because of the lack of specificity in alleged the code/ordinance violation. I believe that compliance with these allege code/ordinance violations is impossible because of their vagueness and extreme lack of specificity. They are therefore unenforceable without more.

Please Forward Your Response to sunshadow51@gmail.com or 909 regatta Dr. Sacto, CA

Code: C13: SEC 8.04.100A
Description: CODE - Storing Trash, Junk, Debris
Full Violation: Cease the keeping, storage, depositing or accumulation of trash, junk and debris.
Comments: OUTDOOR STORAGE AND ACCUMULATION OF MISCELLANEOUS
JUNK, TRASH, RUBBISH AND DEBRIS INCLUDING DIRT, SAND, GRAVEL,
CONCRETE OR SIMILAR MATERIALS DISCARDED ON THE PREMISES CREATING A
PUBLIC NUISANCE TO THE NEIGHBORHOOD.

**EXHIBIT**
exhibit **7**

I, Mark A. Grant hereby request the following:
1. I request for each alleged code violation, clarification as to where on the premises you believe the code/ordinance violations are occurring.
2. Clarification as to what actions must be taken to clear up the alleged Violation.
3. Any and all photos depicting the alleged violation(s).

Code: C14: SEC 8.04.100 A
Description: CODE - Storing Inoperable Vehicles
Full Violation: Cease the keeping, storage, depositing or accumulation of inoperable, abandoned, dismantled or wrecked vehicle(s). Remove, repair or put in enclosed structure.
Comments: KEEPING AND/OR STORAGE OF ANY ABANDONED, INOPERABLE, PARTIALLY DISMANTLED JUNK VEHICLE AND/OR VEHICLE PARTS DISCARDED OR LEFT IN A STATE OF DISREPAIR CREATING A PUBLIC NUISANCE TO THE NEIGHBORHOOD.

I, Mark A. Grant hereby request the following:
1. I request for each alleged code violation, clarification as to where on the premises you believe the code/ordinance violations are occurring.
2. Clarification as to what actions must be taken to clear up the alleged Violation.
3. Any and all photos depicting the alleged violation(s).

Code: C18: SEC 8.04.100 E
Description: CODE - Dangerous/Unsightly
Full Violation: Cease maintaining any dangerous, unsightly, or blighted condition which is detrimental to the health, safety, or welfare of the public.
Comments: ANY DANGEROUS, UNSIGHTLY OR BLIGHTED CONDITION WHICH IS DETRIMENTAL TO THE HEALTH, SAFETY OR WELFARE OF THE PUBLIC.

I, Mark A. Grant hereby request the following:
1. I request for each alleged code violation, clarification as to where on the premises you believe the code/ordinance violations are occurring.
2. Clarification as to what actions must be taken to clear up the alleged Violation.
3. Any and all photos depicting the alleged violation(s).

Code: C46: SEC 17.612
Description: CODE - Landscaping and Paving Regulations
Full Violation: Landscape and maintenance requirements. The unpaved portion of a front-yard setback and street side-yard setback shall be landscaped, irrigated, and maintained. The landscape may include grass, annuals, perennials, groundcover, shrubs, trees, and any design elements such as planters, rocks, mulch, or similar elements when integrated as part of the landscape. However, only living vegetation may be used as a primary ground cover; no cement, brick, artificial turf, or other non-vegetative products

such as plastic plants or flowers may be used for this purpose. All landscaping materials shall be mowed, trimmed, and maintained as often as necessary to prevent overgrowth and blight. No junk, debris, or other similar materials shall be stored in the landscaped setback area.
Comments: LACK OF PROPER LANDSCAPE MAINTENANCE CAUSING OVERGROWN, DEAD, DECAYING VEGETATION CREATING A PUBLIC NUISANCE TO THE NEIGHBORHOOD. ALLOWING DRY OR GREEN GRASS/WEEDS/BUSHES TO CULTIVATE UNCONTROLLABLY CREATING A PUBLIC NUISANCE TO THE NEIGHBORHOOD.

I, Mark A. Grant hereby request the following:
1. I request for each alleged code violation, clarification as to where on the premises you believe the code/ordinance violations are occurring.
2. Clarification as to what actions must be taken to clear up the alleged Violation.
3. Any and all photos depicting the alleged violation(s).

Code: C48: SEC 17.620
Description: CODE - Wall, Fence, Gate
Full Violation: Cease violation of wall, fence and gate regulations.
Comments: IMPROPER MAINTENANCE OF EXISTING FENCE CAUSING POTENTIAL HAZARD AND A PUBLIC NUISANCE CAUSING BLIGHT TO THE NEIGHBORHOOD.

I, Mark A. Grant hereby request the following:
1. I request for each alleged code violation, clarification as to where on the premises you believe the code/ordinance violations are occurring.
2. Clarification as to what actions must be taken to clear up the alleged Violation.
3. Any and all photos depicting the alleged violation(s).

I declare under penalty of perjury the foregoing is true and correct.

Please Forward Your Response to sunshadow51@gmail.com or 909 regatta Dr. Sacto, CA

Respectfully requested,

*Mark A. Grant*

August 27, 2018   _____
Property Owner / Mark A. Grant

RECORDING REQUESTED BY
COMMUNITY DEVELOPMENT DEPARTMENT



WHEN RECORDED MAIL TO:
**City of Sacramento**
**Community Development Department**
**Neighborhood Code Compliance Division**
**300 Richards Blvd., 3rd Floor**
**Sacramento, CA 95811**

**Sacramento County**
**Donna Allred, Clerk/Recorder**
Doc # **201901081631**

| | |
|---|---|
| 1/6/2019      3:14:36 PM | |
| JBS | |
| Titles    1 | |
| Pages    1 | |

| | |
|---|---|
| Fees | $20.00 |
| Taxes | $0.00 |
| PCOR | $0.00 |
| Paid | $20.00 |

Case #18-018110 Deb Cavin /CR

. . . . . . . . . Space above this line for Recorder's use . . . . . . . . . .

TERMINATION OF DECLARATION
OF PUBLIC NUISANCE

I hereby certify that the Declaration of Public Nuisance given by the Manager of the Neighborhood Code Compliance Division, City of Sacramento, and recorded as Book 20180824, Page 0836, on 08/24/2018, in the office of the County Recorder of Sacramento County, is no longer in force or effect.

Said notice was filed against property described as follows:

LEGAL DESCRIPTION
WOODGATE 02

County Assessor's Parcel No: 26203200010000
ALSO KNOWN AS:   909 REGATTA DR

OWNER:      **GRANT MARK A**
ADDRESS:    **909 REGATTA DR**
            **SACRAMENTO, CA 95833**

COMMUNITY DEVELOPMENT
DEPARTMENT

FEB 0 6 2018

RECEIVED

CITY OF SACRAMENTO
Jose Mendez
Code Enforcement Manager

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

STATE OF CALIFORNIA            )
COUNTY OF SACRAMENTO           )  ss.

On  NOV 2 9 2018 _____ before me, _*Amber Delgado*_ _____ (Notary Public), personally appeared  Jose Mendez, Code Enforcement Manager,  who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal

Signature _Amber Delgado_



AMBER DELGADO
Notary Public - California
Sacramento County
Commission # 2178292
My Comm. Expires Jan 2, 2021



EXHIBIT
8

RECORDING REQUESTED BY
COMMUNITY DEVELOPMENT DEPARTMENT



WHEN RECORDED MAIL TO
City of Sacramento
Community Development Department
Neighborhood Code Compliance Division
300 Richards Blvd , 3rd Floor
Sacramento, CA 95811

Sacramento County
Donna Allred, Clerk/Recorder

Doc # **201808240636**

8/24/2018          10:55:27 AM

JLJ
Titles      1
Pages      1

| | |
|---|---|
| Fees | $20 00 |
| Taxes | $0 00 |
| PCOR | $0 00 |
| Paid | $20 00 |

Space above this line for Recorder's use

Case No: 18-018110/Michael Corral/JV

**NOTICE OF PENDING ENFORCEMENT PROCEEDING OR ACTION**
**(California Health and Safety Code 17980 and 17985)**

NOTICE IS HEREBY GIVEN that the City of Sacramento, acting through the Neighborhood Code Compliance Division and pursuant to Title 8 of the Sacramento City Code, has inspected the property described below and found it to constitute a Public Nuisance, as defined in Section 8 04 100 of the Sacramento City Code   The owner has been so notified

Abatement proceedings or actions have been instituted and are currently pending against the real property described in the notice herein   Any purchaser, encumbrancer, or other transferee of the real property described in the notice herein shall be deemed to have constructive notice of this pending proceeding or action and shall be held to the same requirements, duties and responsibilities of the previous owner and/or transferor related to the abatement of the violations on the real property described in the notice herein

This notice shall have the same intent, purpose and legal effect as a validly recorded lis pendens pursuant to California Code of Civil Procedure Section 405 et seq

LEGAL DESCRIPTION
WOODGATE 02

County Assessor's Parcel No   26203200010000
Also Known As   909 REGATTA DR in Sacramento, California

OWNER      GRANT MARK A
ADDRESS    909 REGATTA DR
           SACRAMENTO, CA 95833

CITY OF SACRAMENTO
Jose Mendez
Code Enforcement Manager



| |
|---|
| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document |

STATE OF CALIFORNIA                }
COUNTY OF SACRAMENTO        } ss

On _____ AUG – 9 2018 _____ before me, *Josephine Valdez* (Notary Public), personally appeared _Jose Mendez, Code Enforcement Manager_ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct

WITNESS my hand and official seal

Signature *Josephine Valdez*


JOSEPHINE VALDEZ
Notary Public – California
Sacramento County
Commission # 2197232
My Comm Expires Jun 9, 2021


EXHIBIT
9



Initial Inspection Photo: BOAT

Date Taken:08/03/2018
Address:909 REGATTA DR

Taken by:Michael Corral
Case Number:18-018110



EXHIBIT
10



Initial Inspection Photo: VEHICLES

**Date Taken:**08/03/2018          **Taken by:**Michael Corral
**Address:**909 REGATTA DR        **Case Number:**18-018110



EXHIBIT

tabbies



Initial Inspection Photo: FENCE MISSING

**Date Taken:**08/03/2018
**Address:**909 REGATTA DR

**Taken by:**Michael Corral
**Case Number:**18-018110



View File



Initial Inspection Photo: STREET VIEW

**Date Taken:**08/03/2018                 **Taken by:**Michael Corral
**Address:**909 REGATTA DR               **Case Number:**18-018110



**EXHIBIT**

tabbies

13

11/13/2019                                                    View File



Reinspection Photo: FENCE MISSING

**Date Taken:**10/23/2018                    **Taken by:**Michael Corral
**Address:**909 REGATTA DR                   **Case Number:**18-018110





Reinspection Photo: STREET VIEW

**Date Taken:**11/13/2018          **Taken by:**Michael Corral
**Address:**909 REGATTA DR          **Case Number:**18-018110



EXHIBIT
15

## PROOF OF SERVICE

CASE NAME:          Grant, Mark v. City of Sacramento, et al.
COURT:              Eastern District of California
CASE NUMBER:        2:19-cv-01495-MCE-CKD

I declare that:

I am employed in the County of Sacramento, California. I am over the age of eighteen years and not a party to this action; my business address is 915 I Street, Room 4010, Sacramento, CA 95814-2604. On the date executed below, I served the following document(s):

**NOTICE OF LODGMENT OF EXHIBITS IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

[X] **By United States Mail.** I enclosed the documents in a sealed envelope or a package addressed to the person(s) at the addresses listed below and (specify one):

(1) [ ] Deposited in a sealed envelope with the United States Postal Service, with the postage fully prepaid.

(2) [X] Placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I am a resident or employee in the county where the mailing occurred. The envelope or package was placed in the mail at Sacramento, California addressed as follows:

Mark A. Grant
P.O. Box 191566
Sacramento, CA 95819

Certified Mail: 7019 2970 0001 5392 3042

I declare under penalty of perjury that the foregoing is true and correct, and that the declaration was executed on December 1, 2020, at Sacramento, California.

　　　　　　　　　／s/ CHRISTINA L. WILL
　　　　　　　　　CHRISTINA L. WILL

PROOF OF SERVICE

977777