1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MARK A. GRANT,                          No.  2:19-cv-01495-MCE-CKD (PS)

12                 Plaintiff,

13          v.                               ORDER AND FINDINGS AND
                                             RECOMMENDATIONS
14   MICHAEL CORRAL, et al.,
                                             (ECF Nos. 47, 50)
15                 Defendants.

16

17          Plaintiff Mark Grant filed this action in August 2019 against defendants the City of

18   Sacramento and two members of the City's code enforcement division, Michael Corral and Jose

19   Mendez.[1]  (ECF No. 1.)  Plaintiff's claims relate to defendants' attempt to abate alleged City

20   nuisance code violations believed to be occurring on plaintiff's property.  (See generally, ECF

21   Nos. 1, 17.)

22          On December 1, 2020, defendants moved for summary judgment, with a hearing on the

23   motion noticed for January 20, 2021.[2]  (ECF No. 47.)  Plaintiff's opposition was due no later than

24   January 6, 2021, fourteen days before the hearing date.  See E.D. Cal. R. 230(c).  Having received

25   [1] Plaintiff is proceeding pro se, and this action is before the undersigned pursuant to 28 U.S.C.
     § 636(b)(1)(B) and Eastern District of California Local Rule 302(c)(21).
26

27   [2] Defendants initially incorrectly noticed their motion for summary judgment before the assigned
     District Judge.  (ECF No. 45.)  The motion was re-noticed before the undersigned, and this order
28   and findings and recommendations refers only to the re-noticed motion (ECF No. 47).

1

1    no opposition by that date, the court took the motion under submission without oral arguments.

2    (ECF No. 49.)  See E.D. Cal. R. 230(c) ("No party will be entitled to be heard in opposition to a

3    motion at oral arguments if opposition to the motion has not been timely filed by that party.").

4    Plaintiff still has filed no opposition, but on January 20, 2021, he moved to suppress the transcript

5    of his oral deposition which had been filed in support of defendants' motion for summary

6    judgment.[3]  (ECF No. 50.)  Upon review of the record, the court now denies plaintiff's motion to

7    suppress the deposition transcript, and recommends granting defendants' motion for summary

8    judgment.

9    **BACKGROUND**[4]

10       **A.  City Code Enforcement Procedure**

11       The City of Sacramento's Community Development Department oversees enforcement of

12   the City's municipal code to promote and maintain safe and desirable living and working

13   environments within the city limits.  Enforcement is complaint driven, and complaints regarding

14   conditions of residential properties are routed to the Neighborhood Code Compliance Division.

15   (ECF No. 47.3, Mendez Decl. ¶¶ 5-6.)  The Neighborhood Code Compliance Division then opens

16   a code enforcement case and assigns a code enforcement officer to conduct an initial site

17   inspection to determine if a code violation exists.  (Id. ¶ 7.)  Upon finding a code violation, the

18   enforcement officer may (1) issue a preliminary letter to the property owner requesting voluntary

19   abatement, or (2) commence nuisance abatement proceedings by issuing a "notice of violation

20   and order to abate (notice and order)."  (Id. ¶ 7.)  See Sacramento City Code ("SCC")

21   §§ 8.04.110, 8.04.120.

22   ////

23   _____

24   [3] Plaintiff noticed his motion to suppress for a hearing on March 10, 2021.  The court finds it
     unnecessary to hear oral arguments on this motion and therefore takes the matter under
     submission for resolution in conjunction with the pending motion for summary judgment.  See

25   E.D. Cal. R. 230(g) (court may order motions submitted on the record and briefs on file).

26
     [4] In the absence of any opposition from plaintiff, the background facts and evidence are
27   undisputed.  To the extent that any material factual dispute exists, the court resolves the dispute in
     plaintiff's favor for the limited purpose of adjudicating the pending motion for summary

28   judgment.

1    A notice and order must be served on the property owner and must specify (among other

2    things) the conditions that constitute the public nuisance, the action required to eliminate the

3    public nuisance, and a set date by which the owner is to abate the nuisance.  SCC § 8.04.120(B)-

4    (D).  Under state law, at the time the notice and order is issued the City must also record with the

5    county recorder's office a Notice of Pending Enforcement Proceeding or Action ("NOPEA")

6    against the subject property.  Cal. Health & Safety Code §§ 17980(a), 17985(a).

7    Within 30 days of service of the notice and order, a property owner may administratively

8    appeal the notice and order by filing a written appeal and paying the filing fee.  SCC § 8.04.170.

9    Failure to timely appeal makes the notice and order final, but a properly filed appeal stays all

10   enforcement of the notice and order while the appeal is pending.  SCC § 8.04.170(E) (failure to

11   timely appeal "shall constitute . . . a final adjudication of the notice and order") & (G) (stay of

12   order under appeal).  A timely appeal entitles the applicant to a hearing before a hearing examiner

13   who will take testimony from the owner and other persons regarding the condition of the

14   premises.  SCC §§ 8.04.170(B), 8.04.180.  If preponderant evidence shows that the condition of

15   the premises indeed constitutes a public nuisance, the hearing examiner issues a final written

16   decision requiring the owner to commence and complete the nuisance abatement within a certain

17   time.  SCC § 8.04.260(A).  That final administrative decision is then subject to judicial review.

18   **B.  Code Enforcement Against Plaintiff's Property**

19   Plaintiff has owned the subject residential property on Regatta Drive in Sacramento since

20   1998.  (ECF No. 47.4 at 6, Depo. p. 12.[5])  On July 2, 2018, the City opened a code enforcement

21   case on plaintiff's property after receiving a complaint about the lawn, a partial fence in the front

22   yard, boats and vehicles, and junk in the yard.  (ECF No. 47.3, Mendez Decl. ¶ 13.)  The case was

23   assigned to code enforcement officer Michael Corral, one of the named defendants.  (Id. ¶ 14.)

24   Corral performed an initial site inspection on August 3, 2018, and determined that the property

25   was in violation of the City code.  (Id. ¶¶ 14-15.)  Corral opted to issue a notice and order, which

26   was sent to plaintiff by certified mail on August 7, 2018 and was physically posted on the subject

27

28   [5] For the reasons discussed below, the court denies plaintiff's motion to suppress his deposition testimony.

3

1    property on August 9, 2018 (hereafter "the Notice & Order").  (Id. ¶¶ 15-16.)  The Notice &

2    Order identified five violations of the City code: accumulation of trash, junk, and debris;

3    accumulation of inoperative vehicles; maintaining a dangerous condition on the property;

4    overgrown vegetation; and improper fence maintenance.  (ECF No. 47.4 at 44, Depo. Ex. 2.)  For

5    these violations, the City informed plaintiff that a $575 fee was being charged against the

6    property, and advised him of certain other associated fees.[6]  (Id. at 42.)  The City also informed

7    plaintiff that it had recorded a NOPEA (referred to in the letter as a "Declaration of Public

8    Nuisance") with the Sacramento County Recorder's Office.  (Id.; ECF No. 47.4 at 86, Depo.

9    Ex. 9.)

10       Plaintiff received both copies of the Notice & Order, although in deposition he explained

11   that the Notice & Order did not include enough information for him to address the identified

12   violations.  (ECF No. 47.4 at 8-11.)  Therefore, he requested clarification and evidence of the

13   code violations, filed a petition for administrative review of the violation fees, and on

14   September 6, 2018 timely filed an administrative appeal, for which he paid a $400 filing fee.

15   (ECF No. 47.4 at 50-84, Depo. Exs. 5-7.)  Plaintiff also submitted discovery requests in an effort

16   to understand the basis for the violations, but the only response he received from the City was that

17   he should await the hearing itself.  (ECF No. 47.4 at 12-13, Depo. pp. 35-38.)  Plaintiff's hearing

18   was scheduled for October 24, 2018, and plaintiff received advance notice of the hearing date.

19   (ECF No. 47.3, Mendez Decl. ¶ 20; ECF No. 47.4 at 12, Depo. p. 37.)

20       On the hearing date, plaintiff was met "at the front door" of the hearing site by a City

21   representative who informed him that his case was "dropped."[7]  (ECF No. 47.4 at 13, Depo.

22   p. 39.)  Several months later, the City refunded plaintiff the $400 appeal fee and on January 6,

23

24   [6] Plaintiff was never actually assessed, and never paid, the fees described in the initial letter from
     the City.  (ECF No. 47.4 at 13, Depo. p. 40.)

25

26   [7] According to plaintiff, he was told the case was dropped because Michael Corral "did not show
     up" for the hearing.  (ECF No. 47.4 at 13, Depo. p. 39.)  According to defendants, "the case went

27   to hearing and City staff made the decision to dismiss the case."  (ECF No. 47.3, Mendez Decl.
     ¶ 20.)  As the reason for the case's dismissal is immaterial to plaintiff's claims, the court need not

28   resolve these slightly differing accounts.

1  2019, the City recorded a "Termination of Declaration of Public Nuisance" with the Sacramento

2  County Recorder's Office.  (ECF No. 47.4 at 13, Depo. p. 40; ECF No. 47.3, Mendez Decl. ¶ 21.)

3  The recorded Termination includes a notarized declaration by defendant code enforcement

4  manager Jose Mendez, certifying that the prior recorded Declaration of Public Nuisance "is no

5  longer in force or effect."[8]  (ECF No. 47.4 at 85, Depo. Ex. 8.)

6         Aside from the communications described above—and two previous complaints plaintiff

7  lodged against his neighbors' properties—plaintiff had no contact with any City enforcement

8  personnel before, during, or after the above enforcement action.  (ECF No. 47.4 at 7 (Depo p. 15),

9  19 (Depo. p. 62).)

10         **C.  The Instant Suit**

11         In August 2019, plaintiff filed this suit under 28 U.S.C. § 1983, alleging that the City's

12  actions violated his rights of due process and equal protection under the law.  (ECF No. 1.)  On

13  January 13, 2020, plaintiff filed the operative second amended complaint.  (ECF No. 17.)

14  Although that complaint displays just two formally labeled causes of action, it contains three

15  identifiable claims.  First, plaintiff asserts that defendant Michael Corral violated plaintiff's equal

16  protection rights by citing him for the five allegedly non-existent code violations, while not citing

17  any other similarly situated properties in his neighborhood.  (Id. at 13-21.)  Second, imbedded

18  within this cause of action, plaintiff asserts that Corral (and by extension, the City) violated

19  plaintiff's right to procedural due process by (a) not explaining in the Notice & Order the factual

20  basis for the identified violations or listing the specific steps needed to remedy them, and

21  (b) refusing to respond to plaintiff's requests for discovery regarding the bases for the alleged

22  violations.  (Id. at 16-19; see id. ¶¶ 16, 19, 20 (referencing Corral's alleged violations of

23  plaintiff's "procedural due process" rights).)  Third and finally, plaintiff asserts a claim of

24  "Conspiracy in Violation of Equal Protection" against defendant Jose Mendez for participating in,

25

26  [8] Although the difference in terminology is confusing, the record confirms that the Declaration of
Public Nuisance is the same as the recorded NOPEA.  The recorded Termination refers to the

27  same document number assigned to the NOPEA and the same filing date of August 24, 2018.
(Compare ECF No. 47.4 at 86, Depo. Ex. 9 (NOPEA), with ECF No. 47.4 at 85, Depo. Ex. 8

28  (Termination).)

1    or not preventing, Corral's enforcement steps.  (Id. at 21-23.)  Plaintiff seeks declaratory

2    judgment, statutory damages under California Civil Code § 52.1 (the Bane Act) and California

3    Government Code § 815.6, and punitive damages.[9]  (Id. at 23-24.)

4    **DISCUSSION**

5         Defendants move for summary judgment on all claims, arguing that plaintiff has failed to

6    adduce evidence to prove the required elements of the equal protection, procedural due process,

7    and conspiracy claims.  (See generally ECF No. 47.1.)  Plaintiff does not oppose the motion for

8    summary judgment, and his only response has been to file a motion to suppress the transcript of

9    his oral deposition.  (ECF No. 50.)  Defendants oppose the motion to suppress.  (ECF No. 51.)

10   Because defendants' summary judgment motion relies upon the deposition transcript, the court

11   first addresses the motion to suppress before proceeding to the motion for summary judgment.

12        **A.  Motion to Suppress Deposition**

13        On July 31, 2020, plaintiff sat for his one-and-a-half-hour deposition by defense counsel

14   in this case.  (ECF No. 47.4.)  Plaintiff moves, under Federal Rule of Civil Procedure 32, to

15   suppress that deposition testimony because he claims he was not afforded the opportunity to

16   review and sign his deposition transcript under Rule 30(e).  See Fed. R. Civ. P. 32(d)(4).

17        Plaintiff's moving papers consist of a notice of motion and a two-sentence declaration in

18   which plaintiff avers that, upon completion of his deposition, the deposition officer (1) "failed to

19   notify [him] in compliance with Federal Rules [sic] of Civil Procedure 30," and (2) "failed to

20   provide [him an] opportunity to view the transcripts in compliance with Federal Rules [sic] of

21   Civil Procedure 30."  (ECF No. 50 at 2.)  This is far too flimsy a basis to support suppression.

22        Rule 30(e) indeed allows for deponents to review deposition transcripts, but only "[o]n

23   request by the deponent or a party *before the deposition is completed*."  Fed. R. Civ. P. 30(e)(1)

24   (emphasis added) ("On request by the deponent or a party before the deposition is completed, the

25   deponent must be allowed 30 days after being notified by the officer that the transcript or

26   recording is available in which: (A) to review the transcript or recording; and (B) if there are

27

---

28   [9] The court does not construe plaintiff's passing reference to damages under these statutes as
     asserting separate state law claims arising thereunder.

6

1   changes in form or substance, to sign a statement listing the changes and the reasons for making

2   them."). Since Rule 30(e)'s amendment in 1993,[10] courts have strictly enforced this procedural

3   requirement—even against pro se parties. See Rios v. Bigler, 67 F.3d 1543, 1552 (10th Cir.

4   1995) (requesting transcript review is "an absolute prerequisite to amending or correcting a

5   deposition under Rule 30(e)"); Johnson v. Cate, No. 1:10-CV-02348-LJO, 2014 WL 5877846, at

6   *2 (E.D. Cal. Nov. 10, 2014) (denying pro se motion to suppress, stating that "[p]re-filing review

7   and correction of a deposition transcript occurs only when requested before completion of the

8   deposition."); see also Blackthorne v. Posner, 883 F. Supp. 1443, 1454 n.16 (D. Or. 1995)

9   (rejecting deponent's errata sheet where review of transcript was not requested before

10  deposition's completion).

11       Plaintiff does not say whether or not he requested review of the deposition transcript

12  before the deposition's completion. Defendants say that he did not (ECF No. 51 at 3); and the

13  complete deposition transcript itself contains no such request.[11] And the deposition officer's

14  certificate of accuracy—sent to defense counsel 30 days after the deposition, see Fed. R. Civ.

15  P. 30(f)(1)—makes no mention of any request for review of the transcript. (ECF No. 47.4 at 20

16  (p. 67).) Plaintiff's failure to show satisfaction of this prerequisite, alone, is reason enough to

17  deny his motion.

18       In addition, however, plaintiff fails to identify any errors in his deposition testimony, or

19  any prejudice resulting from his inability to a conduct a review of the transcript before its filing.

20  Nothing in the record suggests an error or irregularity as to how the deposition officer transcribed

21  and prepared the testimony. And even assuming plaintiff was not (and should have been) notified

22  of the transcript's completion and availability for review, plaintiff has not shown that the drastic

23

24  [10] "Until 1993, Rule 30(e) provided that when the testimony was fully transcribed the deposition
    must be submitted to the witness for his or her examination and read to or by the witness, unless
25  examination and reading were waived by the witness and by the parties." Wright & Miller, 8A
    Fed. Prac. & Proc. Civ. § 2118 (3d ed.).
26

27  [11] However, at two points during the deposition, defense counsel mentioned to plaintiff that he
    would have an opportunity to review the deposition transcript. (ECF No. 47.4 at 6 (p. 11) & 9
28  (p. 23).)

7

1    remedy of suppression is warranted.  See In re Sunset Bay Assocs., 944 F.2d 1503, 1509-10 (9th

2    Cir. 1991) (sworn answers to deposition testimony are admissible on summary judgment, whether

3    deposition is signed or unsigned).  Plaintiff's minimal motion simply does not provide enough

4    evidence or argument for the court to suppress his deposition testimony.  Accordingly, plaintiff's

5    motion to suppress is denied, and the court considers that testimony in assessing defendants'

6    motion for summary judgment.

7        **B.  Motion for Summary Judgment**

8        Defendants seek summary judgment in their favor on all claims, arguing that plaintiff has

9    supplied no evidence to support the allegations in the operative complaint and that his claims

10   therefore fail as a matter of law.  (ECF No. 47.1 at 5-10.)

11       ***Legal Standard***

12       Federal Rule of Civil Procedure 56(a) provides that "[a] party may move for summary

13   judgment, identifying each claim or defense—or the part of each claim or defense—on which

14   summary judgment is sought."  It further provides that "[t]he court shall grant summary judgment

15   if the movant shows that there is no genuine dispute as to any material fact and the movant is

16   entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).[12]  A shifting burden of proof

17   governs motions for summary judgment under Rule 56.  Nursing Home Pension Fund, Local 144

18   v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010).  Under

19   summary judgment practice, the moving party:

20            always bears the initial responsibility of informing the district court
             of the basis for its motion, and identifying those portions of "the
21           pleadings, depositions, answers to interrogatories, and admissions on
             file, together with the affidavits, if any," which it believes
22           demonstrate the absence of a genuine issue of material fact.

23   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ.

24   P. 56(c)).  "Where the non-moving party bears the burden of proof at trial, the moving party need

25   only prove that there is an absence of evidence to support the non-moving party's case."  In re

26

27   [12] Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10, 2010.
     However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule 56, "[t]he
28   standard for granting summary judgment remains unchanged."

1    Oracle Corp. Sec. Litig., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 325); see also Fed. R.

2    Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does

3    not have the trial burden of production may rely on a showing that a party who does have the trial

4    burden cannot produce admissible evidence to carry its burden as to the fact").

5           If the moving party meets its initial responsibility, the opposing party must establish that a

6    genuine dispute as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith

7    Radio Corp., 475 U.S. 574, 585-86 (1986).  To avoid summary judgment, the opposing party

8    must demonstrate the existence of a factual dispute that is both material, i.e., it affects the

9    outcome of the claim under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S.

10   242, 248 (1986); Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc., 618 F.3d

11   1025, 1031 (9th Cir. 2010), and genuine, i.e., "'the evidence is such that a reasonable jury could

12   return a verdict for the nonmoving party,'" FreecycleSunnyvale v. Freecycle Network, 626 F.3d

13   509, 514 (9th Cir. 2010) (quoting Anderson, 477 U.S. at 248).

14          A party opposing summary judgment must support the assertion that a genuine dispute of

15   material fact exists by: "(A) citing to particular parts of materials in the record, including

16   depositions, documents, electronically stored information, affidavits or declarations,

17   stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the

18   materials cited do not establish the absence or presence of a genuine dispute, or that an adverse

19   party cannot produce admissible evidence to support the fact."[13]  Fed. R. Civ. P. 56(c)(1)(A)-(B).

20   However, the opposing party "must show more than the mere existence of a scintilla of

21   evidence."  In re Oracle Corp. Sec. Litig., 627 F.3d at 387 (citing Anderson, 477 U.S. at 252).

22          In resolving a motion for summary judgment, the evidence of the opposing party is to be

23   believed.  See Anderson, 477 U.S. at 255.  Moreover, all reasonable inferences that may be drawn

24   from the facts placed before the court must be viewed in a light most favorable to the opposing

25   party.  See Matsushita, 475 U.S. at 587; Walls v. Cent. Contra Costa Transit Auth., 653 F.3d 963,

26   966 (9th Cir. 2011).  However, to demonstrate a genuine factual dispute, the opposing party

27

28   _____

[13] "The court need consider only the cited materials, but it may consider other materials in the
     record."  Fed. R. Civ. P. 56(c)(3).

1    "must do more than simply show that there is some metaphysical doubt as to the material

2    facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the

3    non-moving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 586-87 (citation

4    omitted).

5          *Analysis*

6          Through the exhibits and declarations filed in support of their motion, defendants have

7    carried their summary judgment burden by proving that "there is an absence of evidence to

8    support [plaintiff]'s case."  See In re Oracle Corp. Sec. Litig., 627 F.3d at 387.  By contrast,

9    plaintiff—having provided no opposition whatsoever—has not carried his.  Finding no genuine

10   dispute of material fact as to any of plaintiff's three discernable claims, the undersigned

11   recommends granting summary judgment for defendants.

12          *1.  Class-of-One Equal Protection Claim*

13          Plaintiff asserts as his primary cause of action a violation of the Fourteenth Amendment's

14   Equal Protection Clause by defendant Michael Corral, the code enforcement officer assigned to

15   plaintiff's code enforcement case.  (ECF No. 17 at 13-21.)  Plaintiff styles this as a "class of one"

16   equal protection claim.  (Id. at 1, 21, 26.)  The Supreme Court has recognized Fourteenth

17   Amendment "equal protection claims brought by a 'class of one,' where the plaintiff alleges that

18   []he has been intentionally treated differently from others similarly situated and that there is no

19   rational basis for the difference in treatment."  Vill. of Willowbrook v. Olech, 528 U.S. 562, 564

20   (2000) (per curiam).  This is precisely what plaintiff asserts in his complaint.  (See ECF No. 17

21   at 21 (alleging that Corral, on behalf of the City, "intentionally treated [plaintiff] differently from

22   others similarly situated," without a rational basis for the difference in treatment).)  But

23   defendants' motion, nevertheless, treats this claim exclusively as a "selective enforcement claim."

24   (ECF No. 47.1 at 5-7.)

25          The elements of these two types of equal protection claims differ significantly.  Unlike a

26   typical selective enforcement claim, a class-of-one claim does not depend on the plaintiff's

27   membership in a protected class or group; rather it consists of the claim that the plaintiff was

28   intentionally singled out for differential treatment.  See Lazy Y Ranch Ltd. v. Behrens, 546 F.3d

1    580, 592 (9th Cir. 2008) (noting that class-of-one claims are "unusual" because the plaintiff "does

2    not allege that the defendants discriminate against a group with whom she shares characteristics,"

3    but rather that the defendants arbitrarily targeted her in particular).  According to the Ninth

4    Circuit, to prevail on a class-of-one claim, a plaintiff must demonstrate that the governmental

5    defendants: "(1) intentionally (2) treated [plaintiff] differently than other similarly situated

6    property owners, (3) without a rational basis."  Gerhart v. Lake Cty., Mont., 637 F.3d 1013, 1022

7    (9th Cir. 2011).[14]

8                                          *a.   Intentionality*

9         A class-of-one plaintiff "must show that the [state actors] intended to treat him differently

10   from other[s]" in his position.  Gerhart, 637 F.3d at 1022.  At the same time, such plaintiff need

11   not demonstrate that the government actors "were motivated by subjective ill will."  Id.

12        Plaintiff has failed to adduce even a scintilla of admissible evidence to suggest that

13   defendants intentionally directed differential treatment toward him.  Nothing in the record

14   suggests that Corral or his manager Mendez were aware of the allegedly unenforced violations

15   plaintiff claims existed on his neighbors' properties at the time Corral decided to cite plaintiff.

16   Cf. N. Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008) (concluding that facts

17   developed at trial did not show intentional singling out because the City "did not know [the

18   permitting condition at issue] had never been imposed on another development project").

19        The undisputed evidence in the record demonstrates that the Notice & Order and the

20   recording of the NOPEA issued after defendants received a complaint, investigated the matter,

21   and discovered colorable violations of the City code.  (See ECF No. 47.3, Mendez Decl.

22   ¶¶ 13-18.)  Plaintiff provides no evidence that would raise a genuine factual dispute as to

23   defendant Corral's awareness of how his treatment of plaintiff might differ from his treatment of

24   plaintiffs' neighbors.  No reasonable trier of fact could find that defendants intentionally directed

25   discriminatory treatment at plaintiff.

26

27   [14] As discussed below, plaintiff's class-of-one claim fails essentially for the same reason that
     defendants argue the claim fails under a selective enforcement theory: plaintiff provides no
28   evidence of differential treatment, whether viewed as a member of a class, or on his own.

1

b.   *Unique Treatment*

2       Plaintiff's equal protection claim suffers most under this crucial prong of the test.  A

3  class-of-one plaintiff must show that he has been treated differently than other similarly situated

4  individuals.  Many courts have determined that this requirement should be enforced "with

5  particular strictness when the plaintiff invokes the class-of-one theory rather than the more settled

6  cognizable-group theory."  Warkentine v. Soria, 152 F. Supp. 3d 1269, 1294 (E.D. Cal. 2016)

7  (citing JDC Mgmt., LLC v. Reich, 644 F. Supp. 2d 905, 926 (W.D. Mich. 2009)).  "[U]nless

8  carefully circumscribed, the concept of a class-of-one equal protection claim could effectively

9  provide a federal cause of action for review of almost every executive and administrative decision

10  made by state actors."  Jennings v. City of Stillwater, 383 F.3d 1199, 1210-11 (10th Cir. 2004).

11      Accordingly, the Second Circuit has held that "class-of-one plaintiffs must show an

12  extremely high degree of similarity between themselves and the persons to whom they compare

13  themselves."  Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006).  Similarly, the

14  Seventh Circuit has held that a class-of-one plaintiff must be "prima facie identical in all relevant

15  respects or directly comparable . . . in all material respects" to their comparators.  United States v.

16  Moore, 543 F.3d 891, 896 (7th Cir. 2008).

17      Here, plaintiff has failed to provide evidence establishing either (a) that his neighbors'

18  properties were never cited for similar violations, or (b) that the neighboring properties identified

19  in his complaint were violating the City code in a manner substantially similar to plaintiff's own

20  cited violations.  Plaintiff alleges in his complaint that five properties near his have been in

21  violation of at least one of the same City code provisions for which he was cited—and not been

22  cited for their violations.  (ECF No. 17 at 19-21.)  But the record before the court contains zero

23  *proof* supporting these allegations.  At his deposition, plaintiff admitted that he did not know for a

24  fact that the City was not "micromanaging" other residents' properties.[15]  (ECF No. 47.4 at 15-16,

25  _____

26  [15] The court finds the following dialogue particularly telling:

27      A.   I was being treated different from other residents.
       Q.   Okay. And you believe the City was treating you differently
             because of what?
28      A.   They're not micromanaging all the other properties.

12

1   Depo. pp. 49-50.)

2          Moreover, the evidence put forth by defendants largely contradicts these allegations.

3   According to the sworn declaration of Jose Mendez, the code enforcement manager, his search of

4   the City's code enforcement cases revealed that between 2016 and February 2020 the City in fact

5   opened at least one enforcement case against most of the properties identified in plaintiff's

6   complaint.  (ECF No. 47.3, Mendez Decl. ¶¶ 22-25.)  Overall, his search showed 12 code

7   enforcement cases opened for 8 properties in plaintiff's neighborhood—excluding plaintiff's—

8   during the same period.  (Id.)  Plaintiff puts forth no evidence to call Mendez's declaration into

9   question, or otherwise demonstrate a genuine issue of material fact as to the City's apparently

10  rather uniform enforcement of its nuisance code in plaintiff's neighborhood.  Plaintiff has failed

11  to develop the record on this point—that is, to create a triable issue of the degree of similarity

12  between his property conditions and his neighbors' (or between the City's treatment of those

13  properties).  Based on the undisputed evidence of the City's enforcement history, no reasonable

14  trier of fact could conclude that defendants treated plaintiff differently than other similarly

15  situated property owners.

16                         *c.   Rational Basis*

17          Finally, a class-of-one plaintiff must demonstrate that the state actors lacked "a rational

18  basis for treating [plaintiff] differently."  Gerhart, 637 F.3d at 1022-23 (emphasis omitted).

19  Having just concluded that there is no proof of any differential treatment, the court need not—and

20  indeed cannot—evaluate whether there was a rational basis for the alleged distinction.  Id.

21  (explaining that the inquiry for this prong "turns on whether there is a rational basis for the

22  *distinction*, rather than the underlying government *action*).  Accordingly, defendants are entitled

23  to summary judgment on plaintiff's first cause of action, his class-of-one equal protection claim.

24                   **2.   Selective Enforcement Equal Protection Claim**

25          This first cause of action fares no better when construed as a selective enforcement claim,

26  _____

27          Q.     Okay. And how do you know that?
            A.     I don't.

28  (ECF No. 47.4 at 15-16, Depo. pp. 49-50.)

                                    13

1    as defendants do (wrongly, in the court's opinion).  To prevail on an equal protection selective

2    enforcement claim, "a plaintiff must demonstrate that enforcement had a discriminatory effect

3    and the [enforcers] were motivated by a discriminatory purpose."  Lacey v. Maricopa Cty., 693

4    F.3d 896, 920 (9th Cir. 2012) (cleaned up).  "In order to prove a discriminatory effect, the

5    claimant must show that similarly situated individuals were not prosecuted."  Id. (cleaned up).

6    And to show discriminatory motivation, the plaintiff must show that the state actor "decided to

7    enforce the law against him on the basis of an impermissible ground such as race, religion or

8    exercise of constitutional rights."  Id. (cleaned up).

9    　　　The evidence adduced does not support either element of a selective enforcement claim.

10   As discussed, plaintiff has failed to adduce any *evidence* of others similarly situated, or a lack of

11   prosecution of those similarly situated.  In addition, plaintiff does not even allege that—assuming

12   some differential treatment—he was treated differently because of some impermissible

13   discriminatory animus harbored against him.[16]

14   　　　　　**3.  *Procedural Due Process Claim***

15   　　　Defendants correctly identify within the first labeled cause of action a separate § 1983

16   cause of action for violation of the Fourteenth Amendment's Due Process Clause.  As described

17   above, at several points plaintiff alleges that defendants violated his procedural due process rights

18   by not sufficiently explaining the basis for the identified violations in the Notice & Order or in

19   response to the discovery requests.  (ECF No. 17 at 16-19.)

20   　　　"A procedural due process claim has two distinct elements: (1) a deprivation of a

21   constitutionally protected liberty or property interest, and (2) a denial of adequate procedural

22   protections."  Roybal v. Toppenish Sch. Dist., 871 F.3d 927, 931 (9th Cir. 2017).  The adequacy

23   of specific procedural protections may vary according to context. However, the Ninth Circuit has

24   explained that "[i]n the absence of extraordinary circumstances, procedural due process requires

25   notice and an opportunity to be heard before any governmental deprivation of a property interest.

26

27   [16] At his deposition, plaintiff steadfastly maintained that he "did not know" why he was being
     treated differently, refusing to identify any particular type of impermissible discrimination at
28   play.  (ECF No. 47.4 at 16, Depo. pp. 52-53.)

14

1    The form which those procedural protections must take is determined by an evaluation of all the

2    circumstances and an accommodation of competing interests." Tom Growney Equip., Inc. v.

3    Shelley Irr. Dev., Inc., 834 F.2d 833, 835 (9th Cir. 1987) (citing Boddie v. Connecticut, 401 U.S.

4    371, 379 (1971)); see also McBride Cotton and Cattle Corp. v. Veneman, 290 F.3d 973, 982 (9th

5    Cir. 2005) ("Generally, the Due Process Clause requires 'that individuals receive notice and a

6    meaningful opportunity to be heard before the government deprives them of property.'") (quoting

7    James Daniel Good Real Prop., 510 U.S. 43, 48 (1993)).

8        The evidence before the court demonstrates that plaintiff cannot satisfy either element of a

9    procedural due process claim.  First, the evidence does not show that plaintiff was deprived of

10   any property interest.  He never paid the fines initially imposed with the Notice & Order (ECF

11   No. 47.4 at 13, Depo. p. 40); the City refunded his $400 appeal filing fee (id.); and plaintiff

12   incurred no other fees in opposing the administrative enforcement action (ECF No. 47.4 at 17,

13   Depo. p. 54).  The administrative enforcement case was dismissed before any hearing occurred,

14   and hence without the Notice & Order ever becoming final.  (ECF No. 47.3, Mendez Decl. ¶ 20.)

15   See SCC § 8.04.280 (stating that a notice and order "become[s] final by failure to file a timely

16   appeal or after [the] hearing examiner's decision on appeal is rendered").

17       At most, plaintiff was practically restrained from selling his property while the NOPEA

18   (or *lis pendens*, in legal terms) was recorded against it for about four months from August 24,

19   2018 until January 6, 2019.  (ECF No. 47.4 at 85-86, Depo. Exs. 8 & 9.)  See Amalgamated Bank

20   v. Superior Court, 149 Cal. App. 4th 1003, 1011 (Cal. Ct. App. 2007) ("A *lis pendens* notice acts

21   as a cloud against the property, effectively preventing sale or encumbrance until the litigation is

22   resolved or the *lis pendens* is expunged.") (cleaned up).  But the majority view is that the filing of

23   a *lis pendens*—which imposes no *legal* restriction on the owner's use of the property or right to

24   dispose of it—does not "deprive" the owner of the property for purposes of the Due Process

25   Clause.  See Lemad Corp. v. Calfee, No. CV 08-0923-PHX-ECV, 2010 WL 11519238, at *4 (D.

26   Ariz. Feb. 23, 2010) ("Filing a *lis pendens* does not [a]ffect property interests enough to implicate

27   the Due Process Clause."), aff'd, 461 F. App'x 576 (9th Cir. 2011); see also Diaz v. Paterson, 547

28   F.3d 88, 98 (2d Cir. 2008) (explaining that the effect of a *lis pendens* is "simply to give notice to

1    the world of the remedy being sought" in a pending lawsuit); <u>United States v. Register</u>, 182 F.3d

2    820, 837 (11th Cir. 1999) ("[A] filing of a *lis pendens* . . . does not constitute a 'seizure' and does

3    not affect property interests to an extent significant enough to implicate the Due Process Clause

4    of the Fifth Amendment.")  Without such a deprivation, plaintiff's procedural due process claim

5    cannot succeed.

6          Second, even assuming there was a deprivation of property worked by the *lis pendens*

7    temporary practical restraint on the sale of plaintiff's property, plaintiff has not identified how the

8    enforcement process was constitutionally inadequate in this case.  "Generally, the Due Process

9    Clause requires that individuals receive notice and a meaningful opportunity to be heard before

10   the government deprives them of property."  <u>McBride Cotton</u>, 290 F.3d at 982 (cleaned up).  That

11   is precisely what plaintiff was afforded here.  In fact, plaintiff invoked the very procedural

12   protections afforded in the City's nuisance code—namely the right to appeal a notice and order—

13   to successfully have his case dismissed, and thereby avoided any property deprivation.

14         The main concern underlying plaintiff's procedural due process claim is that the Notice &

15   Order did not adequately advise him of the factual basis for each of the five cited violations.

16   (ECF No. 17 at 16-17; ECF No. 47.4 at 8-9 (Depo. 21:24-22:9).)  The court agrees that several of

17   the five violation descriptions stated in the "Correction List" provided with the Notice & Order

18   were so generic that one cannot immediately discern from them what condition must be corrected.

19   (<u>See</u> ECF No. 47.4 at 44, Depo. Ex. 2 (describing one violation as "Cease maintaining any

20   dangerous, unsightly, or blighted condition which is detrimental to the health, safety, or welfare

21   of the public" and repeating the same in the "Comments" section).)  Such a vague description

22   arguably falls short of City Code section 8.04.120's requirement that a notice and order contain a

23   statement "specifying the conditions which constitute the nuisance" and "the action required to be

24   taken to eliminate the public nuisance."  SCC § 8.04.120(B)-(C).  But even assuming a violation

25   of this municipal ordinance, that would not, alone, establish a violation of federal due process.

26   <u>See</u> <u>Roybal</u>, 871 F.3d at 933 (noting that public employer's "failure to comply with [a

27   Washington state statute] does not resolve the issue currently before us: whether [the employer]

28   violated federal due process, a question of federal, not state, law") (citing <u>Cleveland Bd. of Educ.</u>

16

1   v. Loudermill, 470 U.S. 532, 541 (1985)).  As plaintiff has not elected to advance any argument

2   on this point, beyond the allegations of his complaint, the court does not find this a sufficient

3   basis for establishing a constitutionally inadequate process. Because the evidence is insufficient to

4   satisfy either element of a due process claim, defendants are entitled to summary judgment on the

5   second cause of action as well.

6                        ***4.  Civil Rights Conspiracy Claim***

7           Finally, there is no evidence to support plaintiff's third claim—that defendants Corral and

8   Mendez conspired to violate plaintiff's constitutional rights.  (ECF No. 17 at 21-23.)  "To prove

9   conspiracy between [the defendants] under § 1983, an agreement or meeting of minds to violate

10  [plaintiff's] constitutional rights must be shown," along with a resulting "actual deprivation of his

11  constitutional rights."  Woodrum v. Woodward Cty., 866 F.2d 1121, 1126 (9th Cir. 1989).  On

12  the current record, plaintiff can prove neither.  There is nothing but unsupported (and conclusory,

13  for that matter) allegations of these two defendants agreeing that plaintiff's property should be

14  cited for non-existent violations.  (See, e.g., ECF No. 17 ¶ 42.)  And, for the reasons explained

15  above, plaintiff has established no actual deprivation of either his equal protection or due process

16  rights.  Therefore, the court should grant summary judgment for defendants on this final claim.

17  **ORDER**

18          Accordingly, IT IS HEREBY ORDERED that:

19    1.  Plaintiff's motion to suppress his deposition testimony (ECF No. 50) is DENIED;

20    2.  The hearing on the motion to suppress set for March 10, 2021 is VACATED; and

21    3.  In light of the following recommendations, all motion practice in this action is STAYED

22        pending resolution of these findings and recommendations.  With the exception of

23        objections to the findings and recommendations and any non-frivolous motions for

24        emergency relief, the court will not entertain or respond to any motions and other filings

25        until the findings and recommendations are resolved.

26  ////

27  ////

28  ////

**RECOMMENDATIONS**

In addition, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment (ECF No. 47) be GRANTED IN FULL;

2. Judgment be entered for defendants; and

3. The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated:  February 23, 2021

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

19.gran.1495

18