1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MARK A. GRANT,                              No.  2:19-cv-01495-MCE-CKD (PS)

12                    Plaintiff,

13        v.                                     ORDER AND AMENDED FINDINGS &
                                                 RECOMMENDATIONS
14   MICHAEL CORRAL, et al.,
                                                 (ECF Nos. 47, 52)
15                    Defendants.

16   _____

17        On February 23, 2021, the undersigned issued a combined order denying plaintiff's

18   motion to suppress the transcript of his deposition and findings and recommendations that

19   defendants' unopposed motion for summary judgment be granted.  (ECF No. 52.)  On March 1,

20   2021, plaintiff filed a reply in support of his motion to suppress, arguing for the first time that

21   certain circumstances prevented him from responding to defendants' motion for summary

22   judgment.[1]  (ECF Nos. 50, 53.)  In order to address these arguments, the undersigned VACATES

23   the February 23, 2021 order and findings and recommendations (ECF No. 52) and issues the

24   instant amended order and amended findings and recommendations reaching the same conclusion

25   as to both motions.

26   ////

27   _____

28   [1] Plaintiff is proceeding pro se, and this action is before the undersigned pursuant to 28 U.S.C.
     § 636(b)(1)(B) and Eastern District of California Local Rule 302(c)(21).

                                                 1

1    **<u>INTRODUCTION</u>**

2            Plaintiff Mark Grant filed this action in August 2019 against defendants the City of

3    Sacramento and two members of the City's code enforcement division, Michael Corral and Jose

4    Mendez. (ECF No. 1.)  Plaintiff's claims relate to defendants' attempt to abate alleged City

5    nuisance code violations believed to be occurring on plaintiff's property.  (<u>See generally</u>, ECF

6    Nos. 1, 17.)

7            On November 24, 2020, defendants moved for summary judgment but improperly noticed

8    the motion for hearing before the assigned District Judge, instead of the undersigned.  (ECF

9    No. 45.)  On December 1, 2020, defendants re-filed their motion for summary judgment, noticed

10   for hearing before the undersigned.[2]  On January 8, 2021, having received no opposition by

11   plaintiff, the court took the motion under submission without oral arguments.  (ECF No. 49.)  <u>See</u>

12   E.D. Cal. R. 230(c) ("No party will be entitled to be heard in opposition to a motion at oral

13   arguments if opposition to the motion has not been timely filed by that party.").   Plaintiff never

14   filed an opposition, but on January 20, 2021, he moved to suppress the transcript of his oral

15   deposition which had been filed in support of defendants' motions for summary judgment.[3]  (ECF

16   No. 50.)  Defendants opposed the motion to suppress, and plaintiff filed a reply.  (ECF Nos. 51,

17   53.)

18           Upon review of the record, the court now denies plaintiff's motion to suppress the

19   deposition transcript, and recommends granting defendants' motion for summary judgment.

20   ////

21   ////

22   ////

23   ////

24   _____

25   [2] As discussed in more detail in footnote 15 below, defendants inadvertently noticed both motions
     for hearing dates in January 2020, instead of January 2021.

26
27   [3] Plaintiff noticed his motion to suppress for a hearing on March 10, 2021.  The court finds it
     unnecessary to hear oral arguments on this motion and therefore takes the matter under
     submission for resolution in conjunction with the pending motion for summary judgment.  <u>See</u>
28   E.D. Cal. R. 230(g) (court may order motions submitted on the record and briefs on file).

**BACKGROUND**[4]

    A. <u>City Code Enforcement Procedure</u>

       The City of Sacramento's Community Development Department oversees enforcement of the City's municipal code to promote and maintain safe and desirable living and working environments within the city limits.  Enforcement is complaint driven, and complaints regarding conditions of residential properties are routed to the Neighborhood Code Compliance Division. (ECF No. 47.3, Mendez Decl. ¶¶ 5-6.)  The Neighborhood Code Compliance Division then opens a code enforcement case and assigns a code enforcement officer to conduct an initial site inspection to determine if a code violation exists.  (<u>Id.</u> ¶ 7.)  Upon finding a code violation, the enforcement officer may (1) issue a preliminary letter to the property owner requesting voluntary abatement, or (2) commence nuisance abatement proceedings by issuing a "notice of violation and order to abate (notice and order)."  (<u>Id.</u> ¶ 7.)  <u>See</u> Sacramento City Code ("SCC") §§ 8.04.110, 8.04.120.

       A notice and order must be served on the property owner and must specify (among other things) the conditions that constitute the public nuisance, the action required to eliminate the public nuisance, and a set date by which the owner is to abate the nuisance.  SCC § 8.04.120(B)-(D).  Under state law, at the time the notice and order is issued the City must also record with the county recorder's office a Notice of Pending Enforcement Proceeding or Action ("NOPEA") against the subject property.  Cal. Health & Safety Code §§ 17980(a), 17985(a).

       Within 30 days of service of the notice and order, a property owner may administratively appeal the notice and order by filing a written appeal and paying the filing fee.  SCC § 8.04.170. Failure to timely appeal makes the notice and order final, but a properly filed appeal stays all enforcement of the notice and order while the appeal is pending.  SCC § 8.04.170(E) (failure to timely appeal "shall constitute . . . a final adjudication of the notice and order") & (G) (stay of order under appeal).  A timely appeal entitles the applicant to a hearing before a hearing examiner

---

[4] In the absence of any opposition from plaintiff, the background facts and evidence are undisputed.  To the extent that any material factual dispute exists, the court resolves the dispute in plaintiff's favor for the limited purpose of adjudicating the pending motion for summary judgment.

1    who will take testimony from the owner and other persons regarding the condition of the

2    premises.  SCC §§ 8.04.170(B), 8.04.180.  If preponderant evidence shows that the condition of

3    the premises indeed constitutes a public nuisance, the hearing examiner issues a final written

4    decision requiring the owner to commence and complete the nuisance abatement within a certain

5    time.  SCC § 8.04.260(A).  That final administrative decision is then subject to judicial review.

6              **B.  Code Enforcement Against Plaintiff's Property**

7          Plaintiff has owned the subject residential property on Regatta Drive in Sacramento since

8    1998.  (ECF No. 47.4 at 6, Depo. p. 12.[5])  On July 2, 2018, the City opened a code enforcement

9    case on plaintiff's property after receiving a complaint about the lawn, a partial fence in the front

10    yard, boats and vehicles, and junk in the yard.  (ECF No. 47.3, Mendez Decl. ¶ 13.)  The case was

11    assigned to code enforcement officer Michael Corral, one of the named defendants.  (Id. ¶ 14.)

12    Corral performed an initial site inspection on August 3, 2018, and determined that the property

13    was in violation of the City code.  (Id. ¶¶ 14-15.)  Corral opted to issue a notice and order, which

14    was sent to plaintiff by certified mail on August 7, 2018 and was physically posted on the subject

15    property on August 9, 2018 (hereafter "the Notice & Order").  (Id. ¶¶ 15-16.)  The Notice &

16    Order identified five violations of the City code: accumulation of trash, junk, and debris;

17    accumulation of inoperative vehicles; maintaining a dangerous condition on the property;

18    overgrown vegetation; and improper fence maintenance.  (ECF No. 47.4 at 44, Depo. Ex. 2.)  For

19    these violations, the City informed plaintiff that a $575 fee was being charged against the

20    property, and advised him of certain other associated fees.[6]  (Id. at 42.)  The City also informed

21    plaintiff that it had recorded a NOPEA (referred to in the letter as a "Declaration of Public

22    Nuisance") with the Sacramento County Recorder's Office.  (Id.; ECF No. 47.4 at 86, Depo.

23    Ex. 9.)

24          Plaintiff received both copies of the Notice & Order, although in deposition he explained

25

26    [5] For the reasons discussed below, the court denies plaintiff's motion to suppress his deposition
testimony.

27

28    [6] Plaintiff was never actually assessed, and never paid, the fees described in the initial letter from
the City.  (ECF No. 47.4 at 13, Depo. p. 40.)

1    that the Notice & Order did not include enough information for him to address the identified

2    violations.  (ECF No. 47.4 at 8-11.)  Therefore, he requested clarification and evidence of the

3    code violations, filed a petition for administrative review of the violation fees, and on

4    September 6, 2018 timely filed an administrative appeal, for which he paid a $400 filing fee.

5    (ECF No. 47.4 at 50-84, Depo. Exs. 5-7.)  Plaintiff also submitted discovery requests in an effort

6    to understand the basis for the violations, but the only response he received from the City was that

7    he should await the hearing itself.  (ECF No. 47.4 at 12-13, Depo. pp. 35-38.)  Plaintiff's hearing

8    was scheduled for October 24, 2018, and plaintiff received advance notice of the hearing date.

9    (ECF No. 47.3, Mendez Decl. ¶ 20; ECF No. 47.4 at 12, Depo. p. 37.)

10         On the hearing date, plaintiff was met "at the front door" of the hearing site by a City

11   representative who informed him that his case was "dropped."[7]  (ECF No. 47.4 at 13, Depo.

12   p. 39.)  Several months later, the City refunded plaintiff the $400 appeal fee and on January 6,

13   2019, the City recorded a "Termination of Declaration of Public Nuisance" with the Sacramento

14   County Recorder's Office.  (ECF No. 47.4 at 13, Depo. p. 40; ECF No. 47.3, Mendez Decl. ¶ 21.)

15   The recorded Termination includes a notarized declaration by defendant code enforcement

16   manager Jose Mendez, certifying that the prior recorded Declaration of Public Nuisance "is no

17   longer in force or effect."[8]  (ECF No. 47.4 at 85, Depo. Ex. 8.)

18         Aside from the communications described above—and two previous complaints plaintiff

19   lodged against his neighbors' properties—plaintiff had no contact with any City enforcement

20   personnel before, during, or after the above enforcement action.  (ECF No. 47.4 at 7 (Depo p. 15),

21   19 (Depo. p. 62).)

---

[7] According to plaintiff, he was told the case was dropped because Michael Corral "did not show
up" for the hearing.  (ECF No. 47.4 at 13, Depo. p. 39.)  According to defendants, "the case went
to hearing and City staff made the decision to dismiss the case."  (ECF No. 47.3, Mendez Decl.
¶ 20.)  As the reason for the case's dismissal is immaterial to plaintiff's claims, the court need not
resolve these slightly differing accounts.

[8] Although the difference in terminology is confusing, the record confirms that the Declaration of
Public Nuisance is the same as the recorded NOPEA.  The recorded Termination refers to the
same document number assigned to the NOPEA and the same filing date of August 24, 2018.
(Compare ECF No. 47.4 at 86, Depo. Ex. 9 (NOPEA), with ECF No. 47.4 at 85, Depo. Ex. 8
(Termination).)

1          **C.  The Instant Suit**

2          In August 2019, plaintiff filed this suit under 28 U.S.C. § 1983, alleging that the City's

3    actions violated his rights of due process and equal protection under the law.  (ECF No. 1.)  On

4    January 13, 2020, plaintiff filed the operative second amended complaint.  (ECF No. 17.)

5    Although that complaint displays just two formally labeled causes of action, it contains three

6    identifiable claims.  First, plaintiff asserts that defendant Michael Corral violated plaintiff's equal

7    protection rights by citing him for the five allegedly non-existent code violations, while not citing

8    any other similarly situated properties in his neighborhood.  (Id. at 13-21.)  Second, imbedded

9    within this cause of action, plaintiff asserts that Corral (and by extension, the City) violated

10   plaintiff's right to procedural due process by (a) not explaining in the Notice & Order the factual

11   basis for the identified violations or listing the specific steps needed to remedy them, and

12   (b) refusing to respond to plaintiff's requests for discovery regarding the bases for the alleged

13   violations.  (Id. at 16-19; see id. ¶¶ 16, 19, 20 (referencing Corral's alleged violations of

14   plaintiff's "procedural due process" rights).)  Third and finally, plaintiff asserts a claim of

15   "Conspiracy in Violation of Equal Protection" against defendant Jose Mendez for participating in,

16   or not preventing, Corral's enforcement steps.  (Id. at 21-23.)  Plaintiff seeks declaratory

17   judgment, statutory damages under California Civil Code § 52.1 (the Bane Act) and California

18   Government Code § 815.6, and punitive damages.[9]  (Id. at 23-24.)

19   **DISCUSSION**

20         Defendants move for summary judgment on all claims, arguing that plaintiff has failed to

21   adduce evidence to prove the required elements of the equal protection, procedural due process,

22   and conspiracy claims.  (See generally ECF No. 47.1.)  Plaintiff does not oppose the motion for

23   summary judgment, and his only response has been to file a motion to suppress the transcript of

24   his oral deposition.  (ECF No. 50.)  Defendants oppose the motion to suppress, and after the

25   undersigned's original order and findings and recommendations, plaintiff filed a reply.  (ECF

26   Nos. 51, 53.)  Because defendants' summary judgment motion relies upon the deposition

27   ─────────────────────

28   [9] The court does not construe plaintiff's passing reference to damages under these statutes as
     asserting separate state law claims arising thereunder.

1  transcript, the court first addresses the motion to suppress before proceeding to the motion for

2  summary judgment.

3      **A.  <u>Motion to Suppress Deposition Transcript</u>**

4      On July 31, 2020, plaintiff sat for his one-and-a-half-hour deposition by defense counsel

5  in this case.  (ECF No. 47.4.)  Plaintiff moves, under Federal Rule of Civil Procedure 32, to

6  suppress that deposition testimony because he claims he was not afforded the opportunity to

7  review and sign his deposition transcript under Rule 30(e).  <u>See</u> Fed. R. Civ. P. 32(d)(4).

8      Plaintiff's motion consists of a notice of motion and a two-sentence declaration in which

9  plaintiff avers that, upon completion of his deposition, the deposition officer (1) "failed to notify

10  [him] in compliance with Federal Rules [sic] of Civil Procedure 30," and (2) "failed to provide

11  [him an] opportunity to view the transcripts in compliance with Federal Rules [sic] of Civil

12  Procedure 30."  (ECF No. 50 at 2.)  In his recent reply in support of the motion, plaintiff provides

13  a more detailed declaration, which essentially repeats these arguments  (ECF No. 53.)  The court

14  finds suppression unwarranted under these circumstances.

15      Rule 30(e) indeed allows for deponents to review deposition transcripts, but only "[o]n

16  request by the deponent or a party *before the deposition is completed*."  Fed. R. Civ. P. 30(e)(1)

17  (emphasis added) ("On request by the deponent or a party before the deposition is completed, the

18  deponent must be allowed 30 days after being notified by the officer that the transcript or

19  recording is available in which: (A) to review the transcript or recording; and (B) if there are

20  changes in form or substance, to sign a statement listing the changes and the reasons for making

21  them.").  Since Rule 30(e)'s amendment in 1993,[10] courts have strictly enforced this procedural

22  requirement—even against pro se parties.  <u>See</u> <u>Rios v. Bigler</u>, 67 F.3d 1543, 1552 (10th Cir.

23  1995) (requesting transcript review is "an absolute prerequisite to amending or correcting a

24  deposition under Rule 30(e)"); <u>Johnson v. Cate</u>, No. 1:10-CV-02348-LJO, 2014 WL 5877846, at

25  *2 (E.D. Cal. Nov. 10, 2014) (denying pro se motion to suppress, stating that "[p]re-filing review

26  _____

27  [10] "Until 1993, Rule 30(e) provided that when the testimony was fully transcribed the deposition
must be submitted to the witness for his or her examination and read to or by the witness, unless
examination and reading were waived by the witness and by the parties."  Wright & Miller, 8A

28  Fed. Prac. & Proc. Civ. § 2118 (3d ed.).

1   and correction of a deposition transcript occurs only when requested before completion of the

2   deposition."); see also Blackthorne v. Posner, 883 F. Supp. 1443, 1454 n.16 (D. Or. 1995)

3   (rejecting deponent's errata sheet where review of transcript was not requested before

4   deposition's completion).

5           Plaintiff does not say whether or not he requested review of the deposition transcript

6   before the deposition's completion.  Defendants say that he did not (ECF No. 51 at 3); and the

7   complete deposition transcript itself contains no such request.  The deposition officer's certificate

8   of accuracy—sent to defense counsel 30 days after the deposition, see Fed. R. Civ. P. 30(f)(1)—

9   makes no mention of any request for review of the transcript.  (ECF No. 47.4 at 20 (p. 67).)

10  Plaintiff avers that he relied upon the deposition officer's statement at his deposition that he

11  would be notified when the transcript was ready for review.[11]  (ECF No. 53 ¶ 17.)  Such reliance

12  is unwise, given Rule 30(e)'s requirement that the deponent affirmatively request to review the

13  transcript.  But even giving plaintiff the benefit of his pro se status, the main reason for denying

14  the instant motion to suppress is that plaintiff fails to identify any errors in his deposition

15  testimony, or any prejudice resulting from his inability to a conduct a review of the transcript

16  before its filing.

17          Nothing in the record suggests any error or irregularity as to how the deposition officer

18  transcribed and prepared the testimony.  Plaintiff was twice served a copy of the deposition

19  transcript, attached to defendants' original and re-noticed motions for summary judgment.  (ECF

20  Nos. 45.4 at 93 & 47.4 at 93 (certificates of service by certified mail); see ECF Nos. 45.4 Ex. A &

21  47.4 Ex. A (deposition transcript).)  The publicly available USPS tracking information shows that

22  defendants' supporting exhibits, including the deposition transcript, were delivered to plaintiff's

23  P.O. Box of record on December 2, 2020.[12]  Yet even with an opportunity to review the transcript

24  _____

25  [11] The court also notes that at two points during the deposition, defense counsel mentioned to
    plaintiff that he would have an opportunity to review the deposition transcript.  (ECF No. 47.4
26  at 6 (p. 11) & 9 (p. 23).)

27  [12] Contrary to plaintiff's assertion (ECF No. 53 ¶ 21), the certificate of service is evidence that
    plaintiff was served with the deposition transcript along with the motion for summary judgment
28  in early December (ECF No. 45.4 at 93).

8

1   since that date, plaintiff identifies no actual problems with how his testimony was transcribed.

2          Finally, even assuming plaintiff was not (and should have been) notified of the transcript's

3   completion and availability for review, plaintiff has not shown that the drastic remedy of

4   suppression is the appropriate cure for that alleged violation.  See In re Sunset Bay Assocs., 944

5   F.2d 1503, 1509-10 (9th Cir. 1991) (sworn answers to deposition testimony are admissible on

6   summary judgment, whether deposition is signed or unsigned).  Plaintiff simply does not provide

7   enough evidence or argument for the court to suppress his deposition testimony.  Accordingly,

8   plaintiff's motion to suppress is denied, and the court considers that testimony in assessing

9   defendants' motion for summary judgment.

10      **B.  <u>Motion for Summary Judgment</u>**

11         Defendants seek summary judgment in their favor on all claims, arguing that plaintiff has

12   supplied no evidence to support the allegations in the operative complaint and that his claims

13   therefore fail as a matter of law.  (ECF No. 47.1 at 5-10.)

14      ***<u>Legal Standard</u>***

15         Federal Rule of Civil Procedure 56(a) provides that "[a] party may move for summary

16   judgment, identifying each claim or defense—or the part of each claim or defense—on which

17   summary judgment is sought."  It further provides that "[t]he court shall grant summary judgment

18   if the movant shows that there is no genuine dispute as to any material fact and the movant is

19   entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).[13]  A shifting burden of proof

20   governs motions for summary judgment under Rule 56.  <u>Nursing Home Pension Fund, Local 144

21   v. Oracle Corp. (In re Oracle Corp. Sec. Litig.)</u>, 627 F.3d 376, 387 (9th Cir. 2010).  Under

22   summary judgment practice, the moving party:

23              always bears the initial responsibility of informing the district court
                of the basis for its motion, and identifying those portions of "the
24              pleadings, depositions, answers to interrogatories, and admissions on
                file, together with the affidavits, if any," which it believes
25              demonstrate the absence of a genuine issue of material fact.

26   _____

27   [13] Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10, 2010.
     However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule 56, "[t]he
28   standard for granting summary judgment remains unchanged."

1    Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ.

2    P. 56(c)).  "Where the non-moving party bears the burden of proof at trial, the moving party need

3    only prove that there is an absence of evidence to support the non-moving party's case."  In re

4    Oracle Corp. Sec. Litig., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 325); see also Fed. R.

5    Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does

6    not have the trial burden of production may rely on a showing that a party who does have the trial

7    burden cannot produce admissible evidence to carry its burden as to the fact").

8         If the moving party meets its initial responsibility, the opposing party must establish that a

9    genuine dispute as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith

10   Radio Corp., 475 U.S. 574, 585-86 (1986).  To avoid summary judgment, the opposing party

11   must demonstrate the existence of a factual dispute that is both material, i.e., it affects the

12   outcome of the claim under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S.

13   242, 248 (1986); Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc., 618 F.3d

14   1025, 1031 (9th Cir. 2010), and genuine, i.e., "'the evidence is such that a reasonable jury could

15   return a verdict for the nonmoving party,'"  FreecycleSunnyvale v. Freecycle Network, 626 F.3d

16   509, 514 (9th Cir. 2010) (quoting Anderson, 477 U.S. at 248).

17        A party opposing summary judgment must support the assertion that a genuine dispute of

18   material fact exists by: "(A) citing to particular parts of materials in the record, including

19   depositions, documents, electronically stored information, affidavits or declarations,

20   stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the

21   materials cited do not establish the absence or presence of a genuine dispute, or that an adverse

22   party cannot produce admissible evidence to support the fact."[14]  Fed. R. Civ. P. 56(c)(1)(A)-(B).

23   However, the opposing party "must show more than the mere existence of a scintilla of

24   evidence."  In re Oracle Corp. Sec. Litig., 627 F.3d at 387 (citing Anderson, 477 U.S. at 252).

25        In resolving a motion for summary judgment, the evidence of the opposing party is to be

26   believed.  See Anderson, 477 U.S. at 255.  Moreover, all reasonable inferences that may be drawn

27

28   [14] "The court need consider only the cited materials, but it may consider other materials in the
     record."  Fed. R. Civ. P. 56(c)(3).

1    from the facts placed before the court must be viewed in a light most favorable to the opposing

2    party.  See Matsushita, 475 U.S. at 587; Walls v. Cent. Contra Costa Transit Auth., 653 F.3d 963,

3    966 (9th Cir. 2011).  However, to demonstrate a genuine factual dispute, the opposing party

4    "must do more than simply show that there is some metaphysical doubt as to the material

5    facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the

6    non-moving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 586-87 (citation

7    omitted).

8         ___Analysis___

9         Through the exhibits and declarations filed in support of their motion, defendants have

10   carried their summary judgment burden by proving that "there is an absence of evidence to

11   support [plaintiff]'s case."  See In re Oracle Corp. Sec. Litig., 627 F.3d at 387.  By contrast,

12   plaintiff—having provided no opposition whatsoever[15]—has not carried his.  Finding no genuine

13   _____

14   [15]    In the March 1, 2021 reply in support of the motion to suppress, discussed above, plaintiff
     argues for the first time that he was unable to file a timely response to the motion for summary
15   judgment because (1) defendants improperly noticed their motions for hearing on dates in January
     2020, (2) he was sick, and (3) he received late notice of the changed motion hearing date.  (ECF
16   No. 53 ¶¶ 7-15, 22.)  Plaintiff does not now request (nor has he ever requested) an extension of
     time to oppose the motion for summary judgment.  And the court is not compelled to reopen the
17   motion for summary judgment based on these arguments.

18        The most troubling of these arguments is defendants' erroneous noticing of their
     summary judgment motions for hearing dates in January 2020, rather than January 2021.  (See
19   ECF No. 45 (November 24, 2020 motion filed with hearing noticed for January 14, 2020 before
     Judge England); ECF No. 47 (December 1, 2020 motion re-filed with hearing noticed for
20   January 20, 2020 before the undersigned).)  While these typographical errors can certainly cause
     confusion, plaintiff never reported any confusion to defense counsel or to the court (until now),
21   and the court finds that the surrounding context would make it sufficiently clear to a reasonable
     person that the motion hearings were being set for the upcoming month—not for 11 months in the
22   past.  The court notes that, in vacating the hearing on defendants' original summary judgment
     motion, Judge England issued a minute order that was served on plaintiff by mail, referencing
23   "the 1/14/2021 hearing date."  (ECF No. 46 (emphasis added); Dkt. Text 11/26/2020.)  Despite
     defendants' repeated calendar mistakes, plaintiff had sufficient notice of the motions and an
24   opportunity to respond—or to alert the court to any confusion over the motions' timing.

25        As to plaintiff's claimed late receipt of the re-filed motion for summary judgment, the
     court cannot see how it prejudiced plaintiff for the motion to be re-filed with a hearing set for a
26   week later than the hearing set for the original motion.

27        Finally, plaintiff states that he was unable to timely respond to the summary judgment
     motion because he fell ill from January 8 through January 13, 2021 when he tried to start a new
28   medication.  (ECF No. 53 ¶¶ 8-15.)  Given that plaintiff's response to the motion for summary

                                                   11

1   dispute of material fact as to any of plaintiff's three discernable claims, the undersigned

2   recommends granting summary judgment for defendants.

3                    *1.  Class-of-One Equal Protection Claim*

4          Plaintiff asserts as his primary cause of action a violation of the Fourteenth Amendment's

5   Equal Protection Clause by defendant Michael Corral, the code enforcement officer assigned to

6   plaintiff's code enforcement case.  (ECF No. 17 at 13-21.)  Plaintiff styles this as a "class of one"

7   equal protection claim.  (Id. at 1, 21, 26.)  The Supreme Court has recognized Fourteenth

8   Amendment "equal protection claims brought by a 'class of one,' where the plaintiff alleges that

9   []he has been intentionally treated differently from others similarly situated and that there is no

10  rational basis for the difference in treatment."  Vill. of Willowbrook v. Olech, 528 U.S. 562, 564

11  (2000) (per curiam).  This is precisely what plaintiff asserts in his complaint.  (See ECF No. 17

12  at 21 (alleging that Corral, on behalf of the City, "intentionally treated [plaintiff] differently from

13  others similarly situated," without a rational basis for the difference in treatment).)  But

14  defendants' motion, nevertheless, treats this claim exclusively as a "selective enforcement claim."

15  (ECF No. 47.1 at 5-7.)

16         The elements of these two types of equal protection claims differ significantly.  Unlike a

17  typical selective enforcement claim, a class-of-one claim does not depend on the plaintiff's

18  membership in a protected class or group; rather it consists of the claim that the plaintiff was

19  intentionally singled out for differential treatment.  See Lazy Y Ranch Ltd. v. Behrens, 546 F.3d

20  580, 592 (9th Cir. 2008) (noting that class-of-one claims are "unusual" because the plaintiff "does

21  not allege that the defendants discriminate against a group with whom she shares characteristics,"

22  but rather that the defendants arbitrarily targeted her in particular).  According to the Ninth

23  Circuit, to prevail on a class-of-one claim, a plaintiff must demonstrate that the governmental

24  defendants: "(1) intentionally (2) treated [plaintiff] differently than other similarly situated

25  property owners, (3) without a rational basis."  Gerhart v. Lake Cty., Mont., 637 F.3d 1013, 1022

26

27  ─────────────────────
    judgment was due on January 6, 2021, before his illness, the court does not find this a persuasive

28  reason to allow plaintiff more time to oppose the motion.

1   (9th Cir. 2011).[16]

2                                  *a.   Intentionality*

3          A class-of-one plaintiff "must show that the [state actors] intended to treat him differently

4   from other[s]" in his position.  Gerhart, 637 F.3d at 1022.  At the same time, such plaintiff need

5   not demonstrate that the government actors "were motivated by subjective ill will."  Id.

6          Plaintiff has failed to adduce even a scintilla of admissible evidence to suggest that

7   defendants intentionally directed differential treatment toward him.  Nothing in the record

8   suggests that Corral or his manager Mendez were aware of the allegedly unenforced violations

9   plaintiff claims existed on his neighbors' properties at the time Corral decided to cite plaintiff.

10  Cf. N. Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008) (concluding that facts

11  developed at trial did not show intentional singling out because the City "did not know [the

12  permitting condition at issue] had never been imposed on another development project").

13         The undisputed evidence in the record demonstrates that the Notice & Order and the

14  recording of the NOPEA issued after defendants received a complaint, investigated the matter,

15  and discovered colorable violations of the City code.  (See ECF No. 47.3, Mendez Decl.

16  ¶¶ 13-18.)  Plaintiff provides no evidence that would raise a genuine factual dispute as to

17  defendant Corral's awareness of how his treatment of plaintiff might differ from his treatment of

18  plaintiffs' neighbors.  No reasonable trier of fact could find that defendants intentionally directed

19  discriminatory treatment at plaintiff.

20                                 *b.   Unique Treatment*

21         Plaintiff's equal protection claim suffers most under this crucial prong of the test.  A

22  class-of-one plaintiff must show that he has been treated differently than other similarly situated

23  individuals.  Many courts have determined that this requirement should be enforced "with

24  particular strictness when the plaintiff invokes the class-of-one theory rather than the more settled

25  cognizable-group theory."  Warkentine v. Soria, 152 F. Supp. 3d 1269, 1294 (E.D. Cal. 2016)

26  _____

27  [16] As discussed below, plaintiff's class-of-one claim fails essentially for the same reason that
    defendants argue the claim fails under a selective enforcement theory: plaintiff provides no
28  evidence of differential treatment, whether viewed as a member of a class, or on his own.

1    (citing <u>JDC Mgmt., LLC v. Reich</u>, 644 F. Supp. 2d 905, 926 (W.D. Mich. 2009)).  "[U]nless

2    carefully circumscribed, the concept of a class-of-one equal protection claim could effectively

3    provide a federal cause of action for review of almost every executive and administrative decision

4    made by state actors."  <u>Jennings v. City of Stillwater</u>, 383 F.3d 1199, 1210-11 (10th Cir. 2004).

5          Accordingly, the Second Circuit has held that "class-of-one plaintiffs must show an

6    extremely high degree of similarity between themselves and the persons to whom they compare

7    themselves."  <u>Clubside, Inc. v. Valentin</u>, 468 F.3d 144, 159 (2d Cir. 2006).  Similarly, the

8    Seventh Circuit has held that a class-of-one plaintiff must be "prima facie identical in all relevant

9    respects or directly comparable . . . in all material respects" to their comparators.  <u>United States v.</u>

10    <u>Moore</u>, 543 F.3d 891, 896 (7th Cir. 2008).

11          Here, plaintiff has failed to provide evidence establishing either (a) that his neighbors'

12    properties were never cited for similar violations, or (b) that the neighboring properties identified

13    in his complaint were violating the City code in a manner substantially similar to plaintiff's own

14    cited violations.  Plaintiff alleges in his complaint that five properties near his have been in

15    violation of at least one of the same City code provisions for which he was cited—and not been

16    cited for their violations.  (ECF No. 17 at 19-21.)  But the record before the court contains zero

17    *proof* supporting these allegations.  At his deposition, plaintiff admitted that he did not know for a

18    fact that the City was not "micromanaging" other residents' properties.[17]  (ECF No. 47.4 at 15-16,

19    Depo. pp. 49-50.)

20          Moreover, the evidence put forth by defendants largely contradicts these allegations.

21    According to the sworn declaration of Jose Mendez, the code enforcement manager, his search of

22    the City's code enforcement cases revealed that between 2016 and February 2020 the City in fact

23

24    [17] The court finds the following dialogue particularly telling:

25          A.    I was being treated different from other residents.
            Q.    Okay. And you believe the City was treating you differently
                    because of what?

26          A.    They're not micromanaging all the other properties.
            Q.    Okay. And how do you know that?

27          A.    I don't.

28    (ECF No. 47.4 at 15-16, Depo. pp. 49-50.)

1    opened at least one enforcement case against most of the properties identified in plaintiff's

2    complaint.  (ECF No. 47.3, Mendez Decl. ¶¶ 22-25.)  Overall, his search showed 12 code

3    enforcement cases opened for 8 properties in plaintiff's neighborhood—excluding plaintiff's—

4    during the same period.  (Id.)  Plaintiff puts forth no evidence to call Mendez's declaration into

5    question, or otherwise demonstrate a genuine issue of material fact as to the City's apparently

6    rather uniform enforcement of its nuisance code in plaintiff's neighborhood.  Plaintiff has failed

7    to develop the record on this point—that is, to create a triable issue of the degree of similarity

8    between his property conditions and his neighbors' (or between the City's treatment of those

9    properties).  Based on the undisputed evidence of the City's enforcement history, no reasonable

10   trier of fact could conclude that defendants treated plaintiff differently than other similarly

11   situated property owners.

12                              *c.   Rational Basis*

13            Finally, a class-of-one plaintiff must demonstrate that the state actors lacked "a rational

14   basis for treating [plaintiff] differently."  Gerhart, 637 F.3d at 1022-23 (emphasis omitted).

15   Having just concluded that there is no proof of any differential treatment, the court need not—and

16   indeed cannot—evaluate whether there was a rational basis for the alleged distinction.  Id.

17   (explaining that the inquiry for this prong "turns on whether there is a rational basis for the

18   *distinction*, rather than the underlying government *action*).  Accordingly, defendants are entitled

19   to summary judgment on plaintiff's first cause of action, his class-of-one equal protection claim.

20                       **2.   Selective Enforcement Equal Protection Claim**

21            This first cause of action fares no better when construed as a selective enforcement claim,

22   as defendants do (wrongly, in the court's opinion).  To prevail on an equal protection selective

23   enforcement claim, "a plaintiff must demonstrate that enforcement had a discriminatory effect

24   and the [enforcers] were motivated by a discriminatory purpose."  Lacey v. Maricopa Cty., 693

25   F.3d 896, 920 (9th Cir. 2012) (cleaned up).  "In order to prove a discriminatory effect, the

26   claimant must show that similarly situated individuals were not prosecuted."  Id. (cleaned up).

27   And to show discriminatory motivation, the plaintiff must show that the state actor "decided to

28   enforce the law against him on the basis of an impermissible ground such as race, religion or

                                                    15

1   exercise of constitutional rights." Id. (cleaned up).

2          The evidence adduced does not support either element of a selective enforcement claim.

3   As discussed, plaintiff has failed to adduce any *evidence* of others similarly situated, or a lack of

4   prosecution of those similarly situated.  In addition, plaintiff does not even allege that—assuming

5   some differential treatment—he was treated differently because of some impermissible

6   discriminatory animus harbored against him.[18]

7                              ***3.  Procedural Due Process Claim***

8          Defendants correctly identify within the first labeled cause of action a separate § 1983

9   cause of action for violation of the Fourteenth Amendment's Due Process Clause.  As described

10  above, at several points plaintiff alleges that defendants violated his procedural due process rights

11  by not sufficiently explaining the basis for the identified violations in the Notice & Order or in

12  response to the discovery requests.  (ECF No. 17 at 16-19.)

13         "A procedural due process claim has two distinct elements: (1) a deprivation of a

14  constitutionally protected liberty or property interest, and (2) a denial of adequate procedural

15  protections."  Roybal v. Toppenish Sch. Dist., 871 F.3d 927, 931 (9th Cir. 2017).  The adequacy

16  of specific procedural protections may vary according to context. However, the Ninth Circuit has

17  explained that "[i]n the absence of extraordinary circumstances, procedural due process requires

18  notice and an opportunity to be heard before any governmental deprivation of a property interest.

19  The form which those procedural protections must take is determined by an evaluation of all the

20  circumstances and an accommodation of competing interests."  Tom Growney Equip., Inc. v.

21  Shelley Irr. Dev., Inc., 834 F.2d 833, 835 (9th Cir. 1987) (citing Boddie v. Connecticut, 401 U.S.

22  371, 379 (1971)); see also McBride Cotton and Cattle Corp. v. Veneman, 290 F.3d 973, 982 (9th

23  Cir. 2005) ("Generally, the Due Process Clause requires 'that individuals receive notice and a

24  meaningful opportunity to be heard before the government deprives them of property.'") (quoting

25  James Daniel Good Real Prop., 510 U.S. 43, 48 (1993)).

26  _____

27  [18] At his deposition, plaintiff steadfastly maintained that he "did not know" why he was being
    treated differently, refusing to identify any particular type of impermissible discrimination at
28  play.  (ECF No. 47.4 at 16, Depo. pp. 52-53.)

                                            16

1    The evidence before the court demonstrates that plaintiff cannot satisfy either element of a

2    procedural due process claim.  First, the evidence does not show that plaintiff was deprived of

3    any property interest.  He never paid the fines initially imposed with the Notice & Order (ECF

4    No. 47.4 at 13, Depo. p. 40); the City refunded his $400 appeal filing fee (id.); and plaintiff

5    incurred no other fees in opposing the administrative enforcement action (ECF No. 47.4 at 17,

6    Depo. p. 54).  The administrative enforcement case was dismissed before any hearing occurred,

7    and hence without the Notice & Order ever becoming final.  (ECF No. 47.3, Mendez Decl. ¶ 20.)

8    See SCC § 8.04.280 (stating that a notice and order "become[s] final by failure to file a timely

9    appeal or after [the] hearing examiner's decision on appeal is rendered").

10    At most, plaintiff was practically restrained from selling his property while the NOPEA

11    (or *lis pendens*, in legal terms) was recorded against it for about four months from August 24,

12    2018 until January 6, 2019.  (ECF No. 47.4 at 85-86, Depo. Exs. 8 & 9.)  See Amalgamated Bank

13    v. Superior Court, 149 Cal. App. 4th 1003, 1011 (Cal. Ct. App. 2007) ("A *lis pendens* notice acts

14    as a cloud against the property, effectively preventing sale or encumbrance until the litigation is

15    resolved or the *lis pendens* is expunged.") (cleaned up).  But the majority view is that the filing of

16    a *lis pendens*—which imposes no *legal* restriction on the owner's use of the property or right to

17    dispose of it—does not "deprive" the owner of the property for purposes of the Due Process

18    Clause.  See Lemad Corp. v. Calfee, No. CV 08-0923-PHX-ECV, 2010 WL 11519238, at *4 (D.

19    Ariz. Feb. 23, 2010) ("Filing a *lis pendens* does not [a]ffect property interests enough to implicate

20    the Due Process Clause."), aff'd, 461 F. App'x 576 (9th Cir. 2011); see also Diaz v. Paterson, 547

21    F.3d 88, 98 (2d Cir. 2008) (explaining that the effect of a *lis pendens* is "simply to give notice to

22    the world of the remedy being sought" in a pending lawsuit); United States v. Register, 182 F.3d

23    820, 837 (11th Cir. 1999) ("[A] filing of a *lis pendens* . . . does not constitute a 'seizure' and does

24    not affect property interests to an extent significant enough to implicate the Due Process Clause

25    of the Fifth Amendment.")  Without such a deprivation, plaintiff's procedural due process claim

26    cannot succeed.

27    Second, even assuming there was a deprivation of property worked by the *lis pendens*

28    temporary practical restraint on the sale of plaintiff's property, plaintiff has not identified how the

17

1    enforcement process was constitutionally inadequate in this case.  "Generally, the Due Process

2    Clause requires that individuals receive notice and a meaningful opportunity to be heard before

3    the government deprives them of property."  McBride Cotton, 290 F.3d at 982 (cleaned up).  That

4    is precisely what plaintiff was afforded here.  In fact, plaintiff invoked the very procedural

5    protections afforded in the City's nuisance code—namely the right to appeal a notice and order—

6    to successfully have his case dismissed, and thereby avoided any property deprivation.

7         The main concern underlying plaintiff's procedural due process claim is that the Notice &

8    Order did not adequately advise him of the factual basis for each of the five cited violations.

9    (ECF No. 17 at 16-17; ECF No. 47.4 at 8-9 (Depo. 21:24-22:9).)  The court agrees that several of

10   the five violation descriptions stated in the "Correction List" provided with the Notice & Order

11   were so generic that one cannot immediately discern from them what condition must be corrected.

12   (See ECF No. 47.4 at 44, Depo. Ex. 2 (describing one violation as "Cease maintaining any

13   dangerous, unsightly, or blighted condition which is detrimental to the health, safety, or welfare

14   of the public" and repeating the same in the "Comments" section).)  Such a vague description

15   arguably falls short of City Code section 8.04.120's requirement that a notice and order contain a

16   statement "specifying the conditions which constitute the nuisance" and "the action required to be

17   taken to eliminate the public nuisance."  SCC § 8.04.120(B)-(C).  But even assuming a violation

18   of this municipal ordinance, that would not, alone, establish a violation of federal due process.

19   See Roybal, 871 F.3d at 933 (noting that public employer's "failure to comply with [a

20   Washington state statute] does not resolve the issue currently before us: whether [the employer]

21   violated federal due process, a question of federal, not state, law") (citing Cleveland Bd. of Educ.

22   v. Loudermill, 470 U.S. 532, 541 (1985)).  As plaintiff has not elected to advance any argument

23   on this point, beyond the allegations of his complaint, the court does not find this a sufficient

24   basis for establishing a constitutionally inadequate process. Because the evidence is insufficient to

25   satisfy either element of a due process claim, defendants are entitled to summary judgment on the

26   second cause of action as well.

27              ***4.  Civil Rights Conspiracy Claim***

28         Finally, there is no evidence to support plaintiff's third claim—that defendants Corral and

18

1   Mendez conspired to violate plaintiff's constitutional rights.  (ECF No. 17 at 21-23.)  "To prove

2   conspiracy between [the defendants] under § 1983, an agreement or meeting of minds to violate

3   [plaintiff's] constitutional rights must be shown," along with a resulting "actual deprivation of his

4   constitutional rights."  Woodrum v. Woodward Cty., 866 F.2d 1121, 1126 (9th Cir. 1989).  On

5   the current record, plaintiff can prove neither.  There is nothing but unsupported (and conclusory,

6   for that matter) allegations of these two defendants agreeing that plaintiff's property should be

7   cited for non-existent violations.  (See, e.g., ECF No. 17 ¶ 42.)  And, for the reasons explained

8   above, plaintiff has established no actual deprivation of either his equal protection or due process

9   rights.  Therefore, the court should grant summary judgment for defendants on this final claim.

10  **ORDER**

11          Accordingly, IT IS HEREBY ORDERED that:

12      1.  The February 23, 2021 order and findings and recommendations (ECF No. 52) are

13          VACATED, to be replaced by the instant amended order and amended findings and

14          recommendations;

15      2.  Plaintiff's motion to suppress his deposition testimony (ECF No. 50) is DENIED;

16      3.  The hearing on the motion to suppress set for March 10, 2021 is VACATED; and

17      4.  In light of the following recommendations, all motion practice in this action remains

18          STAYED pending resolution of these amended findings and recommendations.  With the

19          exception of objections to these amended findings and recommendations and any non-

20          frivolous motions for emergency relief, the court will not entertain or respond to any

21          motions and other filings until the amended findings and recommendations are resolved.

22  **RECOMMENDATIONS**

23          In addition, IT IS HEREBY RECOMMENDED that:

24      1.  Defendants' motion for summary judgment (ECF No. 47) be GRANTED IN FULL;

25      2.  Judgment be entered for defendants; and

26      3.  The Clerk of Court be directed to close this case.

27          These amended findings and recommendations are submitted to the United States District

28  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

1  (14) days after being served with these amended findings and recommendations, any party may

2  file written objections with the court and serve a copy on all parties. Such a document should be

3  captioned "Objections to Magistrate Judge's Amended Findings and Recommendations."  Any

4  reply to the objections shall be served on all parties and filed with the court within fourteen (14)

5  days after service of the objections.  The parties are advised that failure to file objections within

6  the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan,

7  158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

8  Dated:  March 4, 2021

9  _____

   CAROLYN K. DELANEY

10  UNITED STATES MAGISTRATE JUDGE

11

12

13  19.gran.1495

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28